UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **NEW ORLEANS NAVY**<br>**HOUSING, LLC, et al.** | * | **CIVIL ACTION NO. 2:25-cv-0363** |
| | * | |
| | * | **SECTION I, DIVISION (2)** |
| **VERSUS** | * | |
| | * | **JUDGE LANCE M. AFRICK** |
| **UNITED STATES DEPARTMENT** | * | |
| **OF THE NAVY** | * | **MAG. JUDGE CURRAULT** |
| | * | |

## DECLARATION OF ATINA HALL

I, Atina Hall, hereby declare under penalty of perjury:

1.  I am the Freedom of Information Act ("FOIA") Coordinator for the U.S. Department of the Navy, Naval Facilities Engineering Systems Command Southeast ("Agency"). This declaration explains the Agency's search for records responsive to Plaintiff's FOIA request. The core responsibilities of my office include responding to requests made by the public under FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. I have served in this capacity since February 2018.

2.  I make the following statements based upon my personal knowledge, which is based on a personal review of the records relevant to the request at issue in this litigation (the "subject request") and upon information furnished to me in the course of my official duties. I am familiar with the efforts of the Agency personnel to process the subject request, and I oversee coordinating the Agency's search and recovery efforts with respect to that request.

### Plaintiff's FOIA Request:

3.  On September 7, 2023, Naval Facilities Engineering Systems Command received a FOIA request from the requester, NONH and LNFH, via FOIAOnline.

4.  On September 12, 2023, the request was forwarded to NAVFAC SE. See **Exhibit 1.** It was assigned tracking number DON-NAVY-2023-016071. The request sought the following records:

> *1. All documents generated since February 1, 2023, between or among Navy personnel and the Concourse Group that relate to discussions or negotiations*

**Exhibit A**

between and among NONH, LNFH, Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project.

2. All documents generated since February 1, 2023, that discuss the development of the Navy letter dated May 30, 2023, and the transmission of that letter to LNFH dated May 30, 2023, which the Navy labelled as a "Letter of Dissatisfaction".

3. All documents generated since February 1, 2023, that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023.

4. All documents generated since February 1, 2023, to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023.

5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023.

6. All documents generated by the Concourse Group since February 1, 2023, that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs.

7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA.

8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request.

9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms

*that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and required a "loan repayment agreement" "within 90 days".*

5. When the Agency receives a FOIA request, I evaluate the request to determine which offices or records systems within the Agency may be reasonably expected to contain the records requested. This determination is based on the description of the records requested and requires a familiarity with the holdings of the Agency's records systems.

6. The Public Private Ventures (PPV) Department within the Agency is responsible for maintaining records related to the privatized housing project known as New Orleans Navy Housing, L.L.C., and is the custodian of records responsive to the subject FOIA request.

7. These records generally consist of materials prepared by or provided to NAVFAC Southeast PPV department in connection to the privatized military housing Project's financial and legal documents; oversight and monitoring; construction, maintenance and repair; residents interaction and satisfaction; oversight and compliance; and the Department of Defense's PPV Program management guidelines, policies, and governance. These documents are not accessible to the public.

8. Due to a significant backlog in FOIA processing, the PPV department was provided with a copy of the subject request on November 20, 2023, and was directed to conduct a search of all locations reasonably likely to contain responsive records. That is, searching electronic files, shared network folders, individual workstations and relevant Outlook email accounts (including inbox, sent, archived and deleted folders) of personnel reasonably expected to have responsive information. I also instructed to use search terms tailored to the FOIA request to ensure comprehensive coverage for potentially responsive records.

9. On December 19, 2023, I sent a reminder to the PPV department's Director, Mr. Tom McKelvey, regarding the pending request. Mr. Tom McKelvey and Agency counsel subsequently requested a meeting to discuss search strategies and protection of some responsive documents. Due to holiday schedules, the meeting was held on January 4, 2024. On that same day, I notified the requester that additional time would be required to conduct a thorough search and review.

10. On February 15, 2024, Mr. Tom McKelvey provided 188 documents (a total of 948 pages) to me. I reviewed the documents and scheduled a meeting with Agency counsel for February 22, 2024, to determine which documents were responsive to specific items in the request and which documents or portions thereof were to be protected from release under the FOIA exemptions.

11. On February 24, 2024, the requester asked for a status update. I responded on February 27, 2024, informing him that the Agency had no documents ready for release at that time. I noted that some documents requested may have already been provided to or by his client and asked whether he wished to prioritize certain items.

12. The requester responded on March 3, 2024. At that time, I was already engaged in the drafting of the Agency's Resolution Notice and was in the review process of 95 documents with Agency counsel who was assisting in ensuring the lawful application of FOIA Exemptions 4, 5, and 6.

13. On April 10, 2024, as the Initial Denial Authority, NAVFAC SE issued the Agency's FOIA Resolution Notice and released a total of **105** responsive documents to the Requester; **93** documents (total of 355 pages) were released in full and **12** documents underwent partial redactions under FOIA Exemption 5, as they reflected the deliberative and predecisional process of the Agency's employees, and FOIA Exemption 6 to protect the names, positions, and email addresses of the preparers and recipients of those documents.

14. This response was sent to the requester via the Department of Defense Secure Access File Exchanged ("DoD SAFE"). I note there was a typo on the date as it was dated 2023 instead of 2024. A true and exact copy of the Agency's Resolution Notice is attached as **Exhibit 2**.

15. DoD SAFE provides a secure web-based file transfer service that safely shares large unclassified files between U.S. government agencies and External Partners. This system helps avoid size limitations and security risks of email attachments as files are encrypted during upload, download and storage.

16. On April 15, 2024, the requester asked whether the Agency would provide a log of withheld documents, including type, preparer, recipient, subject matter, claimed exemption, and rationale. I informed him I would discuss the matter with Agency counsel.

17. Three (3) days later, on April 18, 2024, I received an Appeal from the requester and the Office of the General Counsel of the Department of the Navy ("OGC"). A true and exact copy of the Requester's Appeal is attached as **Exhibit 3**.

18. On April 30, 2024, the Agency submitted a response to the Deputy General Counsel of the Department of the Navy ("DGC") explaining the Agency's rationale for withholding in full the release of 83 documents and partially redacting 12 documents out of the 188 responsive documents that were found; I provided a copy of both, released and withheld records to the DGC appeals attorney. A true and exact copy of the Agency's Response to Requester's Appeal is attached as **Exhibit 4**.

19. After further discussion with the DGC's appeals attorney, the case was remanded to the Agency on May 13, 2024, for review and final action. A true and exact copy of the Notice to Remand is attached as **Exhibit 5**.

20. On June 12, 2024, the Agency issued a revised Resolution Notice explaining in more detail the withholdings of documents and providing an index of partially redacted and withheld documents including the FOIA related request and the privilege claimed by the Agency under FOIA Exemptions 4, 5 and 6. No additional documents were released to the Requester. A true and exact copy of the Agency's revised Resolution Notice is attached as **Exhibit 6.**

21. On June 21, 2024, the Plaintiff submitted an appeal of the Agency's revised Resolution Notice to the Office of the General Counsel of the Department of the Navy challenging the response. A true and exact copy of Requester's Appeal to the Agency's revised Resolution Notice is attached as **Exhibit 7**.

22. On July 8, 2024, NAVFAC SE submitted a revised response to the DGC outlining the rationale under Exemptions 4, 5 and 6 for partial redactions and full withholding of certain documents. A true and exact copy of NAVFAC's Response to Requester's Appeal to the Agency's revised Resolution Notice is attached as **Exhibit 8**.

23. On July 11, 2024, the Deputy General Counsel of the Department of the Navy, Mrs. Mary Kate DeMane, issued a final denial decision of Plaintiff's second appeal. A true and exact copy of the Final Decision issued on Plaintiff's appeal is attached as **Exhibit 9**.

24. For this court's review, I have attached as **Exhibit 10** a Vaughn index identifying the **83** documents withheld in full (total of 490 pages) as well as the **12** documents that were released with partial redactions (total of 103 pages). Each entry of the Vaughn index provides a description of the document's nature, function and context and its author/recipient, the FOIA related request, and the basis for the exemption applied. Due to the nature of the documents-

mostly email communication threads- the dates range in time in one single document. The documents at issue were created, sent, or received over a span between 2021 and 2024.

25. Based on the information available and the steps taken, I believe that the Agency's search for responsive documents were consistent with the Agency's obligations under FOIA, and this declaration is submitted in support of the Agency's motion for summary judgment.

Pursuant to 28 U.S.C. §1746, I declare that the foregoing is true and correct to the best of my knowledge and belief.

**Executed on June 17, 2025.**

HALL.ATINA.J .1048113768

Digitally signed by HALL.ATINA.J.1048113768
Date: 2025.06.17 14:52:45 -04'00'

Atina Hall
FOIA Coordinator
Naval Facilities Engineering Systems Command Southeast

# DON-NAVY-2023-016071 Request Details

**Due Date:** N/A    **Clock Days:** 0 (Never Started)

**Case Phase:** Assignment    **Case Status:** Assignment Determination

## Requester Information

| | |
|---|---|
| Requester | David Johnson |
| Organization | Vinson & Elkins LLP |
| Requester Has Account | No |
| Email Address | DRJOHNSON@VELAW.COM |
| Phone Number | 2026396706 |
| Fax Number | |
| Address | 2200 Pennsylvania Avenue West Tower, Suite 500 |
| City | Washington |
| State/Province | DC |
| Zip Code/Postal Code | 20037-1701 |
| Tracking Number | DON-NAVY-2023-016071 |
| Submitted Date | 09/07/2023 |
| Received Date | 09/07/2023 |
| Perfected Date | |
| Last Assigned Date | 09/12/2023 |
| Assigned To | Atina Hall (NAVFAC Southeast) |
| Last Assigned By | Abby Machalec (Naval Facilities Engineering Systems Command) |
| Request Track | Simple |
| Fee Limit | $250.00 |

## Request Handling

| | |
|---|---|
| Requester Info Available to the Public | No |
| Request Track | Simple |
| Fee Category | Other |
| Fee Waiver Requested | No |
| Fee Waiver Status | |
| Expedited Processing Requested | No |
| Expedited Processing Status | |
| Request Type | FOIA |
| Request Perfected | No |
| Acknowledgement Sent Date | 09/07/2023 |
| Unusual Circumstances | No |
| Litigation | No |
| 5 Day Notifications | |

## Description

3507/10000

be deposited into the Project's MORA. 8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request. 9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and required a "loan repayment agreement" "within 90 days". ***** We agree to pay reasonable search reproduction fees for the records up to $250. If the estimate of search and reproduction fees exceeds such amount, we request that you contact us so that we can understand the estimate and provide appropriate approvals.

| | |
|---|---|
| Has Description Been Modified | |
| Description Available to the Public | No |
| Short Description | Navy Housing |

## Additional Information

| | |
|---|---|
| Case Number | |
| Name of Local Command | |
| Contract Number | |
| Limit Request To Clearly Releasable Info | Select Limit Request To Clearly Releasable Info |



*Exhibit A-1*

## Attached Supporting Files

| Attachments Available to the Public | No ⌄ | | |
|---|---|---|---|
| **Attached File Name** | **Size (MB)** | **File Type** | **Remove** |
| 016071 FOIA Request confirmation.pdf | 0.0053 | Adobe PDF Document | 🗑 |

## Upload Supporting Files

No supporting files have been uploaded.

```
Drag files here

Upload Supporting Files
```

We represent New Orleans Navy Housing, LLC ("NONH") and Louisiana Navy Family Housing, L.L.C. ("LNFH") with respect to certain matters concerning the their project to operate a military privatized housing project in Louisiana (the "Project"). NONH and LNFH are parties to an Amended and Restated Operating Agreement dated January 17, 2012 with the United States of America represented by the Department of the Navy (the "Navy") that relates to and governs aspects of the management and operation of the Project. The Concourse Group is an outside contractor that supports the Navy with respect to the Project. The requests below relate to the Project. Our requests follow:

1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among NONH, LNFH, Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project.

2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction".

3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023.

4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023.

5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023.

6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs.

7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA.

8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request.

9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and required a "loan repayment agreement" "within 90 days". * * * * * We agree to pay reasonable search reproduction fees for the records up to $250. If the estimate of search and reproduction fees exceeds such amount, we request that you contact us so that we can understand the estimate and provide appropriate approvals.

**DEPARTMENT OF THE NAVY**
NAVAL FACILITIES ENGINEERING SYSTEMS COMMAND SOUTHEAST
JACKSONVILLE, FL  32212-0030

5720
BD523/00265
April 10, 2023

David Johnson
2200 Pennsylvania Ave. West Tower
Suite 500
Washington, DC 20037-1701

Dear Mr. Johnson:

SUBJECT:  FREEDOM OF INFORMATION ACT (FOIA) REQUEST DON-NAVY-2023-
016071/FY23-032

This letter responds to the above Freedom of Information Act (FOIA) request.  You have requested correspondence related to the operation of a military privatized housing project in Louisiana. You have requested the following:

1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among NONH, LNFH, Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project.

2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction".

3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023.

4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023.

5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023.

6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs.

7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented

**Exhibit A-2**

5720
BD523/00265
April 10, 2023

through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA.

8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request.

9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and required a "loan repayment agreement" "within 90 days".

We have identified several emails that are responsive to your request. While many have been provided in full, some have undergone partial redaction in accordance with FOIA Exemption 5 (5 U.S.C §552 (b)(5)). This exemption is applied to protect inter-agency or intra-agency memorandums or letters, the deliberative process, attorney-client privilege, work product privilege, and other documents typically privileged in civil discovery. The withheld information pertains to predecisional and deliberative content.

Additionally, we have withheld (83) emails under both FOIA Exemption 5 and FOIA Exemption 4 (5 U.S.C §552 (b)(4)). This action is taken to safeguard the commercial and proprietary information of both the submitters and the government.

Regarding communications with the consultant, Concourse Group, these are not eligible for release under the Consultant corollary doctrine, a component of Exemption 5.

In view of the above, you may consider this to be an adverse determination that may be appealed. An appeal, if any, must be postmarked within 90 calendar days from the date of this letter and should include:

- A copy of your initial request
- A copy of this letter
- A statement indicating what you are appealing with any supporting arguments or reasons you think may be worthy of consideration
- Both the appeal letter and the envelope should bear the notation, "FOIA Appeal"

2

5720
BD523/00298
April 10, 2024

Please mail your appeal to:

Department of the Navy
Office of the General Counsel
1000 Navy Pentagon, Room 5A532
Washington, DC 20350-1000

An appeal may also be submitted via email to: DONOGCAPPEALS@us.navy.mil.

For any further assistance and to discuss any aspect of your request, you have the right to contact the Department of the Navy FOIA Public Liaison, Mr. Christopher Julka, at Christopher.A.Julka@navy.mil or (703) 697-0031. Additionally, the Office of Government Information Services (OGIS) provides a voluntary mediation process for resolving disputes between persons making FOIA requests and the Department of the Navy (DON). For more information, go to https://www.archives.gov/ogis/about-ogis/contact-information.

I am the official responsible for this decision; if you have any questions concerning this matter, you may contact my FOIA Coordinator, Ms. Atina Hall, at (904) 735-9639 or email atina.j.hall.civ@us.navy.mil.

Sincerely,

J. P. ADAMS
Captain, Civil Engineer Corps, U.S. Navy
Executive Officer

# Vinson&Elkins

David R. Johnson  drjohnson@velaw.com
Tel +1.202.639.6706  Fax +1.202.879.8906

April 18, 2024

**Via E-Mail (DONOGCAPPEALS@us.navy.mil.)**

Department of the Navy
Office of the General Counsel
1000 Navy Pentagon, Room 5A532
Washington, DC 20350-1000

     Re:    Appeal of Department of Navy's April 10, 2024 Response;
             Freedom of Information Act Request DON-NAVY-2023-016071/FY23-032

Dear Madame/Sir:

This letter serves as an appeal of the referenced April 10, 2024 response by the Department of the Navy, Naval Facilities Engineering Command Southeast, Jacksonville, Florida ("Navy") to a September 7, 2023 Freedom of Information Act ("FOIA") Request that we filed on behalf of our clients, New Orleans Navy Housing, LLC ("NONH") and Louisiana Navy Family Housing, L.L.C. ("LNFH"), with respect to certain matters concerning the their project to operate a military privatized housing project in Louisiana (the "Project"). A copy of the FOIA Request is attached at **Tab A**; a copy of the Navy's confirmation of receipt of the FOIA Request is attached at **Tab B**; and a copy of the Navy's Response to the FOIA Request is attached at **Tab C**.

## I.    Summary of the Request and Response

NONH and LNFH are parties to certain contracts with the Navy that establish and operate the Project. As evidenced in the FOIA Request, all of the documents that NONH and LNFH requested have to do directly with specific actions by the Navy under the contracts with NONH and LNFH—e.g.:

Vinson & Elkins LLP  Attorneys at Law
Austin  Dallas  Dubai  Houston  London  Los Angeles
New York  Richmond  San Francisco  Tokyo  Washington

2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037-1701
Tel +1.202.639.6500  Fax +1.202.639.6604  velaw.com

**Exhibit A-3**

V&E

- Request 1 seeks documents that relate to negotiations concerning insurance premiums for the Project;

- Request 2 seeks documents that discuss the development of a letter that the Navy sent to LNFH;

- Request 3 seeks documents that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023;

- Request 4 seeks documents between the Navy and its consultant, Concourse Group, that relate to the Navy's review of the Project's books and records from that trip;

- Request 5 seeks documents that relate to the results or findings of the review of the Project's books and records from that trip;

- Request 6 seeks documents generated by the Concourse Group that relate to whether or not to release funds from the Project's Member Operating Reserve Account ("MORA") to cover insurance premium costs;

- Request 7 seeks documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, including documents that discuss that the subsidy, in whole or part, shall be deposited into the Project's MORA;

- Request 8 seeks documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023; and

- Request 9 seeks documents that refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH.

None of the requests seek documents related to Navy policies, nor the development of Navy policies.

Moreover, none of the documents requested would include commercial confidential information of any entity but NONH, LNFH, or entities with management common to those entities.

V&E

In responding to the FOIA Request after over seven months, the Navy did not provide *any details* about the number of responsive documents that it located.[1]  Rather, the Navy merely invoked FOIA Exemption 5 (5 U.S.C. § 552(b)(5)) to withhold responsive documents.  And, although the Navy produced *some* documents to NONH and LNFH, those released documents predominantly consist of materials that NONH or LNFH had themselves prepared or communications that involved NONH, LNFH and their personnel.  In addition to withholding completely an undisclosed number of responsive documents, the Navy withheld information through partial redactions of several emails "in accordance with FOIA Exemption 5 (5 U.S.C. § 552.(b)(5))."

With respect to its reliance on Exemption 5, the Navy explained that "[t]his exemption is applied to protect inter-agency or intra-agency memorandums or letters, the deliberative process, attorney-client privilege, work product privilege, and other documents typically privileged in civil discovery.  The withheld information pertains to predecisional and deliberative content."  According to the Navy, it also withheld an undisclosed number of documents prepared by or involving communications with the Navy's contractor, Concourse Group, because "these are not eligible for release under the Consultant corollary doctrine, a component of Exemption 5."  In addition, the Navy explained that "we have withheld (83) emails under both FOIA Exemption 5 and FOIA Exemption 4 (5 U.S.C. §552 (b)(4)).  This action is taken

---

[1] When we asked the FOIA specialist whether the Navy would provide a log of withheld documents, the specialist did not know and said she would check with Navy counsel.  We have not heard back as of the date of this submission.

to safeguard the commercial and proprietary information of both the submitters and the government." However, the Navy did not provide any specific information about its reliance on FOIA Exemption 4.

**II.      The Navy's Reliance on Exemption 5 Is Legally Insupportable**

Exemption 5 provides that the FOIA disclosure requirements do not apply to matters that are, "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). However, the records requested here are *exactly* the documents that *would be available* by law to NONH or LNFH were they in litigation with the Navy. Moreover, there is not a single request that seeks information about internal Navy deliberations over matters of broader policy or of issues that relate to anything other than actions taken by the Navy and its consultant under the Navy's contracts with NONH and LNFH. Accordingly, none of the requested documents could possibly be exempt from disclosure under Exemption 5.

Longstanding precedent binding on the Navy clearly establishes that there is a distinction between internal agency deliberations about policy matters, on the one hand, and internal deliberations about contract administration matters, on the other, and Exemption 5 does not protect from disclosure documents developed by Navy personnel, including their consultant (Concourse Group) who are acting in a contractual capacity and not in a role of developing agency policy. The policy behind Exemption 5 is to protect against a "chilling effect" in public policy decision-making. *See, e.g., Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975). However, legal precedent makes it clear that the "chilling effect" concern is not applicable where individuals are providing opinions about matters of contract administration on a particular government contract:



> Factual investigations, such as evaluations of contract claims, that are needed in the ordinary course of Government business, will not foreseeably dry up because of the possibility of future disclosure. If anything, the knowledge of possible future disclosure would simply bring to bear a greater incentive for the investigators to be fully accurate, which we view as a salutary effect to be sought after, not avoided.

*Ingalls Shipbuilding Div., Litton Syss., Inc.*, ASBCA No. 17717, 73-2 BCA ¶ 10,205 (Aug. 16, 1973). The Armed Services Board of Contract Appeals, the Civilian Board of Contract Appeals and individual agency predecessor Boards of Contract Appeals all hold that the deliberative process privilege is not applicable to factual matters presented to agency contracting officials. *Id.; see also 4K Global-ACC Joint Venture, LLC, v. Department of Labor*, CBCA Nos. 6683, 6761, 6762, 6827, 6828, 6829, 6830, 6831, 6833, 6834, 6835, 6836, 6837, 6839, 6918, 6919, 6920, 6921, and 6922 (Feb. 10, 2021) at 12-13 (discussing *Ingalls Shipbuilding* with approval); *Carl W. Olson & Sons Co.*, IBCA 930-9-71, 74-1 BCA ¶ 10,564 (citing *Ingalls Shipbuilding* with approval); *Robert E. McKee General Contractor, Inc.*, GSBCA No. 3697, 1973 WL 1973 (Oct. 16, 1973) (same). Similarly, interpretation of an already-existing contract is considered to be factual information that cannot be withheld by the deliberative process privilege. *Federal Data Corp.*, DOTCAB No. 2389, 91-3 BCA ¶ 24,063 (June 7, 1991). In the context of procurements like this, factual information encompasses such matters as solicitation preparation, proposal evaluation, negotiations, contract formation, cost accounting analyses, audits, contract interpretation, and other contract administration issues. *See Xerox Corp. v. Government Printing Office*, GSBCA No. 12322-P, 93-3 BCA ¶ 25,936, at 128,994 (discussing evaluation documents concerning contractor's performance and scheduling); *Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317 at 321 (discussing agency inspector

general's report); *Centel Fed. Syss., Inc. v. Department of the Navy*, GSBCA No. 12011-P, 93-1 BCA ¶ 25,534, at 127,195; *see also Ingalls Shipbuilding* at 48,100 (discussing agency documents evaluating contractor's claims). Thus, documents where Navy personnel who participate in the process of administrating contracts related to the Project and that discuss Project facts and reasons for possibly taking positions with respect to those contracts are not cloaked in secrecy from disclosure by Exemption 5.

Further bolstering the legal conclusion that Exemption 5 does not apply to the documents requested here—none of the governmental and consultant personnel involved in these documents have any policy-making role. Rather, the governmental personnel likely involved in the withheld communications are relatively low-level personnel who neither set nor make recommendations on Navy policy. In considering the "chilling effect" argument, courts have held that only discussions between higher-level officials can qualify as "policy deliberations" because agency policies are normally established by or at the direction of senior-level officials. Specifically, discussions between lower-level agency personnel administering a contract do not and cannot properly constitute policy deliberations within the meaning of the executive privilege; because at most, such discussions pertain to the implementation of agency policy, which is not within the scope of the exemption. *See, e.g., Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939, 946 (Ct. Cl. 1958) (describing deliberations involving the Administrator of General Services); *SCM Corp. v. United States*, 473 F. Supp. 791 (Cl. Ct. 1979) (describing deliberations of and advice provided to International Trade Commissioners).

In addition, to properly assert the deliberative process privilege, the Navy should have for each document "identif[ied] the policy matter for which the privilege is claimed." *Unisys Corp. v. Dep't of*

*Commerce*, GSBCA No. 12823-COM, 95-2 BCA ¶ 27,903 (Aug. 10, 1995). Yet, the Navy has not identified and cannot identify a policy that the withheld documents address because the documents do not address any policy. Instead, based on the requests themselves, the documents relate to specific, individualized decisions on NONH and LNFH's contracts. As Boards of Contract Appeals have found conclusively, such an individualized contract issue cannot be deliberative because "***matters of contract administration do not rise to the level of protected advisory opinions or legal or policy recommendations***." *Brero Constr. Inc.*, LBCA No. 1997-BCA-4, 1999 WL 624138 (June 18, 1999); *see also Unisys Corp.*, 95-2 BCA ¶ 27,903 (stating that documents concerning contract administration do not concern policy or legal matters and finding that contract performance by the contractor and technical difficulties related to contract performance were matters of contract administration).

For these reasons, the likelihood that Exemption 5 is applicable to any of the responsive documents would be extremely low and any claim of Exemption 5 in this context should be met with significant skepticism. The requested documents cannot be withheld on the basis of FOIA Exemption 5, and the Navy should not permit the Naval Facilities Command Southeast to improperly invoke Exemption 5 after taking over seven months to respond to a legitimate, focused FOIA request targeting specific documents that reveal only contract administration facts.

## III.    Exemption 4 Is Inapplicable Here

As noted above, the Navy also invoked Exemption 4 of the FOIA to withhold documents, but gave no details about why that exemption would possibly be relevant or to which documents that exemption could possibly apply. Exemption 4 protects "trade secrets and commercial or financial information

obtained from a person [that are] privileged or confidential." 5 U.S.C. § 552(b)(4).  But, Exemption 4 cannot apply here to exclude any documents, because all of the documents requested specifically pertain to NONH and LNFH or to entities that share common management with the team—in other words, there is no applicability or need for Exemption 4 protection when the information in question relates solely to the requester.

## IV.    Conclusion and Request

For the foregoing reasons, NONH and LNFH request that the Navy sustain this Appeal, rule that the Naval Facilities Command Southeast's invocation of FOIA Exemptions 5 and 4 in the context of this FOI request are incorrect as a matter of fact and law, and require that a complete collection of all responsive documents be released promptly without redactions to NONH and LNFH.

Sincerely,

David R. Johnson

cc:    J.P. Adams, Captain, Civil Engineer Corps, U.S. Navy, Executive Officer
       Department of the Navy
       Naval Facilities Engineering Command Southeast
       Jacksonville, Florida 32212-0030

       Chief of Naval Operations, DNS-36, usn.ncr.dns.mbx.don-foia-pa@us.navy.mil
       Christopher Julka, FOIA Public Liaison, christopher.a.julka@navy.mil
       Atina Hall, FOIA Coordinator, atina.j.hall.civ@us.navy.mil

# Tab A

 An official website of the United States government
Here's how you know

 UNITED STATES DEPARTMENT *of* JUSTICE

 **FOIA.gov**

MENU

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 841396

# Success!

## Your FOIA request has been created and is being sent to the Department of the Navy.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

**Contact the agency**

FOIA Requester Service Center

202-685-0412

usn.ncr.dns.mbx.don-foia-pa@us.navy.mil

Christopher Julka, FOIA Public Liaison

703-697-0031

christopher.a.julka@navy.mil

Chief of Naval Operations, DNS-36
2000 Navy Pentagon
Washington, DC 20350-2000

usn.ncr.dns.mbx.don-foia-pa@us.navy.mil

# Request summary

Request submitted on **September 7, 2023**.

The confirmation ID for your request is **841396**.



The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
David Johnson

**Mailing address**
2200 Pennsylvania Avenue
West Tower, Suite 500
Washington, DC 20037-1701
United States

**Phone number**
2026396706

**Company/organization**
Vinson & Elkins LLP

**Email**
DRJOHNSON@VELAW.COM

## Your request

We represent New Orleans Navy Housing, LLC ("NONH") and Louisiana Navy Family Housing, L.L.C. ("LNFH") with respect to certain matters concerning the their project to operate a military privatized housing project in Louisiana (the "Project"). NONH and LNFH are parties to an Amended and Restated Operating Agreement dated January 17, 2012 with the United States of America represented by the Department of the Navy (the "Navy") that relates to and governs aspects of the management and operation of the Project. The Concourse Group is an outside contractor that supports the Navy with respect to the Project. The requests below relate to the Project. Our requests follow: 1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among NONH, LNFH, Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project. 2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction". 3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023. 4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023. 5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023. 6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs. 7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA. 8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request. 9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and

required a "loan repayment agreement" "within 90 days". * * * * * We agree to pay reasonable search reproduction fees for the records up to $250. If the estimate of search and reproduction fees exceeds such amount, we request that you contact us so that we can understand the estimate and provide appropriate approvals.

## Fees

**What type of requester are you?**
other

**Fee waiver**
no

**The amount of money you're willing to pay in fees, if any**
$250.00

## Request expedited processing

**Expedited processing**
no


FOIA.gov

**CONTACT**

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit    CC3.0

Case 2:25-cv-00363-LMA-DPC   Document 20-2   Filed 06/18/25   Page 28 of 170

FOIA.gov - Freedom of Information Act Request

- FREQUENTLY ASKED QUESTIONS
- DEVELOPER RESOURCES
- AGENCY API SPEC
- FOIA CONTACT DOWNLOAD
- FOIA DATASET DOWNLOAD
- ACCESSIBILITY
- PRIVACY POLICY
- POLICIES & DISCLAIMERS
- JUSTICE.GOV
- USA.GOV

# Tab B

**Johnson, David R.**

| | |
|---|---|
| **From:** | no-reply@foiaonline.gov |
| **Sent:** | Tuesday, September 12, 2023 11:25 AM |
| **To:** | Johnson, David R. |
| **Subject:** | DON-NAVY-2023-016071 |

[EXTERNAL]

Mr. Johnson,

This acknowledges receipt of your Freedom of Information Act (FOIA) request.  Your request was received in our office on September 8, 2023.

We have determined that the information you are seeking may be maintained by the Naval Facilities Engineering Systems Command Southeast, NAS Jacksonville, Bldg. 902, P.O. Box 30, Jacksonville, FL 32212-0030.  Therefore, we have forwarded your request to that office for action and direct response to you.

Questions regarding the action this office has taken during the initial processing of your request may be directed to Abby Machalec at 202-685-9269, abby.j.machalec.civ@us.navy.mil.

Tab C



**DEPARTMENT OF THE NAVY**
NAVAL FACILITIES ENGINEERING SYSTEMS COMMAND SOUTHEAST
JACKSONVILLE, FL 32212-0030

5720
BD523/00265
April 10, 2023

David Johnson
2200 Pennsylvania Ave. West Tower
Suite 500
Washington, DC 20037-1701

Dear Mr. Johnson:

SUBJECT:  FREEDOM OF INFORMATION ACT (FOIA) REQUEST DON-NAVY-2023-
016071/FY23-032

This letter responds to the above Freedom of Information Act (FOIA) request.  You have requested correspondence related to the operation of a military privatized housing project in Louisiana. You have requested the following:

1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among NONH, LNFH, Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project.

2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction".

3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023.

4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023.

5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023.

6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs.

7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented

5720
BD523/00265
April 10, 2023

through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA.

8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request.

9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and required a "loan repayment agreement" "within 90 days".

We have identified several emails that are responsive to your request. While many have been provided in full, some have undergone partial redaction in accordance with FOIA Exemption 5 (5 U.S.C §552 (b)(5)). This exemption is applied to protect inter-agency or intra-agency memorandums or letters, the deliberative process, attorney-client privilege, work product privilege, and other documents typically privileged in civil discovery. The withheld information pertains to predecisional and deliberative content.

Additionally, we have withheld (83) emails under both FOIA Exemption 5 and FOIA Exemption 4 (5 U.S.C §552 (b)(4)). This action is taken to safeguard the commercial and proprietary information of both the submitters and the government.

Regarding communications with the consultant, Concourse Group, these are not eligible for release under the Consultant corollary doctrine, a component of Exemption 5.

In view of the above, you may consider this to be an adverse determination that may be appealed. An appeal, if any, must be postmarked within 90 calendar days from the date of this letter and should include:

- A copy of your initial request
- A copy of this letter
- A statement indicating what you are appealing with any supporting arguments or reasons you think may be worthy of consideration
- Both the appeal letter and the envelope should bear the notation, "FOIA Appeal"

5720
BD523/00298
April 10, 2024

Please mail your appeal to:

Department of the Navy
Office of the General Counsel
1000 Navy Pentagon, Room 5A532
Washington, DC 20350-1000

An appeal may also be submitted via email to: DONOGCAPPEALS@us.navy.mil.

For any further assistance and to discuss any aspect of your request, you have the right to contact the Department of the Navy FOIA Public Liaison, Mr. Christopher Julka, at Christopher.A.Julka@navy.mil or (703) 697-0031. Additionally, the Office of Government Information Services (OGIS) provides a voluntary mediation process for resolving disputes between persons making FOIA requests and the Department of the Navy (DON). For more information, go to https://www.archives.gov/ogis/about-ogis/contact-information.

I am the official responsible for this decision; if you have any questions concerning this matter, you may contact my FOIA Coordinator, Ms. Atina Hall, at (904) 735-9639 or email atina.j.hall.civ@us.navy.mil.

Sincerely,

J. P. ADAMS
Captain, Civil Engineer Corps, U.S. Navy
Executive Officer

3



**DEPARTMENT OF THE NAVY**
NAVAL FACILITIES ENGINEERING SYSTEMS COMMAND SOUTHEAST
JACKSONVILLE, FL 32212-0030

5720
BD523
April 30, 2024

Memorandum

From:  Commanding Officer, Naval Facilities Engineering Systems Command Southeast
To:      Associate Counsel, Naval Facilities Engineering Systems Command, Headquarters

SUBJECT: FREEDOM OF INFORMATION ACT (FOIA) APPEAL DON-NAVY-2023-
016071/FY23-032

I.     **Introduction**

The Requester, Louisiana Navy Family Housing, LLC ("LNFH"), is the Managing Member of New Orleans Navy Housing, LLC ("NONH") a public-private venture ("PPV") formed with the DON[1], as Member, pursuant to the authority provided by Congress through the Military Housing Privatization Initiative[2] ("MHPI", 10 U.S.C. §2871 et. seq.).

NONH is organized under the Louisiana Limited Liability Company Act for the purpose to exclusively design, finance, construct, renovate, own, manage, acquire, lease, operate and maintain the Project[3], and any activities that are related or incidental to it. As such, NONH owns and operates the Project. LNFH, as NONH's Managing Member, maintains full control of the Project's operation, maintenance and repair. Whereas the DON, as Member, provides general oversight of the Project with limited approval rights which are guided by the Congressional mandate that requires the DON to secure the future sustainment, recapitalization and condition of the Project. Therefore, the business relationship that exist between LNFH and the DON is co-owners of NONH, a Limited Liability Corporation (LLC).

Pursuant to the Louisiana Limited Liability Company Act, the obligations and responsibilities of LNFH and DON, as co-owners of NONH, arise from and are fully described in the *Operating Agreement of New Orleans Navy Housing, LLC* (the "*OA*"), as amended and restated on January 17, 2012. The OA is a **non-Federal Acquisition Regulation** (FAR) transaction.

II.    **FOIA Request**

---

[1] The DON's execution authority to participate in this non-Federal Acquisition Regulation (FAR) transaction is under the ambit of the customary and accepted rules of commercial contract interpretation and practice.
[2] This initiative allows private sector financing, ownership, and operation and maintenance of military housing.
[3] The "Project" is a military housing privatization initiative project to provide family housing units for service members and their families.

**Exhibit A-4** ¹

The FOIA request under review is atypical since the Requester is not a member of the public who seeks to learn an agency's interpretation of a particular regulation, policy or existing FAR contract. This FOIA request was initiated after the Requester threatened litigation against the DON[4], as Member of NONH, for allegedly breaching its obligations of good faith and fair dealing under the *OA* by: 1) arbitrarily reducing rental income to the Project; (2) diverting funds intended for rental income to other activities and to the Member Operating Reserve Account ("MORA"); (3) arbitrarily refusing to release MORA funds to help pay for insurance premiums; and also by (4) failing to release funds to pay for general improvements from the Project Recapitalization Fund ("PRF").

You will confirm that the documents sought in Requests 1-9 all relate to DON's decisions as a Member of NONH; decisions which were all guided by the Congressional mandate to maintain fiscal responsibility of the Project.

### III.    Exemption 5- Consultant Corollary Test

The nature of the documents over which the DON has invoked the deliberative process privilege (Exemption 5) were mostly email communications between the DON and its Consultant- the Concourse Group[5]- which included recommendations, draft documents, proposals and suggestions in matters related to the Project's MHPI fiscal responsibility.

The documents will show that the Concourse Group assisted DON's high level employees in reaching a decision in relation to: (1) DON's concern with the short and long-term sustainment and recapitalization of the Project; (2) LNFH's refusal to replenish the Project's Recapitalization Fund ("PRF") in the amount of $3,253,243.00 after disbursements were made in 2021;(3) LNFH's request for a MORA[6] disbursement in the amount of $4M to cover the total sum owed by LNFH for the Project's 2023 insurance premiums[7]; (4) LNFH's request to prioritize the distribution of the Property Manager Incentive Fee and the Asset Manager Fee to the replenishment of the Project's accounts; and in (5) DON's determination to take precautionary measures in its oversight role and a conservative approach to preserve PRF and MORA funds for future Project needs.

The Concourse Group is a private entity that provided consultative services to the DON. The Concourse Group's contract with the DON expired by its own terms in October 2023 and included the execution of a Non-disclosure Agreement between the parties. When providing advice to the DON, the Concourse Group was not seeking a government benefit, at the expense of LNFH or NONH. The documents created by the Concourse Group were in aid of the agency's deliberative process. Accordingly, the opinions, memoranda, draft responses and financial analysis prepared by the Concourse Group as part of the decision-making process regarding the Project's MHPI fiscal responsibility must be protected from disclosure. There is no public interest nor benefit in the disclosure of these documents.

---

[4] Enclosed copy of the demand letters sent to the DON by the Requester and the DON's response.
[5] The Concourse Group had no direct or personal interest in the Project nor in the MHPI initiative.
[6] "MORA" stands for Member Operating Account. This account is controlled solely by the DON.
[7] Payment of Insurance premiums are the sole responsibility of the Managing Member as per the OA.

2

The advisory participation of the Concourse Group in DON's deliberative process withstands the test set in <u>Department of the Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1 (2001).

## IV.    DON's foreseeable harm reasoning under Exemption 5

**Request 1**-The documents withheld regarding this request were email communications that contain discussion, opinions and deliberation amongst the DON's employees and its Consultant (Concourse Group) in relation to LNFH's request for $4M loan out of the MORA account to cover the 2023 insurance premiums of the Project. This loan was requested because of insufficient funds in the Project's Tax and Insurance Escrow Fund which is the responsibility of the Managing Member.

The MORA account is a Project account solely controlled by the DON for the purpose of sustainment and recapitalization of the Project. DON has discretion on how it uses the MORA account. LNFH wanted to use $4M of the MORA account to pay an operational cost in detriment of the Project's financial health.

Revealing the internal deliberation process of this loan request (discretionary decision) will disrupt the decision-making process and cause a chilling effect on open and candid discussion among DON, its consultants and attorneys. The opinions of each of DON employee, consultant and attorneys should not be made public. Specially, when the final decision was fully explained to LNFH on a letter dated October 27, 2023. (Attached).

The DON stresses that the communications withheld were not and may not be considered as relating to contract administration decisions. The business relationship that exists between the DON and LNFH is not tantamount to the relationship that exist between a construction contractor and the government. As such, the communications withheld cannot be considered opinions relating to decisions about contract changes and modifications or requests for equitable adjustments as the Requester implies in its appeal.

LNFH requested DON to disburse millions of dollars to pay for an operating cost overrun from an account that is destined for the sustainment and recapitalization of the Project. This request had to be evaluated by DON's employees as part of a Congressional mandate and may not be compared to a modification of a contract or a request for equitable adjustment. Thus, all communications between DON's personnel, its consultant and attorneys should fall under predecisional and deliberative process.

**Request 2**- This request pertains a *"Letter of Dissatisfaction"* sent to LNFH on May 30, 2023. (Attached) DON expressed in this letter that LNFH was breaching its contractual and fiduciary duties as Managing Member of NONH since it failed to provide an Annual Budget estimating realistic projections or revenues and all operating expenses (specifically, insurance premiums) and had failed to ensure that operating costs that exceeded those set forth in the Annual Budget be paid from revenues and to [make] recommended appropriate adjustments to the following years Annual Budget. It further expressed that the Managing Member had not provided

3

all books and records of all accounts to include full access to all General Ledgers accounts. The reasons DON had to issue this *Letter of Dissatisfaction* were fully disclosed. Deliberative and predecisional communications between DON employees, its Consultant (Concourse Group) and DON attorneys are protected under Exemption 5. These documents could also find protection under Exemption 7(A), which permits the temporary protection of materials in investigatory files, to prevent the premature disclosure of the government's case and possible disruption of adversary proceedings.

It must be noted, that LNFH had already been apprised of DON's concerns via a letter dated June 12, 2023. (Attached) In this letter DON advised that it had an oversight responsibility which included receiving financial information necessary for complete understanding of the Project's financial situation and the need to understand why the accounts were underfunded and insufficient to cover operational costs. Accordingly, there is no compelling public interest nor benefit in the disclosure of preliminary conversations between the DON and its Consultants regarding the need to take precautionary measures in the Project's financial oversight.

If disclosure is required this will cause a foreseeable harm to the agency and will disrupt the decision-making process and cause a chilling effect on open and candid discussion among the DON employees, its consultants and attorneys. The opinions of each of DON employees, its Consultant and attorneys should not be made public. Specially, when the reasons to issue the *Letter of Dissatisfaction* were fully explained to LNFH.

Request 3- The documents withheld were the same ones as in Request 2.

Request 4- The documents withheld were the same ones as in Request 2 and 3.

Request 5- No documents were withheld. The "results or findings of the review of the Project's books and records" were discussed in person with the representatives of LNFH while on site and were later shared in a conference call with LNFH's representatives and employees.

Request 6- The documents withheld were the same as to Request 1.

Request 7-DON produced all documents that provide DON's Implementation Guidance on the "subsidy[8] implemented through the National Defense Authorization Act ("NDAA") for 2018". As opposed to the Requester's arguments, this request does pertain a DON policy and its development.

Request 8- DON produced all documents that provide factual matters relevant to the validation and endorsement of the 2021 Property Management Incentive Fee submitted by the Managing Member of NONH. Full or partial redactions were made to documents that included DON's internal discussions and approval hierarchy (names and positions) of the *Letter of Consent*

---

[8] Section 606 (a)(1) funds were authorized by Congress as additional payment to the lessor of covered housing. Meanwhile, Section 606 (a)(2) funds were authorized by Congress as additional payment to lessors responsible for underfunded projects, under such terms and in such amounts as determined by the Secretary, to one or more lessors responsible for underfunded MHPI housing projects identified pursuant to subparagraph (C) under the jurisdiction of the Secretary.

4

that was executed by NAVFAC Atlantic Commander. If disclosure is required this will cause a foreseeable harm to the agency and will disrupt the decision-making process. There is no public interest nor benefit in learning the names and positions of the approval hierarchy on a Project Manager Incentive fee.

Request 9- - DON produced all documents that provide factual matters relevant to the "release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH". DON made partial redactions of email communications that include the opinion of DON's employees and its consultant (Concourse Group) regarding the sufficiency of the supporting documents provided by LNFH in connection to its request. The opinion of DON's employees is protected since these led to the decision of disbursing the money conditioned to the replenishment of the PRF account (loan). The evaluation conducted by DON's employees of LNFH request cannot be compared to a modification of a contract or a request for equitable adjustment; these communications were not a routine collection of data and analysis but rather the evaluation of a request for a loan from an account that is intended to provide future capital repairs.

Disclosure of the documents withheld will foreseeably harm the decision-making process of DON's employees, consultants and attorneys to address the appropriateness of the management of NONH, a military housing project. Should these opinions and discussions be disclosed it would chill future internal discussions essential for assessing the sustainment, recapitalization and financial condition of this Project. Specially, when the Requester has already threatened litigation.

DON provided all the factual information contained in the privileged documents that could be separated. However, withheld all documents that included "counseling," intended to assist the agency in protecting its interests in view of potential litigation.

## V.    Exemption 4- Commercial and Proprietary Information

This exemption was raised exclusively to protect from disclosure the work product of the Concourse Group. More specifically, the financial analysis performed on the Project's financial accounts. This financial analysis used proprietary metrics (commercial) of the Concourse Group and its disclosure will foreseeably cause confusion and misinterpretation by the Requester.

The service contract that existed between the DON and the Concourse Group required an express assurance of non-disclosure and confidentiality. There was no express or implied indication that the metrics used by the Concourse Group to prepare a financial analysis of the Project's financial sustainability would be shared with the public.

## VI.    Requester has not met its burden of proof

Contrary to what the Requester argues in its appeal, the documents withheld provide DON's predecisional and deliberative process on policy issues that arise out of the MHPI initiative and the Congressional mandate to provide financial and administrative oversight to military housing projects. A well understanding of the document's function is crucial. Merely stating that

5

the information being sought is of factual matters presented to the contracting officials and/or providing the interpretation of an already existing contract (which they were not) is not enough to defeat the proper invocation of the privilege. The Requester must make a showing of necessity sufficient to outweigh the adverse effects the production would engender. See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 328-29 (D.D.C. 1966), aff'd, 384 F.2d 979 (D.C. Cir. 1967). The Requester did not meet this burden.

Thus, further, "[t]o test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." Coastal States Gas Corporation v. Department of Energy, 617 F.2d 854,866 (D.C. Cir. 1980). In this case, they are. They express the opinions of DON's employees in a full and frank exchange of information.

The Supreme Court decision in United States Fish & Wildlife Service v. Sierra Club, Inc., 141 S. Ct. 777 (2021) held that the deliberative process privilege protects from disclosure under FOIA in-house draft opinions that are both predecisional and deliberative, even if the drafts reflect the agencies' last views about a proposal." Id. at 782.

## VII.    Conclusion

DON adequately raised Exemptions 4 and 5 and complies with the Consultant Corollary and foreseeable harm test.

Atina Hall

6

| From: | Zeigler, Richard D CIV USN OGC WASH DC (USA) |
|---|---|
| To: | drjohnson@velaw.com |
| Cc: | Hall, Atina J CIV USN NAVFAC SE JAX FL (USA); Tejeda-Oyola, Edna M CIV USN NAVFAC SE JAX FL (USA); Zeigler, Richard D CIV USN OGC WASH DC (USA) |
| Subject: | YOUR FOIA APPEAL |
| Date: | Monday, May 13, 2024 1:13:26 PM |
| Attachments: | NONH Appeal of Navy FOIA Response.pdf |

Mr. Johnson:

Upon receipt of your FOIA appeal, attached, my office coordinated with the FOIA staff of the Initial Denial Authority, or IDA. I have determined that the appropriate disposition of your appeal is to remand it to the IDA so that the IDA can reconsider what has been done previously and take a new final action. Therefore, I remand this matter, by copy of this email, to the IDA, and direct the IDA to reconsider and act upon your request forthwith (typically within 30 days of this letter, but longer in complex cases or cases with a large volume of records).

I note that this remand does not imply any error by the IDA and should not be taken to indicate that the IDA will either grant or deny the request upon reconsideration. Rather, it is made for the sole purpose of allowing the IDA to reconsider action on your request.

I also note that the matter is remanded as is. If the IDA requires clarification, the IDA will reach out to If you have any questions, you should contact the IDA directly.

You will be afforded the right to appeal the IDA's final decision to this office.

Sincerely,
Richard D. Zeigler
Assistant to the General Counsel (FOIA)

**From:** Johnson, David R. <drjohnson@velaw.com>
**Sent:** Thursday, April 18, 2024 11:42 AM
**To:** DONOGCAPPEALS@us.navy.mil
**Cc:** USN NCR DNS Mailbox don foia pa <usn.ncr.dns.mbx.don-foia-pa@us.navy.mil>; christopher.a.julka@navy.mil; Hall, Atina J CIV USN NAVFAC SE JAX FL (USA) <atina.j.hall.civ@us.navy.mil>
**Subject:** [Non-DoD Source] APPEAL -- FOIA Request DON-NAVY-2023-016071/FY23-032

Attached please find an Appeal of the referenced FOIA decision.

**David R. Johnson**
Partner
**Vinson & Elkins LLP**
E drjohnson@velaw.com
W +1.202.639.6706
2200 Pennsylvania Avenue NW

**Exhibit A-5**

Suite 500 West
Washington, DC 20037
velaw.com

---

**CONFIDENTIALITY NOTICE:** The information in this email may be confidential and/or privileged. This email is
intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an
authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying
of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this
email in error, please immediately notify the sender by return email and delete this email from your system.

Thank You.

---



**DEPARTMENT OF THE NAVY**
NAVAL FACILITIES ENGINEERING SYSTEMS COMMAND SOUTHEAST
JACKSONVILLE, FL  32212-0030

5720
BD523/00488
June 12, 2024

David Johnson
2200 Pennsylvania Ave. West Tower
Suite 500
Washington, DC 20037-1701

Dear Mr. Johnson:

SUBJECT:  FREEDOM OF INFORMATION ACT (FOIA) REQUEST DON-NAVY-2023-
016071/FY23-032

The Naval Facilities Engineering Systems Command Southeast ("NAVFAC SE") has reevaluated its initial response to your Freedom of Information Act (FOIA) request after it was remanded to our office on May 13, 2024. You requested documents and correspondence that relate to your client's operation of a military privatized housing project in Louisiana for which the Department of the Navy (DON) is required by law, regulation, and policies to provide oversight of its future sustainment, recapitalization and financial condition. The details of your request are as follows:

1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among New Orleans Navy Housing (NONH), Louisiana Navy Family Housing (LNFH), Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project.

2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction".

3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023.

4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023.

5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023.

6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs.

**Exhibit A-6**

5720
BD523/00488
June 12, 2024

7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA.

8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request.

9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and required a "loan repayment agreement" "within 90 days".

As disclosed in our initial response, NAVFAC SE identified several emails that are responsive to your request; 93 documents and emails were provided in full, 12 underwent partial redactions in accordance with FOIA Exemption 5 (5 U.S.C §552 (b)(5)) and Exemption 6 (5 U.S.C §552 (b)(6)), and 83 were withheld in their entirety under Exemption 4 (5 U.S.C §552 (b)(4)) and Exemption 5. NAVFAC SE made available all non-privileged factual information extracted from these documents.

To further supplement our initial response, we have attached to this letter a brief description of the 83 documents withheld to include the FOIA Exemption applied and the subcategories under Exemption 5 that were applied.

Please take notice that the DON invoked Exemption 4 to protect from disclosure the work product of the Concourse Group which used proprietary metrics; disclosure of this work product will not only cause confusion in the public but will foreseeably be misinterpreted. The Concourse Group is a private entity that provided consultative services to the DON. The consultative service contract that existed between the DON and the Concourse Group required an express assurance of non-disclosure and confidentiality as well as the execution of a Non-Disclosure Agreement. Accordingly, the opinions and financial analysis prepared by the Concourse Group, as part of the decision-making process of the DON regarding the Project's Military Housing Privatization Initiative (MHPI) fiscal responsibility, must be protected. There is no public interest nor benefit in the disclosure of these documents.

2

5720
BD523/00488
June 12, 2024

Please take further notice that the nature of the documents over which the DON has invoked Exemption 5, deliberative process -Consultant Corollary- were mostly email communications between the DON and its Consultant- the Concourse Group- which included recommendations, draft documents, proposals and suggestions in matters related to the Project's MHPI fiscal responsibility. The Concourse Group assisted DON's high level employees in reaching a decision in relation to:

- DON's concern with the short and long-term sustainment and recapitalization of the Project

- LNFH's refusal to replenish the Project's Recapitalization Fund ("PRF") in the amount of $3,253,243.00 after disbursements were made in 2021

- LNFH's request for a MORA disbursement in the amount of $4M to cover the total sum owed by LNFH for the Project's 2023 insurance premiums

- LNFH's request to prioritize the distribution of the Property Manager Incentive Fee and the Asset Manager Fee to the replenishment of the Project's accounts

- DON's determination to take precautionary measures in its oversight role and a conservative approach to preserve PRF and MORA funds for future Project needs.

Thus, all communications between DON's personnel, its consultant and attorneys fall under predecisional and deliberative process. These documents could also find protection under Exemption 7(A), which permits the temporary protection of materials in investigatory files, to prevent the premature disclosure of the government's case and possible disruption of adversary proceedings. Disclosure of these documents and communications will cause a foreseeable harm to the agency and will disrupt the decision-making process and cause a chilling effect on open and candid discussion among the DON employees, its consultants and attorneys.

Finally, we have also redacted the names and contact information of individuals pursuant to FOIA Exemption 6 (5 U.S.C §552 (b)(6)), which authorizes the redaction of information in files, that, if disclosed to a requester would result in a clearly unwarranted invasion of personal privacy. This exemption was applied to the documents withheld entirely as well as those (12) partially redacted.

In view of the above, you may consider this to be an adverse determination that may be appealed. An appeal, if any, must be postmarked within 90 calendar days from the date of this letter and should include:

- A copy of your initial request.
- A copy of this letter.
- A statement indicating what you are appealing with any supporting arguments or reasons you think may be worthy of consideration.
- Both the appeal letter and the envelope should bear the notation, "FOIA Appeal."

3

5720
BD523/00488
June 12, 2024

Please mail your appeal to:

Department of the Navy,
Office of the General Counsel
1000 Navy Pentagon, Room 5A532
Washington, DC 20350-1000

An appeal may also be submitted via email to: DONOGCAPPEALS@us.navy.mil .

For any further assistance and to discuss any aspect of your request, you have the right to contact the Department of the Navy FOIA Public Liaison, Mr. Christopher Julka, at Christopher.A.Julka@navy.mil or (703) 697-0031. Additionally, the Office of Government Information Services (OGIS) provides a voluntary mediation process for resolving disputes between persons making FOIA requests and the Department of the Navy (DON). For more information, go to https://www.archives.gov/ogis/about-ogis/contact-information.

I am the official responsible for this decision; if you have any questions concerning this matter, you may contact my FOIA Coordinator, Ms. Atina Hall, at (904) 735-9639 or email atina.hall@navy.mil.

Sincerely,

J. P. ADAMS
Captain, Civil Engineer Corps, U.S. Navy
Executive Officer

4

| Withheld Record | Exemption | Subcategory of Exemption 5 |
|---|---|---|
| 1 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 2 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 3 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 4 | 5 | Deliberative Process Privilege |
| 5 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 6 | 5 | Deliberative Process Privilege |
| 7 | 5 | Deliberative Process Privilege/Attorney-Work Product Privilege/ |
| 8 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 9 | 5 | Deliberative Process Privilege |
| 10 | 5 | Deliberative Process Privilege |
| 11 | 5 | Deliberative Process Privilege |
| 12 | 5 | Deliberative Process Privilege |
| 13 | 5 | Atty Client Privliege/Deliberative Process Privilege |
| 14 | 5 | Deliberative Process Privilege |
| 15 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 16 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 17 | 5 | Deliberative Process Privilege |
| 18 | 4&5 | Deliberative Process Privilege |
| 19 | 5 | Deliberative Process Privilege |
| 20 | 5 | Attorney-Client Privilege/Attorney Work Product Privilege/Delibe |
| 21 | 5 | Attorney-Client Privilege/Deliberative Process Privilege/Consult |
| 22 | 5 | Deliberative Process |
| 23 | 5 | Deliberative Process Privilege |
| 24 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 25 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 26 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 27 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 28 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 29 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 30 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 31 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 32 | 5 | Deliberative Process Privilege |
| 33 | 5 | Deliberative Process Privilege |
| 34 | 5 | Deliberative Process Privilege |
| 35 | 5 | Deliberative Process Privilege |
| 36 | 5 | Deliberative Process Privilege |
| 37 | 5 | Deliberative Process Privilege |
| 38 | 5 | Deliberative Process Privilege |
| 39 | 5 | Deliberative Process Privilege |
| 40 | 5 | Atty Client Privliege |
| 41 | 5 | Atty Client Privliege |
| 42 | 5 | Deliberative Process Privilege |
| 43 | 5 | Deliberative Process Privilege |
| 44 | 5 | Deliberative Process Privilege |
| 45 | 5 | Deliberative Process Privilege |
| 46 | 5 | Deliberative Process Privilege |
| 47 | 5 | Deliberative Process Privilege |

| 48 | 5 | Deliberative Process Privilege |
| 49 | 5 | Deliberative Process Privilege |
| 50 | 5 | Deliberative Process Privilege |
| 51 | 5 | Deliberative Process Privilege |
| 52 | 5 | Deliberative Process Privilege |
| 53 | 5 | Deliberative Process Privilege |
| 54 | 5 | Deliberative Process Privilege |
| 55 | 5 | Deliberative Process Privilege |
| 56 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 57 | 5 | Deliberative Process Privilege |
| 58 | 5 | Deliberative Process Privilege |
| 59 | 5 | Deliberative Process Privilege |
| 60 | 5 | Deliberative Process Privilege |
| 61 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 62 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 63 | 5 | Deliberative Process Privilege |
| 64 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 65 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 66 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 67 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 68 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 69 | 5 | Deliberative Process Privilege |
| 70 | 5 | Deliberative Process Privilege |
| 71 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 72 | 5 | Deliberative Process Privilege |
| 73 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 74 | 5 | Deliberative Process Privilege |
| 75 | 5 | Deliberative Process Privilege |
| 76 | 5 | Atty Client Privliege/Deliberative Process Privilege |
| 77 | 5 | Deliberative Process Privilege |
| 78 | 5 | Deliberative Process Privilege |
| 79 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 80 | 5 | Deliberative Process Privilege |
| 81 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 82 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 83 | 5 | Delibertive Process Privilege/Consultant Corollary |

Please note that Ex. 6 has been applied to each conversation.

/Consultant Corollary

ertive Process Privilege
ant Corollary

| Partially Denied Record | Exemption | Subcategory of Exemption 5 |
|---|---|---|
| 1P | 5 | Deliberative Process Privilege |
| 2P | 5 | Deliberative Process Privilege |
| 3P | 5 | Deliberative Process Privilege |
| 4P | 5 | Deliberative Process Privilege |
| 5P | 5 | Deliberative Process Privilege |
| 6P | 5 | Deliberative Process Privilege |
| 7P | 5 | Deliberative Process Privilege |
| 8P | 5 | Deliberative Process Privilege |
| 9P | 5 | Deliberative Process Privilege |
| 10P | 5 | Deliberative Process Privilege |
| 11P | 5 | Deliberative Process Privilege |
| 12P | 5 | Deliberative Process Privilege |

Please note that Ex. 6 has been applied to each conversation.

# Vinson&Elkins

David R. Johnson  drjohnson@velaw.com
**Tel** +1.202.639.6706  **Fax** +1.202.879.8906

June 21, 2024

**Via E-Mail (DONOGCAPPEALS@us.navy.mil.)**

Department of the Navy
Office of the General Counsel
1000 Navy Pentagon, Room 5A532
Washington, DC 20350-1000

      Re:    Appeal of Department of Navy's June 12, 2024 Response;
              Freedom of Information Act Request DON-NAVY-2023-016071/FY23-032

Dear Madame/Sir:

This letter serves as an appeal of the referenced June 12, 2024 response by the Department of the Navy, Naval Facilities Engineering Command Southeast, Jacksonville, Florida (the "Navy") to a September 7, 2023 Freedom of Information Act ("FOIA") Request that we filed on behalf of our clients, New Orleans Navy Housing, LLC ("NONH") and Louisiana Navy Family Housing, L.L.C. ("LNFH"), with respect to certain matters concerning their project to operate a military privatized housing project in Louisiana (the "Project"). This is the *second appeal* with respect to the underlying September 7, 2023 FOIA request. The Navy's June 12, 2024 letter to the undersigned sets forth the Navy's determination after your office remanded the matter to the local Navy command to reassess its prior refusal to turn over responsive documents (the "Remand Response"). A copy of the September 7, 2023 FOIA Request is attached at **Tab A**; a copy of the Navy's Response to the FOIA Request is attached at **Tab B**; a copy of our prior appeal dated April 18, 2024 is attached at **Tab C**; and a copy of the Navy's Remand Response is attached at **Tab D**.

Vinson & Elkins LLP  Attorneys at Law
Austin  Dallas  Dubai  Houston  London  Los Angeles
New York  Richmond  San Francisco  Tokyo  Washington

2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037-1701
Tel +1.202.639.6500  Fax +1.202.639.6604  velaw.com

Exhibit A-7

V&E

In the Remand Response, the Navy continues to refuse to provide any of the documents—whether in whole or part—that it previously had refused to provide. The rationales for withholding information set forth in the Remand Response are unsupported, incorrect as a matter of law, and often irrelevant. The Navy failed to rebut a single legal argument set forth in the prior appeal, and instead, it relies on impertinent claims to withhold documents that should have been released months ago. One rationale that the Navy now relies on is that release of certain documents will "only cause confusion" and "will foreseeably be misinterpreted". Another new Navy unsupported and irrelevant rationale is that "there is no public interest or benefit" in disclosing certain documents. And, the Navy even makes new statements where it wonders aloud if the documents "could also find protection under Exemption 7(A)", and in doing so, the Navy fails to actually state if it contends certain documents are protected by that exemption and utterly fails to even try to meet the burden of establishing that exemption with any details. Finally, the Navy applies Exemption 6 to justify withholding names from documents of people who wrote or received the documents, when Exemption 6 protects personnel and medical records, none of which are at issue here.

The Navy also included a purported "index" which it described in the Remand Response as "a brief description of the 83 documents withheld to include the FOIA Exemption applied and the subcategories under Exemption 5 that were applied". Tab D, Remand Response at 2 (index attached at end of Tab D). Incredibly as shown in the sample entries below, that purported index provides no information whatsoever about the documents to which the Navy has claimed an exemption:



| Withheld Record | Exemption | Subcategory of Exemption 5 |
|---|---|---|
| 1 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 2 | 4&5 | Delibertive Process Privilege/Consultant Corollary |

We trust that you as the appeal authority recognize that such an index is completely inadequate and appears intended only to further stifle the resolution of this request.

In short, the Navy clearly does not want to disclose the requested documents, but at the same time, the Navy also clearly has no legal basis to withhold them under the FOIA. The time has come now to end the delays imposed by the Navy and direct the disclosure of all the requested documents, without redactions.

## I.    Summary of the Request and Response

As discussed in our appeal dated April 18, 2024, NONH and LNFH are parties to certain contracts with the Navy that establish and operate the Project. As evidenced in the FOIA Request (Tab A), all of the documents that NONH and LNFH requested have to do directly with specific actions by the Navy under the contracts with NONH and LNFH—e.g.:

- Request 1 seeks documents that relate to negotiations concerning insurance premiums for the Project;

- Request 2 seeks documents that discuss the development of a letter that the Navy sent to LNFH;

- Request 3 seeks documents that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023;

- Request 4 seeks documents between the Navy and its consultant, Concourse Group, that relate to the Navy's review of the Project's books and records from that trip;

- Request 5 seeks documents that relate to the results or findings of the review of the Project's books and records from that trip;

- Request 6 seeks documents generated by the Concourse Group that relate to whether or not to release funds from the Project's Member Operating Reserve Account ("MORA") to cover insurance premium costs;

- Request 7 seeks documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, including documents that discuss that the subsidy, in whole or part, shall be deposited into the Project's MORA;

- Request 8 seeks documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023; and

- Request 9 seeks documents that refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH.

None of the requests seek documents related to Navy policies, nor the development of Navy policies.

Moreover, none of the documents requested would include commercial confidential information of any entity but NONH, LNFH, or entities with management common to those entities.

In responding to the FOIA Request after over seven months, the Navy did not provide *any details* about the number of responsive documents that it located. Now, almost nine months after NONH and LNFH submitted the FOIA Request, the Navy still has not provided sufficient details about withheld documents. To date, the Navy has invoked FOIA Exemption 5 (5 U.S.C. § 552(b)(5)) *95 times without any detail or justification* to withhold responsive documents. And, although the Navy produced *some* documents to NONH and LNFH, those released documents predominantly consist of materials that NONH or LNFH had themselves prepared or communications that involved NONH, LNFH and their personnel.



With respect to its reliance on Exemption 5, the Navy explained that "[t]his exemption is applied to protect inter-agency or intra-agency memorandums or letters, the deliberative process, attorney-client privilege, work product privilege, and other documents typically privileged in civil discovery. The withheld information pertains to predecisional and deliberative content." According to the Navy, it also withheld an undisclosed number of documents prepared by or involving communications with the Navy's contractor, Concourse Group, because "these are not eligible for release under the Consultant corollary doctrine, a component of Exemption 5." In addition, the Navy explained that "we have withheld (83) emails under both FOIA Exemption 5 and FOIA Exemption 4 (5 U.S.C. §552 (b)(4)). This action is taken to safeguard the commercial and proprietary information of both the submitters and the government." However, while the Navy's index shows it invoked Exemption 4 at least eight times, the Navy did not provide any specific information about its reliance on FOIA Exemption 4. See index at end of Tab D.

## II.    Again, The Navy's Reliance on Exemption 5 Is Legally Insupportable

In its Remand Response, the Navy has completely failed to carry its burden and justify any right to withhold documents on the basis of Exemption 5. Exemption 5 provides that the FOIA disclosure requirements do not apply to matters that are, "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). However, the records requested here are *exactly* the documents that *would be available* by law to NONH or LNFH were they in litigation with the Navy. Moreover, there is not a single request that seeks information about internal Navy deliberations over matters of broader policy or of issues that relate to anything other than actions taken by the Navy and its consultant under the Navy's contracts with NONH



and LNFH.  Accordingly, none of the requested documents could possibly be exempt from disclosure under Exemption 5, and in its Remand Response, the Navy has not identified or described a single document that embodies a broad Navy policy issue – all of the documents were prepared specifically concerning LNFH and NONH's Project and their contracts.

Longstanding precedent binding on the Navy clearly establishes that there is a distinction between internal agency deliberations about policy matters, on the one hand, and internal deliberations about contract administration matters, on the other, and Exemption 5 does not protect from disclosure documents developed by Navy personnel, including their consultant (Concourse Group) who are acting in a contractual capacity and not in a role of developing agency policy.  The policy behind Exemption 5 is to protect against a "chilling effect" in *public policy decision-making*.  *See, e.g., Vaughn v. Rosen*, F.2d 1136, 1146 (D.C. Cir. 1975).  However, legal precedent makes it clear that the "chilling effect" concern is not applicable where individuals are providing opinions about matters of contract administration on a particular government contract:

> Factual investigations, such as evaluations of contract claims, that are needed in the ordinary course of Government business, will not foreseeably dry up because of the possibility of future disclosure.  If anything, the knowledge of possible future disclosure would simply bring to bear a greater incentive for the investigators to be fully accurate, which we view as a salutary effect to be sought after, not avoided.

*Ingalls Shipbuilding Div., Litton Syss., Inc.*, ASBCA No. 17717, 73-2 BCA ¶ 10,205 (Aug. 16, 1973).  The Armed Services Board of Contract Appeals, the Civilian Board of Contract Appeals and individual agency predecessor Boards of Contract Appeals all hold that the deliberative process privilege is not

applicable to factual matters presented to agency contracting officials. *Id.*; *see also 4K Global-ACC Joint Venture, LLC, v. Department of Labor*, CBCA Nos. 6683, 6761, 6762, 6827, 6828, 6829, 6830, 6831, 6833, 6834, 6835, 6836, 6837, 6839, 6918, 6919, 6920, 6921, and 6922 (Feb. 10, 2021) at 12-13 (discussing *Ingalls Shipbuilding* with approval); *Carl W. Olson & Sons Co.*, IBCA 930-9-71, 74-1 BCA ¶ 10,564 (citing *Ingalls Shipbuilding* with approval); *Robert E. McKee General Contractor, Inc.*, GSBCA 3697, 1973 WL 1973 (Oct. 16, 1973) (same). Similarly, interpretation of an already-existing contract is considered to be factual information that cannot be withheld by the deliberative process privilege. *Federal Data Corp.*, DOTCAB No. 2389, 91-3 BCA ¶ 24,063 (June 7, 1991). In the context of procurements like this, factual information encompasses such matters as solicitation preparation, proposal evaluation, negotiations, contract formation, cost accounting analyses, audits, contract interpretation, and other contract administration issues. *See Xerox Corp. v. Government Printing Office*, GSBCA No. 12322-P, 93-3 BCA ¶ 25,936, at 128,994 (discussing evaluation documents concerning contractor's performance and scheduling); *Walsky*, 20 Cl. Ct. at 321 (discussing agency inspector general's report); *Centel Fed. Syss., Inc. v. Department of the Navy*, GSBCA No. 12011-P, 93-1 BCA ¶ 25,534, at 127,195; *see also Ingalls Shipbuilding* at 48,100 (discussing agency documents evaluating contractor's claims). Thus, documents where Navy personnel who participate in the process of administrating contracts related to the Project and that discuss Project facts and reasons for possibly taking positions with respect to those contracts are not cloaked in secrecy from disclosure by Exemption 5.

Further bolstering the legal conclusion that Exemption 5 does not apply to the documents requested here—none of the governmental and consultant personnel involved in these documents have any

policy-making role. This is plainly evident insofar as the Navy has never asserted that any personnel involved in the documents at issue have any policy-making role within the Navy. See Tab D. Rather, the governmental personnel likely involved in the withheld communications are relatively low-level personnel who neither set nor make recommendations on Navy policy.[1] In considering the "chilling effect" argument, courts have held that only discussions between higher-level officials can qualify as "policy deliberations" because agency policies are normally established by or at the direction of senior-level officials. Specifically, discussions between lower-level agency personnel administering a contract do not and cannot properly constitute policy deliberations within the meaning of the executive privilege; because at most, such discussions pertain to the implementation of agency policy, which is not within the scope of the exemption. *See, e.g., Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939, 946 (Ct. Cl. 1958) (describing deliberations involving the Administrator of General Services); *SCM Corp. v. United States*, 473 F. Supp. 791 (Cl. Ct. 1979) (describing deliberations of and advice provided to International Trade Commissioners).

In addition, to properly assert the deliberative process privilege, the Navy should have for each document "identif[ied] the policy matter for which the privilege is claimed." *Unisys Corp.*, 95-2 BCA ¶ 27,903. Yet, *twice now* (in its original response and in the Remand Response) the Navy has not identified and cannot identify a policy that the withheld documents address because the documents do not address

---

[1] In the Remand Response, the Navy refers to "DON's high level employees" who interacted with the Navy's consultant, Concourse Group. Remand Response at 3. Yet, none of those personnel set Navy policy and as admitted in the Remand Response, they dealt only with contract specific issues. See Tab D.



any policy, and after having a second shot at providing such information, the Navy did not even attempt to do so. Clearly, none of the documents address a Navy policy or formation of a Navy policy, and the Navy has failed to meet its burden in so demonstrating. Instead, based on the requests themselves, the documents relate to specific, individualized decisions on NONH and LNFH's contracts. As Boards of Contract Appeals have found conclusively, such an individualized contract issue cannot be deliberative because "***matters of contract administration do not rise to the level of protected advisory opinions or legal or policy recommendations***." *Brero Constr. Inc.*, LBCA No. 1997-BCA-4, 1999 WL 624138 (June 18, 1999); *see also Unisys Corp. v. Dep't of Commerce*, GSBCA No. 12823-COM, 95-2 BCA ¶ 27,903 (Aug. 10, 1995) (stating that documents concerning contract administration do not concern policy or legal matters and finding that contract performance by the contractor and technical difficulties related to contract performance were matters of contract administration).

The only explanation the Navy provided in the Remand Response is to state that the "nature of the documents ... include[] recommendations, draft documents, proposals and suggestions in matters related to the Project's MHPI fiscal responsibility". Again, these are completely matters of contract administration on one contract, not broader Navy policy. There is no connection to Exemption 5 simply because the Navy thinks it documents evidence of "a conservative approach to preserve PRF and MORA funds for future Project needs." Tab D, Remand Response at 3. In fact, that is the exact type of document that must be released under FOIA.

For these reasons, the Navy has failed completely to properly invoke Exemption 5 and to demonstrate that any withheld document is subject to Exemption 5. Thus, the requested documents cannot



be withheld on the basis of FOIA Exemption 5. The Navy should not permit the Naval Facilities Command Southeast to improperly invoke Exemption 5 after taking over nine months to respond to a legitimate, focused FOIA request targeting specific documents that reveal only contract administration facts.

## III.    Again, Exemption 4 Is Inapplicable Here

As noted above, the Navy also invoked Exemption 4 of the FOIA to withhold documents, but in its original response, the Navy gave no details about why that exemption would possibly be relevant or to which documents that exemption could possibly apply. And, in the Remand Response (Tab D), the Navy again completely fails to justify the applicability of Exemption 4, because it cannot. Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that are] privileged or confidential." 5 U.S.C. § 552(b)(4). In our original appeal, we noted that Exemption 4 cannot apply here to exclude any documents, because all of the documents requested specifically pertain to NONH and LNFH or to entities that share common management with the team—in other words, there is no applicability or need for Exemption 4 protection when the information in question relates solely to the requester. Tab C. In response to this, the Navy explained in its Remand Response as follows:

> Please take notice that the DON invoked Exemption 4 to protect from disclosure [1] the work product of the Concourse Group which used proprietary metrics; [2] disclosure of this work product will not only cause confusion in the public but will foreseeably be misinterpreted. The Concourse Group is a private entity that provided consultative services to the DON. [3] The consultative service contract that existed between the DON and the Concourse Group required an express assurance of non-disclosure and confidentiality as well as the execution of a Non-Disclosure Agreement. [4] Accordingly, the opinions and financial analysis prepared by the Concourse Group, as part of the decision-making process of the

> DON regarding the Project's Military Housing Privatization Initiative (MHPI) fiscal responsibility, must be protected. There is no public interest nor benefit in the disclosure of these documents.

Tab D, Remand Response at 2. Not one of the rationales included in this "justification" is a legal basis for invoking Exemption 4.

First, even assuming that the Concourse Group's work product resulted from "proprietary metrics", the request is for the work product that was turned over the Navy, not for Concourse's "proprietary metrics" that purportedly were employed in creating its work product. To meet its burden, the Navy would need to start with the assertion that the documents *disclose* these purported "proprietary metrics", and the Navy clearly has not made such an assertion. Moreover, the Federal Acquisition Regulation ("FAR") and the DoD FAR Supplement provide plainly that the Government (i.e., the Navy here) receives unlimited rights in data first produced in the performance of the contract and data delivered under the contract. All emails and reports prepared by Concourse that were delivered to the Navy are not proprietary to Concourse and not protected under Exemption 4.

Second, there is no basis to withhold a document in the Navy's possession because the document is deemed by Navy personnel to be likely to "only cause confusion in the public" or that the Navy is concerned that someone other than the Navy will "foreseeably … misinterpret[]" the document. Whether the documents are poorly created or not has no bearing on whether they must be released under FOIA.

Third, a bald claim that the contract between the Navy and Concourse "required an express assurance of non-disclosure and confidentiality as well as execution of a Non-Disclosure Agreement" is disingenuous and impertinent. Notably, the Navy stopped short of providing those purported "non-



disclosure and confidentiality" provisions, and never states that those provisions actually bind the Navy and "required an express assurance of non-disclosure" *by the Navy* (because they do not). Typical federal contracts with consultants require that the consultant and its personnel treat information that they receive as confidential, and in this case, the information would be information that relates to LNFH, NONH or the Project. FOIA was enacted to create an enforceable right of "access to official information long shielded unnecessarily from public view." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). As the Supreme Court has explained, the "core purpose" of the Act is to increase "public understanding of the operations or activities of the government." *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989) (citation omitted). "The burden of proof is on the government to justify [FOIA] exemption[s]." *Heights Cmty. Cong. v. Veterans Admin.*, 732 F.2d 526, 529 (6th Cir. 1984). Here, the Navy's unsupported claim of some contractual barrier is inconsistent with the law, completely unsupported and fails to meet the Navy's burden of proof to justify withholding the information.

Fourth and finally, the Navy makes a sweeping, unsupported assertion that "the opinions and financial analysis prepared by the Concourse Group, as part of the decision-making process of the DON regarding the Project's Military Housing Privatization Initiative (MHPI) fiscal responsibility, must be protected." Tab D, Remand Response at 2. This statement walks headlong into the Navy's problem with invoking Exemption 5: the decision making here is solely about a contract, not policy; and contract administration activity is not covered by Exemption 5. And, as to Exemption 4, there is no basis under that exemption simply because a document relates to decisions about "fiscal responsibility".



IV.     **The Navy's New Reference to Exemption 7(A) As A Justification for Withholding Is Insupportable**

In a new, odd twist in the Remand Response, the Navy awkwardly suggests—again without any support—that "[t]hese documents *could also find protection* under Exemption 7(A), which permits the temporary protection of materials in investigatory files, to prevent the premature disclosure of the government's case and possible disruption of adversary proceedings." Tab D, Remand Response at 3. As phrased, the Navy seems reluctant to actually assert that any document here is protected under Exemption 7(A) (which would be a fantastic claim), and in fact, the Navy never invokes Exemption 7(A) in its index (see index at end of Tab D). The reason that the Navy never actually invokes Exemption 7(A) as applicable to *any document* is that in order for any document to "find protection" under Exemption 7(A), there would have had to have been a law enforcement investigation, and here, there is no enforcement proceeding whatsoever. All the parties agree that the documents in question were prepared internally to the Navy or exchanged back and forth with its consultant, Concourse, as a part of administering a contract. Moreover, the head of the Project for the Navy told NONH and LNFH after a week-long review by the Navy and its consultants of the Project's general ledger that everything was "in order". The fact that nine months after the FOIA request the Navy makes such an irresponsible, unsupported and seemingly desperate *suggestion* that some of the documents here "could also find protection" under Exemption 7(A) suggests a lack of credibility on the part of the local command in its dealings with the Navy's appeal authority.



**V.     There is No Valid Basis Here to Invoke Exemption 6 to Redact Names of Authors of Documents**

In one final twist, the Navy claims in its Remand Response that it is entitled to redact "names and contact information of individuals pursuant to FOIA Exemption 6 (5 U.S.C. §552 (b)(6))" because that exemption "authorizes the redaction of information in files, that, if disclosed to a requester would result in a clearly unwarranted invasion of personal privacy." Tab D, Remand Response at 3. This again is a misguided and incorrect invocation of a FOIA exemption apparently made to frustrate LNFH and NONH's request for information. FOIA Exemption 6 applies to "personnel and medical and similar files", not to names of authors or recipients of emails relating to a contract and not to names of authors or recipients of contract analyses. Every one of the authors of the documents at issue in the Navy's files have been working on the Project and writing emails and documents that they exchange with NONH or LNFH almost daily. The Navy has failed to explain—and failed to meet its burden here—as to why it would be appropriate serve any privacy-protection purpose to redact names of Navy personnel and Concourse personnel from documents that they authored about the Project in question here, when they are widely known to be working on that Project.

\* \* \* \* \*



## VI.     Conclusion and Request

For the foregoing reasons, NONH and LNFH request that the Navy sustain this Appeal, rule that

the Naval Facilities Command Southeast's invocation of FOIA Exemptions 5, 4, 7(A) and 6 in the context

of this FOIA request are incorrect as a matter of fact and law, and require that a complete collection of all

responsive documents be released promptly without redactions to NONH and LNFH.

Sincerely,



David R. Johnson

cc:     J.P. Adams, Captain, Civil Engineer Corps, U.S. Navy, Executive Officer
        Department of the Navy
        Naval Facilities Engineering Command Southeast
        Jacksonville, Florida 32212-0030

        Chief of Naval Operations, DNS-36, usn.ncr.dns.mbx.don-foia-pa@us.navy.mil
        Christopher Julka, FOIA Public Liaison, christopher.a.julka@navy.mil
        Atina Hall, FOIA Coordinator, atina.j.hall.civ@us.navy.mil

4878-7392-2504v.1

## Tab A

 An official website of the United States government
Here's how you know

 UNITED STATES DEPARTMENT *of* JUSTICE

 **FOIA.gov**

MENU

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 841396

# Success!

## Your FOIA request has been created and is being sent to the Department of the Navy.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

## Contact the agency

FOIA Requester Service Center

202-685-0412

usn.ncr.dns.mbx.don-foia-pa@us.navy.mil

Christopher Julka, FOIA Public Liaison

703-697-0031

christopher.a.julka@navy.mil

Chief of Naval Operations, DNS-36
2000 Navy Pentagon
Washington, DC 20350-2000

usn.ncr.dns.mbx.don-foia-pa@us.navy.mil

---

# Request summary

Request submitted on **September 7, 2023**.

The confirmation ID for your request is **841396**.



The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
David Johnson

**Mailing address**
2200 Pennsylvania Avenue
West Tower, Suite 500
Washington, DC 20037-1701
United States

**Phone number**
2026396706

**Company/organization**
Vinson & Elkins LLP

**Email**
DRJOHNSON@VELAW.COM

---

# Your request

We represent New Orleans Navy Housing, LLC ("NONH") and Louisiana Navy Family Housing, L.L.C. ("LNFH") with respect to certain matters concerning the their project to operate a military privatized housing project in Louisiana (the "Project"). NONH and LNFH are parties to an Amended and Restated Operating Agreement dated January 17, 2012 with the United States of America represented by the Department of the Navy (the "Navy") that relates to and governs aspects of the management and operation of the Project. The Concourse Group is an outside contractor that supports the Navy with respect to the Project. The requests below relate to the Project. Our requests follow: 1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among NONH, LNFH, Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project. 2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction". 3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023. 4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023. 5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023. 6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs. 7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA. 8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request. 9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and

Case 2:25-cv-00363-LMA-DPC   Document 20-2   Filed 06/18/25   Page 70 of 170

required a "loan repayment agreement" "within 90 days". * * * * * We agree to pay reasonable search reproduction fees for the records up to $250. If the estimate of search and reproduction fees exceeds such amount, we request that you contact us so that we can understand the estimate and provide appropriate approvals.

## Fees

**What type of requester are you?**
other

**Fee waiver**
no

**The amount of money you're willing to pay in fees, if any**
$250.00

## Request expedited processing

**Expedited processing**
no



### CONTACT

Office of Information Policy (OIP)

U.S. Department of Justice

441 G St, NW, 6th Floor

Washington, DC 20530

E-mail: National.FOIAPortal@usdoj.gov

Hero image credit    CC3.0

| FREQUENTLY ASKED QUESTIONS

| DEVELOPER RESOURCES

| AGENCY API SPEC

| FOIA CONTACT DOWNLOAD

| FOIA DATASET DOWNLOAD

| ACCESSIBILITY

| PRIVACY POLICY

| POLICIES & DISCLAIMERS

| JUSTICE.GOV

| USA.GOV

## Tab B

**Johnson, David R.**

| | |
|---|---|
| **From:** | Zeigler, Richard D CIV USN OGC WASH DC (USA) <richard.d.zeigler.civ@us.navy.mil> |
| **Sent:** | Monday, May 13, 2024 1:13 PM |
| **To:** | Johnson, David R. |
| **Cc:** | Hall, Atina J CIV USN NAVFAC SE JAX FL (USA); Tejeda-Oyola, Edna M CIV USN NAVFAC SE JAX FL (USA); Zeigler, Richard D CIV USN OGC WASH DC (USA) |
| **Subject:** | YOUR FOIA APPEAL |
| **Attachments:** | NONH Appeal of Navy FOIA Response.pdf |

[EXTERNAL]

Mr. Johnson:

Upon receipt of your FOIA appeal, attached, my office coordinated with the FOIA staff of the Initial Denial Authority, or IDA. I have determined that the appropriate disposition of your appeal is to remand it to the IDA so that the IDA can reconsider what has been done previously and take a new final action. Therefore, I remand this matter, by copy of this email, to the IDA, and direct the IDA to reconsider and act upon your request forthwith (typically within 30 days of this letter, but longer in complex cases or cases with a large volume of records).

I note that this remand does not imply any error by the IDA and should not be taken to indicate that the IDA will either grant or deny the request upon reconsideration. Rather, it is made for the sole purpose of allowing the IDA to reconsider action on your request.

I also note that the matter is remanded as is. If the IDA requires clarification, the IDA will reach out to If you have any questions, you should contact the IDA directly.

You will be afforded the right to appeal the IDA's final decision to this office.

Sincerely,
Richard D. Zeigler
Assistant to the General Counsel (FOIA)


**From:** Johnson, David R. <drjohnson@velaw.com>
**Sent:** Thursday, April 18, 2024 11:42 AM
**To:** DONOGCAPPEALS@us.navy.mil
**Cc:** USN NCR DNS Mailbox don foia pa <usn.ncr.dns.mbx.don-foia-pa@us.navy.mil>; christopher.a.julka@navy.mil; Hall, Atina J CIV USN NAVFAC SE JAX FL (USA) <atina.j.hall.civ@us.navy.mil>
**Subject:** [Non-DoD Source] APPEAL -- FOIA Request DON-NAVY-2023-016071/FY23-032

Attached please find an Appeal of the referenced FOIA decision.

David R. Johnson
Partner
Vinson & Elkins LLP
E  drjohnson@velaw.com
W  +1.202.639.6706
2200 Pennsylvania Avenue NW

1

Suite 500 West
Washington, DC 20037
velaw.com

**CONFIDENTIALITY NOTICE:** The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

Thank You.

# Tab C

# Vinson&Elkins

David R. Johnson  drjohnson@velaw.com
Tel +1.202.639.6706  Fax +1.202.879.8906

April 18, 2024

**Via E-Mail (DONOGCAPPEALS@us.navy.mil.)**

Department of the Navy
Office of the General Counsel
1000 Navy Pentagon, Room 5A532
Washington, DC 20350-1000

      Re:    Appeal of Department of Navy's April 10, 2024 Response;
              Freedom of Information Act Request DON-NAVY-2023-016071/FY23-032

Dear Madame/Sir:

This letter serves as an appeal of the referenced April 10, 2024 response by the Department of the Navy, Naval Facilities Engineering Command Southeast, Jacksonville, Florida ("Navy") to a September 7, 2023 Freedom of Information Act ("FOIA") Request that we filed on behalf of our clients, New Orleans Navy Housing, LLC ("NONH") and Louisiana Navy Family Housing, L.L.C. ("LNFH"), with respect to certain matters concerning the their project to operate a military privatized housing project in Louisiana (the "Project"). A copy of the FOIA Request is attached at **Tab A**; a copy of the Navy's confirmation of receipt of the FOIA Request is attached at **Tab B**; and a copy of the Navy's Response to the FOIA Request is attached at **Tab C**.

## I.    Summary of the Request and Response

NONH and LNFH are parties to certain contracts with the Navy that establish and operate the Project. As evidenced in the FOIA Request, all of the documents that NONH and LNFH requested have to do directly with specific actions by the Navy under the contracts with NONH and LNFH—e.g.:

---

Vinson & Elkins LLP  Attorneys at Law
Austin  Dallas  Dubai  Houston  London  Los Angeles
New York  Richmond  San Francisco  Tokyo  Washington

2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037-1701
Tel +1.202.639.6500  Fax +1.202.639.6604  velaw.com

V&E

- Request 1 seeks documents that relate to negotiations concerning insurance premiums for the Project;

- Request 2 seeks documents that discuss the development of a letter that the Navy sent to LNFH;

- Request 3 seeks documents that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023;

- Request 4 seeks documents between the Navy and its consultant, Concourse Group, that relate to the Navy's review of the Project's books and records from that trip;

- Request 5 seeks documents that relate to the results or findings of the review of the Project's books and records from that trip;

- Request 6 seeks documents generated by the Concourse Group that relate to whether or not to release funds from the Project's Member Operating Reserve Account ("MORA") to cover insurance premium costs;

- Request 7 seeks documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, including documents that discuss that the subsidy, in whole or part, shall be deposited into the Project's MORA;

- Request 8 seeks documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023; and

- Request 9 seeks documents that refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH.

None of the requests seek documents related to Navy policies, nor the development of Navy policies.

Moreover, none of the documents requested would include commercial confidential information of any entity but NONH, LNFH, or entities with management common to those entities.

V&E

In responding to the FOIA Request after over seven months, the Navy did not provide *any details* about the number of responsive documents that it located.[1]  Rather, the Navy merely invoked FOIA Exemption 5 (5 U.S.C. § 552(b)(5)) to withhold responsive documents.  And, although the Navy produced *some* documents to NONH and LNFH, those released documents predominantly consist of materials that NONH or LNFH had themselves prepared or communications that involved NONH, LNFH and their personnel.  In addition to withholding completely an undisclosed number of responsive documents, the Navy withheld information through partial redactions of several emails "in accordance with FOIA Exemption 5 (5 U.S.C. § 552.(b)(5))."

With respect to its reliance on Exemption 5, the Navy explained that "[t]his exemption is applied to protect inter-agency or intra-agency memorandums or letters, the deliberative process, attorney-client privilege, work product privilege, and other documents typically privileged in civil discovery.  The withheld information pertains to predecisional and deliberative content."  According to the Navy, it also withheld an undisclosed number of documents prepared by or involving communications with the Navy's contractor, Concourse Group, because "these are not eligible for release under the Consultant corollary doctrine, a component of Exemption 5."  In addition, the Navy explained that "we have withheld (83) emails under both FOIA Exemption 5 and FOIA Exemption 4 (5 U.S.C. §552 (b)(4)).  This action is taken

---

[1] When we asked the FOIA specialist whether the Navy would provide a log of withheld documents, the specialist did not know and said she would check with Navy counsel.  We have not heard back as of the date of this submission.



to safeguard the commercial and proprietary information of both the submitters and the government." However, the Navy did not provide any specific information about its reliance on FOIA Exemption 4.

## II.    The Navy's Reliance on Exemption 5 Is Legally Insupportable

Exemption 5 provides that the FOIA disclosure requirements do not apply to matters that are, "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). However, the records requested here are *exactly* the documents that *would be available* by law to NONH or LNFH were they in litigation with the Navy. Moreover, there is not a single request that seeks information about internal Navy deliberations over matters of broader policy or of issues that relate to anything other than actions taken by the Navy and its consultant under the Navy's contracts with NONH and LNFH. Accordingly, none of the requested documents could possibly be exempt from disclosure under Exemption 5.

Longstanding precedent binding on the Navy clearly establishes that there is a distinction between internal agency deliberations about policy matters, on the one hand, and internal deliberations about contract administration matters, on the other, and Exemption 5 does not protect from disclosure documents developed by Navy personnel, including their consultant (Concourse Group) who are acting in a contractual capacity and not in a role of developing agency policy. The policy behind Exemption 5 is to protect against a "chilling effect" in public policy decision-making. *See, e.g., Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975). However, legal precedent makes it clear that the "chilling effect" concern is not applicable where individuals are providing opinions about matters of contract administration on a particular government contract:



> Factual investigations, such as evaluations of contract claims, that are needed in the ordinary course of Government business, will not foreseeably dry up because of the possibility of future disclosure. If anything, the knowledge of possible future disclosure would simply bring to bear a greater incentive for the investigators to be fully accurate, which we view as a salutary effect to be sought after, not avoided.

*Ingalls Shipbuilding Div., Litton Syss., Inc.*, ASBCA No. 17717, 73-2 BCA ¶ 10,205 (Aug. 16, 1973).

The Armed Services Board of Contract Appeals, the Civilian Board of Contract Appeals and individual agency predecessor Boards of Contract Appeals all hold that the deliberative process privilege is not applicable to factual matters presented to agency contracting officials. *Id.*; *see also 4K Global-ACC Joint Venture, LLC, v. Department of Labor*, CBCA Nos. 6683, 6761, 6762, 6827, 6828, 6829, 6830, 6831, 6833, 6834, 6835, 6836, 6837, 6839, 6918, 6919, 6920, 6921, and 6922 (Feb. 10, 2021) at 12-13 (discussing *Ingalls Shipbuilding* with approval); *Carl W. Olson & Sons Co.*, IBCA 930-9-71, 74-1 BCA ¶ 10,564 (citing *Ingalls Shipbuilding* with approval); *Robert E. McKee General Contractor, Inc.*, GSBCA No. 3697, 1973 WL 1973 (Oct. 16, 1973) (same). Similarly, interpretation of an already-existing contract is considered to be factual information that cannot be withheld by the deliberative process privilege. *Federal Data Corp.*, DOTCAB No. 2389, 91-3 BCA ¶ 24,063 (June 7, 1991). In the context of procurements like this, factual information encompasses such matters as solicitation preparation, proposal evaluation, negotiations, contract formation, cost accounting analyses, audits, contract interpretation, and other contract administration issues. *See Xerox Corp. v. Government Printing Office*, GSBCA No. 12322-P, 93-3 BCA ¶ 25,936, at 128,994 (discussing evaluation documents concerning contractor's performance and scheduling); *Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317 at 321 (discussing agency inspector

general's report); *Centel Fed. Syss., Inc. v. Department of the Navy*, GSBCA No. 12011-P, 93-1 BCA ¶ 25,534, at 127,195; *see also Ingalls Shipbuilding* at 48,100 (discussing agency documents evaluating contractor's claims).   Thus, documents where Navy personnel who participate in the process of administrating contracts related to the Project and that discuss Project facts and reasons for possibly taking positions with respect to those contracts are not cloaked in secrecy from disclosure by Exemption 5.

Further bolstering the legal conclusion that Exemption 5 does not apply to the documents requested here—none of the governmental and consultant personnel involved in these documents have any policy-making role.  Rather, the governmental personnel likely involved in the withheld communications are relatively low-level personnel who neither set nor make recommendations on Navy policy.  In considering the "chilling effect" argument, courts have held that only discussions between higher-level officials can qualify as "policy deliberations" because agency policies are normally established by or at the direction of senior-level officials.  Specifically, discussions between lower-level agency personnel administering a contract do not and cannot properly constitute policy deliberations within the meaning of the executive privilege; because at most, such discussions pertain to the implementation of agency policy, which is not within the scope of the exemption.  *See, e.g., Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939, 946 (Ct. Cl. 1958) (describing deliberations involving the Administrator of General Services); *SCM Corp. v. United States*, 473 F. Supp. 791 (Cl. Ct. 1979) (describing deliberations of and advice provided to International Trade Commissioners).

In addition, to properly assert the deliberative process privilege, the Navy should have for each document "identif[ied] the policy matter for which the privilege is claimed." *Unisys Corp. v. Dep't of*



*Commerce*, GSBCA No. 12823-COM, 95-2 BCA ¶ 27,903 (Aug. 10, 1995). Yet, the Navy has not identified and cannot identify a policy that the withheld documents address because the documents do not address any policy. Instead, based on the requests themselves, the documents relate to specific, individualized decisions on NONH and LNFH's contracts. As Boards of Contract Appeals have found conclusively, such an individualized contract issue cannot be deliberative because "***matters of contract administration do not rise to the level of protected advisory opinions or legal or policy recommendations***." *Brero Constr. Inc.*, LBCA No. 1997-BCA-4, 1999 WL 624138 (June 18, 1999); *see also Unisys Corp.*, 95-2 BCA ¶ 27,903 (stating that documents concerning contract administration do not concern policy or legal matters and finding that contract performance by the contractor and technical difficulties related to contract performance were matters of contract administration).

For these reasons, the likelihood that Exemption 5 is applicable to any of the responsive documents would be extremely low and any claim of Exemption 5 in this context should be met with significant skepticism. The requested documents cannot be withheld on the basis of FOIA Exemption 5, and the Navy should not permit the Naval Facilities Command Southeast to improperly invoke Exemption 5 after taking over seven months to respond to a legitimate, focused FOIA request targeting specific documents that reveal only contract administration facts.

III.    **Exemption 4 Is Inapplicable Here**

As noted above, the Navy also invoked Exemption 4 of the FOIA to withhold documents, but gave no details about why that exemption would possibly be relevant or to which documents that exemption could possibly apply. Exemption 4 protects "trade secrets and commercial or financial information

obtained from a person [that are] privileged or confidential." 5 U.S.C. § 552(b)(4). But, Exemption 4 cannot apply here to exclude any documents, because all of the documents requested specifically pertain to NONH and LNFH or to entities that share common management with the team—in other words, there is no applicability or need for Exemption 4 protection when the information in question relates solely to the requester.

## IV.    Conclusion and Request

For the foregoing reasons, NONH and LNFH request that the Navy sustain this Appeal, rule that the Naval Facilities Command Southeast's invocation of FOIA Exemptions 5 and 4 in the context of this FOI request are incorrect as a matter of fact and law, and require that a complete collection of all responsive documents be released promptly without redactions to NONH and LNFH.

Sincerely,



David R. Johnson

cc:    J.P. Adams, Captain, Civil Engineer Corps, U.S. Navy, Executive Officer
       Department of the Navy
       Naval Facilities Engineering Command Southeast
       Jacksonville, Florida 32212-0030

       Chief of Naval Operations, DNS-36, usn.ncr.dns.mbx.don-foia-pa@us.navy.mil
       Christopher Julka, FOIA Public Liaison, christopher.a.julka@navy.mil
       Atina Hall, FOIA Coordinator, atina.j.hall.civ@us.navy.mil

# Tab A

 An official website of the United States government
Here's how you know

# FOIA.gov

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 841396

# Success!

## Your FOIA request has been created and is being sent to the Department of the Navy.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

202-685-0412

usn.ncr.dns.mbx.don-foia-pa@us.navy.mil

Christopher Julka, FOIA Public Liaison

703-697-0031

christopher.a.julka@navy.mil

Chief of Naval Operations, DNS-36
2000 Navy Pentagon
Washington, DC 20350-2000

usn.ncr.dns.mbx.don-foia-pa@us.navy.mil

# Request summary

Request submitted on**September 7, 2023**.

The confirmation ID for your request is **841396**.

▼

The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt
to show that you submitted a request using FOIA.gov. This number does not replace the
information you'll receive from the agency to track your request. In case there is an issue
submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
David Johnson

**Mailing address**
2200 Pennsylvania Avenue
West Tower, Suite 500
Washington, DC 20037-1701
United States

**Phone number**
2026396706

**Company/organization**
Vinson & Elkins LLP

**Email**
DRJOHNSON@VELAW.COM

## Your request

We represent New Orleans Navy Housing, LLC ("NONH") and Louisiana Navy Family Housing, L.L.C. ("LNFH") with respect to certain matters concerning the their project to operate a military privatized housing project in Louisiana (the "Project"). NONH and LNFH are parties to an Amended and Restated Operating Agreement dated January 17, 2012 with the United States of America represented by the Department of the Navy (the "Navy") that relates to and governs aspects of the management and operation of the Project. The Concourse Group is an outside contractor that supports the Navy with respect to the Project. The requests below relate to the Project. Our requests follow: 1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among NONH, LNFH, Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project. 2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction". 3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023. 4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023. 5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023. 6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs. 7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA. 8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request. 9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and

Case 2:25-cv-00363-LMA-DPC   Document 20-2   Filed 06/18/25   Page 88 of 170

required a "loan repayment agreement" "within 90 days". * * * * * We agree to pay reasonable search reproduction fees for the records up to $250. If the estimate of search and reproduction fees exceeds such amount, we request that you contact us so that we can understand the estimate and provide appropriate approvals.

## Fees

**What type of requester are you?**
other

**Fee waiver**
no

**The amount of money you're willing to pay in fees, if any**
$250.00

## Request expedited processing

**Expedited processing**
no



FOIA.gov

**CONTACT**

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit   CC3.0

- FREQUENTLY ASKED QUESTIONS
- DEVELOPER RESOURCES
- AGENCY API SPEC
- FOIA CONTACT DOWNLOAD
- FOIA DATASET DOWNLOAD
- ACCESSIBILITY
- PRIVACY POLICY
- POLICIES & DISCLAIMERS
- JUSTICE.GOV
- USA.GOV

# Tab B

## Johnson, David R.

| | |
|---|---|
| **From:** | no-reply@foiaonline.gov |
| **Sent:** | Tuesday, September 12, 2023 11:25 AM |
| **To:** | Johnson, David R. |
| **Subject:** | DON-NAVY-2023-016071 |

[EXTERNAL]

Mr. Johnson,

This acknowledges receipt of your Freedom of Information Act (FOIA) request.  Your request was received in our office on September 8, 2023.

We have determined that the information you are seeking may be maintained by the Naval Facilities Engineering Systems Command Southeast, NAS Jacksonville, Bldg. 902, P.O. Box 30, Jacksonville, FL 32212-0030.  Therefore, we have forwarded your request to that office for action and direct response to you.

Questions regarding the action this office has taken during the initial processing of your request may be directed to Abby Machalec at 202-685-9269, abby.j.machalec.civ@us.navy.mil.

1

# Tab C



**DEPARTMENT OF THE NAVY**
NAVAL FACILITIES ENGINEERING SYSTEMS COMMAND SOUTHEAST
JACKSONVILLE, FL 32212-0030

5720
BD523/00265
April 10, 2023

David Johnson
2200 Pennsylvania Ave. West Tower
Suite 500
Washington, DC 20037-1701

Dear Mr. Johnson:

SUBJECT:   FREEDOM OF INFORMATION ACT (FOIA) REQUEST DON-NAVY-2023-
016071/FY23-032

This letter responds to the above Freedom of Information Act (FOIA) request. You have requested correspondence related to the operation of a military privatized housing project in Louisiana. You have requested the following:

1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among NONH, LNFH, Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project.

2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction".

3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023.

4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023.

5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023.

6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs.

7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented

5720
BD523/00265
April 10, 2023

through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA.

8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request.

9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and required a "loan repayment agreement" "within 90 days".

We have identified several emails that are responsive to your request. While many have been provided in full, some have undergone partial redaction in accordance with FOIA Exemption 5 (5 U.S.C §552 (b)(5)). This exemption is applied to protect inter-agency or intra-agency memorandums or letters, the deliberative process, attorney-client privilege, work product privilege, and other documents typically privileged in civil discovery. The withheld information pertains to predecisional and deliberative content.

Additionally, we have withheld (83) emails under both FOIA Exemption 5 and FOIA Exemption 4 (5 U.S.C §552 (b)(4)). This action is taken to safeguard the commercial and proprietary information of both the submitters and the government.

Regarding communications with the consultant, Concourse Group, these are not eligible for release under the Consultant corollary doctrine, a component of Exemption 5.

In view of the above, you may consider this to be an adverse determination that may be appealed. An appeal, if any, must be postmarked within 90 calendar days from the date of this letter and should include:

- A copy of your initial request
- A copy of this letter
- A statement indicating what you are appealing with any supporting arguments or reasons you think may be worthy of consideration
- Both the appeal letter and the envelope should bear the notation, "FOIA Appeal"

2

5720
BD523/00298
April 10, 2024

Please mail your appeal to:

Department of the Navy
Office of the General Counsel
1000 Navy Pentagon, Room 5A532
Washington, DC 20350-1000

An appeal may also be submitted via email to: DONOGCAPPEALS@us.navy.mil.

For any further assistance and to discuss any aspect of your request, you have the right to contact the Department of the Navy FOIA Public Liaison, Mr. Christopher Julka, at Christopher.A.Julka@navy.mil or (703) 697-0031. Additionally, the Office of Government Information Services (OGIS) provides a voluntary mediation process for resolving disputes between persons making FOIA requests and the Department of the Navy (DON). For more information, go to https://www.archives.gov/ogis/about-ogis/contact-information.

I am the official responsible for this decision; if you have any questions concerning this matter, you may contact my FOIA Coordinator, Ms. Atina Hall, at (904) 735-9639 or email atina.j.hall.civ@us.navy.mil.

Sincerely,

J. P. ADAMS
Captain, Civil Engineer Corps, U.S. Navy
Executive Officer

3

# Tab D



**DEPARTMENT OF THE NAVY**
NAVAL FACILITIES ENGINEERING SYSTEMS COMMAND SOUTHEAST
JACKSONVILLE, FL  32212-0030

5720
BD523/00488
June 12, 2024

David Johnson
2200 Pennsylvania Ave. West Tower
Suite 500
Washington, DC 20037-1701

Dear Mr. Johnson:

SUBJECT:  FREEDOM OF INFORMATION ACT (FOIA) REQUEST DON-NAVY-2023-
016071/FY23-032

The Naval Facilities Engineering Systems Command Southeast ("NAVFAC SE") has reevaluated its initial response to your Freedom of Information Act (FOIA) request after it was remanded to our office on May 13, 2024. You requested documents and correspondence that relate to your client's operation of a military privatized housing project in Louisiana for which the Department of the Navy (DON) is required by law, regulation, and policies to provide oversight of its future sustainment, recapitalization and financial condition. The details of your request are as follows:

1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among New Orleans Navy Housing (NONH), Louisiana Navy Family Housing (LNFH), Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project.

2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction".

3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023.

4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023.

5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023.

6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs.

5720
BD523/00488
June 12, 2024

7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA.

8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request.

9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and required a "loan repayment agreement" "within 90 days".

As disclosed in our initial response, NAVFAC SE identified several emails that are responsive to your request; 93 documents and emails were provided in full, 12 underwent partial redactions in accordance with FOIA Exemption 5 (5 U.S.C §552 (b)(5)) and Exemption 6 (5 U.S.C §552 (b)(6)), and 83 were withheld in their entirety under Exemption 4 (5 U.S.C §552 (b)(4)) and Exemption 5. NAVFAC SE made available all non-privileged factual information extracted from these documents.

To further supplement our initial response, we have attached to this letter a brief description of the 83 documents withheld to include the FOIA Exemption applied and the subcategories under Exemption 5 that were applied.

Please take notice that the DON invoked Exemption 4 to protect from disclosure the work product of the Concourse Group which used proprietary metrics; disclosure of this work product will not only cause confusion in the public but will foreseeably be misinterpreted. The Concourse Group is a private entity that provided consultative services to the DON. The consultative service contract that existed between the DON and the Concourse Group required an express assurance of non-disclosure and confidentiality as well as the execution of a Non-Disclosure Agreement. Accordingly, the opinions and financial analysis prepared by the Concourse Group, as part of the decision-making process of the DON regarding the Project's Military Housing Privatization Initiative (MHPI) fiscal responsibility, must be protected. There is no public interest nor benefit in the disclosure of these documents.

2

5720
BD523/00488
June 12, 2024

Please take further notice that the nature of the documents over which the DON has invoked Exemption 5, deliberative process -Consultant Corollary- were mostly email communications between the DON and its Consultant- the Concourse Group- which included recommendations, draft documents, proposals and suggestions in matters related to the Project's MHPI fiscal responsibility. The Concourse Group assisted DON's high level employees in reaching a decision in relation to:

- DON's concern with the short and long-term sustainment and recapitalization of the Project

- LNFH's refusal to replenish the Project's Recapitalization Fund ("PRF") in the amount of $3,253,243.00 after disbursements were made in 2021

- LNFH's request for a MORA disbursement in the amount of $4M to cover the total sum owed by LNFH for the Project's 2023 insurance premiums

- LNFH's request to prioritize the distribution of the Property Manager Incentive Fee and the Asset Manager Fee to the replenishment of the Project's accounts

- DON's determination to take precautionary measures in its oversight role and a conservative approach to preserve PRF and MORA funds for future Project needs.

Thus, all communications between DON's personnel, its consultant and attorneys fall under predecisional and deliberative process. These documents could also find protection under Exemption 7(A), which permits the temporary protection of materials in investigatory files, to prevent the premature disclosure of the government's case and possible disruption of adversary proceedings. Disclosure of these documents and communications will cause a foreseeable harm to the agency and will disrupt the decision-making process and cause a chilling effect on open and candid discussion among the DON employees, its consultants and attorneys.

Finally, we have also redacted the names and contact information of individuals pursuant to FOIA Exemption 6 (5 U.S.C §552 (b)(6)), which authorizes the redaction of information in files, that, if disclosed to a requester would result in a clearly unwarranted invasion of personal privacy. This exemption was applied to the documents withheld entirely as well as those (12) partially redacted.

In view of the above, you may consider this to be an adverse determination that may be appealed. An appeal, if any, must be postmarked within 90 calendar days from the date of this letter and should include:

- A copy of your initial request.
- A copy of this letter.
- A statement indicating what you are appealing with any supporting arguments or reasons you think may be worthy of consideration.
- Both the appeal letter and the envelope should bear the notation, "FOIA Appeal."

3

5720
BD523/00488
June 12, 2024

Please mail your appeal to:

Department of the Navy,
Office of the General Counsel
1000 Navy Pentagon, Room 5A532
Washington, DC 20350-1000

An appeal may also be submitted via email to: DONOGCAPPEALS@us.navy.mil .

For any further assistance and to discuss any aspect of your request, you have the right to contact the Department of the Navy FOIA Public Liaison, Mr. Christopher Julka, at Christopher.A.Julka@navy.mil or (703) 697-0031. Additionally, the Office of Government Information Services (OGIS) provides a voluntary mediation process for resolving disputes between persons making FOIA requests and the Department of the Navy (DON). For more information, go to https://www.archives.gov/ogis/about-ogis/contact-information.

I am the official responsible for this decision; if you have any questions concerning this matter, you may contact my FOIA Coordinator, Ms. Atina Hall, at (904) 735-9639 or email atina.hall@navy.mil.

Sincerely,

J. P. ADAMS
Captain, Civil Engineer Corps, U.S. Navy
Executive Officer

4

| Withheld Record | Exemption | Subcategory of Exemption 5 |
|---|---|---|
| 1 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 2 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 3 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 4 | 5 | Deliberative Process Privilege |
| 5 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 6 | 5 | Deliberative Process Privilege |
| 7 | 5 | Deliberative Process Privilege/Attorney-Work Product Privilege |
| 8 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 9 | 5 | Deliberative Process Privilege |
| 10 | 5 | Deliberative Process Privilege |
| 11 | 5 | Deliberative Process Privilege |
| 12 | 5 | Deliberative Process Privilege |
| 13 | 5 | Atty Client Privliege/Deliberative Process Privilege |
| 14 | 5 | Deliberative Process Privilege |
| 15 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 16 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 17 | 5 | Deliberative Process Privilege |
| 18 | 4&5 | Deliberative Process Privilege |
| 19 | 5 | Deliberative Process Privilege |
| 20 | 5 | Attorney-Client Privilege/Attorney Work Product Privilege/Delibe |
| 21 | 5 | Attorney-Client Privilege/Deliberative Process Privilege/Consult |
| 22 | 5 | Deliberative Process |
| 23 | 5 | Deliberative Process Privilege |
| 24 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 25 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 26 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 27 | 4&5 | Delibertive Process Privilege/Consultant Corollary |
| 28 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 29 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 30 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 31 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 32 | 5 | Deliberative Process Privilege |
| 33 | 5 | Deliberative Process Privilege |
| 34 | 5 | Deliberative Process Privilege |
| 35 | 5 | Deliberative Process Privilege |
| 36 | 5 | Deliberative Process Privilege |
| 37 | 5 | Deliberative Process Privilege |
| 38 | 5 | Deliberative Process Privilege |
| 39 | 5 | Deliberative Process Privilege |
| 40 | 5 | Atty Client Privliege |
| 41 | 5 | Atty Client Privliege |
| 42 | 5 | Deliberative Process Privilege |
| 43 | 5 | Deliberative Process Privilege |
| 44 | 5 | Deliberative Process Privilege |
| 45 | 5 | Deliberative Process Privilege |
| 46 | 5 | Deliberative Process Privilege |
| 47 | 5 | Deliberative Process Privilege |
| 48 | 5 | Deliberative Process Privilege |

| | | |
|---|---|---|
| 49 | 5 | Deliberative Process Privilege |
| 50 | 5 | Deliberative Process Privilege |
| 51 | 5 | Deliberative Process Privilege |
| 52 | 5 | Deliberative Process Privilege |
| 53 | 5 | Deliberative Process Privilege |
| 54 | 5 | Deliberative Process Privilege |
| 55 | 5 | Deliberative Process Privilege |
| 56 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 57 | 5 | Deliberative Process Privilege |
| 58 | 5 | Deliberative Process Privilege |
| 59 | 5 | Deliberative Process Privilege |
| 60 | 5 | Deliberative Process Privilege |
| 61 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 62 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 63 | 5 | Deliberative Process Privilege |
| 64 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 65 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 66 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 67 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 68 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 69 | 5 | Deliberative Process Privilege |
| 70 | 5 | Deliberative Process Privilege |
| 71 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 72 | 5 | Deliberative Process Privilege |
| 73 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 74 | 5 | Deliberative Process Privilege |
| 75 | 5 | Deliberative Process Privilege |
| 76 | 5 | Atty Client Privliege/Deliberative Process Privilege |
| 77 | 5 | Deliberative Process Privilege |
| 78 | 5 | Deliberative Process Privilege |
| 79 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 80 | 5 | Deliberative Process Privilege |
| 81 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 82 | 5 | Delibertive Process Privilege/Consultant Corollary |
| 83 | 5 | Delibertive Process Privilege/Consultant Corollary |

Please note that Ex. 6 has been applied to each conversation.

/Consultant Corollary

ertive Process Privilege
ant Corollary

| Partially Denied Record | Exemption | Subcategory of Exemption 5 |
|---|---|---|
| 1P | 5 | Deliberative Process Privilege |
| 2P | 5 | Deliberative Process Privilege |
| 3P | 5 | Deliberative Process Privilege |
| 4P | 5 | Deliberative Process Privilege |
| 5P | 5 | Deliberative Process Privilege |
| 6P | 5 | Deliberative Process Privilege |
| 7P | 5 | Deliberative Process Privilege |
| 8P | 5 | Deliberative Process Privilege |
| 9P | 5 | Deliberative Process Privilege |
| 10P | 5 | Deliberative Process Privilege |
| 11P | 5 | Deliberative Process Privilege |
| 12P | 5 | Deliberative Process Privilege |

Please note that Ex. 6 has been applied to each conversation.

Re: NAVFAC SE Appeal DON-NAVY-2023-016071 / FY23-032

## I.    Introduction

As the Initial Denial Authority (IDA), NAVFAC SE, through Thomas C. McKelvey, Public Private Venture (PPV) Business Line Director/AM5 Branch Head, conducted a thorough search of its records to identify all responsive documents to the underlying FOIA request. Mr. McKelvey is the NAVFAC SE Official responsible to oversee the privatized housing Project known as New Orleans Navy Housing, L.L.C. and is the custodian of all responsive documents. The adequacy of the search conducted was not disputed by the Requester.

NAVFAC SE identified **93** responsive documents that were fully releasable; **12** documents that were partially releasable with redactions under FOIA Exemptions 5 and 6; and **83** documents that were exempt from disclosure under FOIA Exemptions 4 and 5.

Although Exemption 4 was used and invoked to withhold the release of a total of **8** documents, Exemption 5 would have been enough to withhold release of these documents since all **8 documents** played an important role in the agency's process of deliberation.

No responsive documents were withheld regarding Requests 4, 5 and 7. release under one of the exemptions.

## II.    The Requester operates a privatized military housing Project pursuant to the authority provided by Congress through the Military Housing Privatization Initiative

The Requester, Louisiana Navy Family Housing, L.L.C. ("LNFH"), is the Managing Member of New Orleans Navy Housing, L.L.C. ("NONH") a public-private venture ("PPV") formed with the DON-as Member-and incorporated pursuant to the *Louisiana Limited Liability Company Act* ("LLC Act"). This public-private business venture was allowed by Congress through the *Military Housing Privatization Initiative Act*[1] ("MHPI", 10 U.S.C. §2871 et. seq.).

The rights, obligations, and responsibilities of LNFH and DON, as co-members of NONH, arise from and are fully described in the *Operating Agreement of New Orleans Navy Housing, LLC* (the "*OA*"), as amended and restated on January 17, 2012, which fully governs the business relationship that exist between the parties. The *OA* is a non-Federal Acquisition Regulation (FAR) transaction.

As fully described in the *OA*, NONH was organized to exclusively design, finance, construct, renovate, own, manage, acquire, lease, operate and maintain the Project[2], and any activities that are related or incidental to it. As such, NONH owns and operates the Project through the Managing Member, LNFH.

To become a Member of NONH, DON made an initial capital cash contribution when the LLC was created in 2001, **to acquire oversight and monitoring rights**. As Member of NONH,

---

[1] This initiative allows private sector financing, ownership, and operation and maintenance of military housing.
[2] The "Project" is a military housing privatization initiative project to provide family housing units for service members and their families.

1

<span style="color:red">**Exhibit A-8**</span>

DON acts in a limited partnership role and not as a procuring agency, a regulator, or a lessee in a capital lease (where the government pays the full cost of the property and services overtime instead of upfront.) As a result, the contractual obligations that the DON has in the Project cannot be compared to the duties that the government has with respect to a regulated entity, a government's contractor, or a lessor in a capital lease. The DON does not execute any contract administration or contract management actions in the Project in accordance with FAR Part 42. Consequently, the information and/or documents that LNFH provides to the DON is in DON's role as a Member of NONH and not as a required response to a government regulator.

LNFH, as NONH's Managing Member, maintains full control of the Project's operation, finance, maintenance, and repair and is required to complete and carry out the Project exclusively with the Project funds. The Project is privately owned and may not be considered, under any circumstances, a government project.

In performing its duties as a non-managing Member, the DON acts in a limited partnership role providing general oversight of the Project with very limited approval rights.

## III.   FOIA Request

The FOIA request under review included 9 Requests which sought, among other things, the production of inter-agency or intra-agency memorandums or letters generated by the DON's personnel and its consultants in its deliberative process to issue decision(s) as a Member of NONH. Accordingly, LNFH is not making a first party request for their own information. By the Requesters own admission (at page 5) their request "seeks information about (..) issues that relate to anything other than actions taken by the Navy and its consultant under the Navy's contract with NONH and LNFH."

Furthermore, most of the documents being requested were generated at a time when litigation was likely. LNFH, as Managing Member of NONH, hired the services of an attorney who threatened litigation against the DON[3], as Member, for allegedly breaching its obligations of good faith and fair dealing under the OA by: 1) arbitrarily reducing rental income to the Project; (2) diverting funds intended for rental income to other activities and to the Member Operating Reserve Account ("MORA"); (3) arbitrarily refusing to release MORA funds to help pay for insurance premiums; (4) 2021 PRF Loan Dispute and also by (5) failing to release funds to pay for general improvements from the Project Recapitalization Fund ("PRF").

The documents fully withheld by the IDA under Exemptions 4 and 5 are detailed below:

| Id.   No. Document Withheld | Related Request | FOIA Exemption | Description of Document |
|---|---|---|---|
| 1 | 1 | 4&5 | This document includes the work product of DON's consultant regarding all the issues between the Managing Member and the Member. This document was marked as "Business Confidential" and there was an express understanding between DON and the Consultant that the document would be protected from release under FOIA. |

---

[3] Enclosed copy of the demand letters sent to the DON by the Requester and the DON's response.

2

| | | | |
|---|---|---|---|
| | | | Furthermore, the document was created to be used by DON personnel only.<br><br>This document provides the deliberative process of NAVFAC SE's personnel and DON's Consultant regarding the current and open issues between the Member and the Managing Member. The final decision regarding these issues was explained, in full detail, to the Managing Member on a letter dated October 27th, 2023. |
| 2 | 1 | 5 | This document includes the deliberative process of NAVFAC SE, LANT, HQ and DON's consultant regarding alternatives that may be considered to issue a loan to the Project to cover insurance premiums.<br><br>Although we raised both Exemption 4 and 5, this document should be withheld exclusively under Exemption 5.<br><br>The document attached to this communication is a proposed draft to be evaluated by NAVFAC personnel. The final language and official DON response was delivered to LNFH as Managing Member of NONH. |
| 3 | 1 | 4&5 | Information regarding another commercial entity (Hunt Military Communities) and PPV project (Kingsville II) was incorporated in this document therefore its exempt from release under Exemption 4.<br><br>Additionally, this document includes the deliberative process of NAVFAC SE, LANT, HQ and DON's consultant regarding alternatives that may be considered for a loan to NONH to cover insurance premiums since it was used, successfully, in another PPV Project. |
| 4 | 1 | 5 | This document includes notes and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward. |
| 5 | 1 | 5 | This document includes notes and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward. |

3

| | | | |
|---|---|---|---|
| | | | Additionally, this document includes the comments and opinion of DON's consultant regarding LNFH's proposed actions to repay the proposed loan to pay for insurance premium. |
| 6 | 1 | 5 | This document includes the notes, opinions, and proposed strategy of NAVFAC SE and HQ's personnel regarding insurance coverage. |
| 7 | 1 | 5 | This document includes notes and the opinion of Tom McKelvey, NAVFAC SE Counsel, Edna Tejeda, and DON's consultant of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward.<br><br>Attorney Work Product should apply to this document. |
| 8 | 1 | 4&5 | This document includes the deliberative process and the proposed commercial analysis of NAVFAC SE in relation to the 2021 Property Management Incentive Fee. The final analysis was subsequently provided to LNFH.<br><br>This document was not prepared by The Concourse Group.<br><br>Although both Exemption 4 and 5 were raised to withhold release, this document should have been withheld exclusively under Exemption 5. |
| 9 | 1 | 5 | This document includes notes and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward. |
| 10 | 1 | 5 | This document includes the deliberative process conducted by NAVFAC SE's personnel regarding the potential insurance proceeds that the Project was expected to receive and their evaluation of the accounts where those proceeds should be deposited. NAVFAC SE's position on this was subsequently informed to LNFH both orally and in writing. |
| 11 | 1 | 5 | This document includes the deliberative process of NAVFAC SE and HQ's personnel regarding LNFH's request for a PRF loan. The Final decision was disclosed in a separate communication to LNFH providing consent for the loan. |

4

| | | | |
|---|---|---|---|
| 12 | 1 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document has attached multiple documents generated by the DON's personnel and Consultant which were shared with HQ for approval.<br><br>The document provides the deliberative process of NAVFAC SE. |
| 13 | 1 | 5 | This document includes notes and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward.<br><br>Within this document, NAVFAC Counsel SE was requested to provide an assessment of potential risks since a lawsuit is likely to be filed. |
| 14 | 1 | 5 | This document includes notes and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward. |
| 15 | 1, 2 | 5 | This document includes notes and the opinion of an HQ officer and DON's consultant of what is needed from the Managing Member to complete DON's decision process regarding compliance with insurance coverage for the Project.<br><br>DON's decision and rationale was subsequently disclosed to LNFH in a separate document. |
| 16 | 1, 2 | 4&5 | This document includes the deliberative process of NAVFAC HQ, NAVFAC SE and DON's consultant regarding LNFH's request for a loan. This document mentions the existence of an issue paper and an analysis of the insurance premiums prepared by The Concourse Group which is not attached. |

5

| | | | |
|---|---|---|---|
| | | | DON's decision and rationale was subsequently disclosed to LNFH in a separate document.<br><br>Although Exemptions 4 & 5 were raised to withhold release of this document, the only exemption that should have been raised was Exemption 5. |
| 17 | 1, 2, 3, 9 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document contains the deliberative process of NAVFAC LANT, NAVFAC HQ and NAVFAC SE's personnel on NONH Loan request to pay insurance premiums. DON's decision and rationale was subsequently disclosed to LNFH in a separate document. |
| 18 | 1, 2, 3 | 4&5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document includes the deliberative process of NAVFAC HQ and SE personnel regarding the Requester's position to withhold financial information from the DON. It also provides the commercial/financial information used by the DON to reach a position. This information was not provided by the Requester but rather by DON's Consultant. HQ discussed the need to engage NAVFAC Counsel.<br><br>The information provided by DON's Consultant was not intended to be shared with the Requester or with the public. |
| 19 | 1, 2, 3 | 5 | Although portions of this document may have been released to the Requester in another document (email |

6

| | | | |
|---|---|---|---|
| | | | chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document includes the opinion and deliberative process of NAVFAC SE and LANT personnel regarding the financial sustainability of the Project and how it will be affected by future project costs and recommended next steps. It also has an attachment with the work product of NAVFAC SE regarding the Project's financial sustainability. DON's decision and rationale was subsequently disclosed to LNFH in a separate document. |
| 20 | 1, 2, 3 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document includes the opinion and deliberative process of NAVFAC SE, HQ and LANT's personnel as well as the DON's consultant. It also includes the request made to NAVFAC's Legal Counsel to provide input on LNFH's submitted addendum to the business agreements.<br><br>Additionally, this document includes a proposed language for the 2023 Dissatisfaction Letter which was commented and revised by DON personnel, its consultant, and its Legal Counsel. This document is a draft. The final version of the Dissatisfaction letter was sent to LNFH which provided DON 's decision and rationale. |
| 21 | 1, 2, 6 | 5 | This document includes comments and opinion of NAVFAC SE's Legal Counsel.<br><br>Additionally, it provides the deliberative process and opinions of NAVFAC SE, LANT, HQ and DON's consultant with respect to insurance proceeds. These opinions were shared with Legal Counsel.  DON's |

| | | | decision and rationale was subsequently disclosed to LNFH both orally and in a separate document. |
|---|---|---|---|
| 22 | 1, 3, 9 | 5 | This document includes notes and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward. |
| 23 | 1, 3, 9 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document includes notes and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward.<br><br>This document includes intra-agency communication between NAVFAC SE and HQ regarding the current and open issues between the Members of NONH, the position taken by DON and the potential litigation with LNFH.<br><br>DON's final decision and rationale regarding the above was provided to LNFH in a letter dated October 27, 2023. |
| 24 | 1 | 5 | This document includes the opinion and deliberative process of T. McKelvey and DON's consultant regarding the proposed insurance coverage for the Project and what DON's position should be.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document. |
| 25 | 1, 6 | 4&5 | This document includes the opinion and deliberative process of DON's consultant regarding the financial sustainability of the Project and how it will be affected by future project costs and recommended next steps. It also has an attachment with the work product of DON's consultant regarding the Project's cashflow analysis and |

8

| | | | |
|---|---|---|---|
| | | | projections. This document generated and created by DON's consultant should be exempt from release under Ex. 4.<br><br>DON's final decision and rationale regarding the above was subsequently disclosed to LNFH in a separate document. |
| 26 | 1, 6 | 5 | This document includes the opinion and deliberative process of DON's consultant regarding proposed repayment options presented by LNFH. It was used by the DON to decide what action to take. DON's final decision was officially informed to LNFH in a letter dated October 27, 2023.<br><br>DON's final decision and rationale regarding the above was subsequently disclosed to LNFH in a separate document. |
| 27 | 1, 6, 9 | 4&5 | This document includes the opinion and deliberative process of DON's consultant regarding proposed repayment options presented by LNFH.<br><br>Additionally, it includes a 2023 Insurance Premium Funding Action Plan which was not intended to be released to LNFH. This document should be exempt from Release.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 28 | 1, 6, 9 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document includes the opinion and deliberative process of DON's consultant regarding proposed amendments to the OA and the Indenture. Attached to this document, the Consultant included proposed |

9

| | | | |
|---|---|---|---|
| | | | language for these amendments to be considered by NAVFAC SE's personnel.<br><br>DON's final decision and rationale was subsequently disclosed orally and in writing to LNFH in proposed amendments to the OA and Indenture. |
| 29 | 1, 6, 9 | 5 | This document includes the opinion and deliberative process of DON's consultant regarding how DON should evaluate excess insurance proceeds. It also recommends issues that should be discussed with NAVFAC SE's legal counsel.<br><br>DON's final decision and rationale was subsequently disclosed orally and in writing to LNFH in another document. |
| 30 | 2 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document includes the deliberative process conducted by NAVFAC SE, NAVFAC LANT and NAVFAC HQ's personnel in connection to the proposed language to be included in the Letter of Dissatisfaction to be sent to LNFH.<br><br>The final Letter of Dissatisfaction was delivered to LNFH providing the basis and rationale used. DON's basis of decision and rationale was reiterated in a letter dated June 12, 2003. |
| 31 | 2, 3, 9 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document includes the opinions and comments made during the deliberative process conducted by NAVFAC |

10

| | | | |
|---|---|---|---|
| | | | SE's personnel and DON's consultant in connection to the PRF Loan Repayment Agreement.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 32 | 2, 3, 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE and LANT's personnel in connection to the PRF Loan Repayment Agreement.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 33 | 3 | 5 | This document includes the deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel regarding a plan to evaluate the Project's financials.<br><br>The Project's financials were subsequently evaluated, in person, at the Project's offices. DON's personnel met with LNFH and NONH personnel.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 34 | 3 | 5 | This document includes the deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel regarding plan to evaluate Project's financials.<br><br>The Project's financials were subsequently evaluated, in person, at the Project's offices. DON's personnel met with LNFH and NONH personnel.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 35 | 3 | 5 | This document includes the deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel regarding plan to evaluate Project's financials.<br><br>The Project's financials were subsequently evaluated, in person, at the Project's offices. DON's personnel met with LNFH and NONH personnel. |

11

| | | | |
|---|---|---|---|
| | | | DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 36 | 5 | 5 | This document includes the deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel regarding plan to evaluate Project's financials.<br><br>The Project's financials were subsequently evaluated, in person, at the Project's offices. DON's personnel met with LNFH and NONH personnel.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in letters dated June 12, 2023, and October 27, 2023. |
| 37 | 6 | 5 | This document includes the opinion and deliberative process of DON's consultant regarding current and open issues and the possibility of the Project receiving excess insurance proceeds.<br><br>DON's consultants' opinion and deliberative process was shared with NAVFAC SE Legal Counsel for awareness.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 38 | 7 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel in connection to 606 reimbursements.<br><br>DON's final decision and rationale was disclosed to LNFH in letter dated November 29, 2023. |
| 39 | 9 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>The information contained in this document include deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel regarding PRF Loan request. |

12

| | | | |
|---|---|---|---|
| | | | DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 40 | 8 | 5 | This document contains attorney-client privilege communication discussing incentive fee force majeure events.<br><br>DON's decision and rationale was subsequently disclosed to LNFH in a letter dated April 12, 2023. |
| 41 | 8 | 5 | This document contains attorney-client privilege communication discussing incentive fee force majeure events.<br><br>DON's decision and rationale was subsequently disclosed to LNFH in a letter dated April 12, 2023. |
| 42 | 8 | 5 | This document includes the deliberative process conducted by NAVFAC SE's personnel re: proposed 2021 Project Manager Incentive Fee Executive Summary.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated April 12, 2023. |
| 43 | 8 | 5 | This document includes the deliberative process conducted by NAVFAC SE, NAVFAC LANT, NAVFAC HQ and CNIC's personnel re:2021 Project Manager Incentive Fee.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated April 12, 2023. |
| 44 | 8 | 5 | This document includes the deliberative process conducted by NAVFAC SE and CNIC's personnel re:2021 Project Manager Incentive Fee.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated April 12, 2023. |
| 45 | 8 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE personnel regarding LNFH's request to contact NAVFAC SE counsel. |

13

| | | | |
|---|---|---|---|
| | | | DON's final decision and rationale was subsequently disclosed to LNFH in a separate document. |
| 46 | 8 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE's personnel re: 2021 Project Manager Incentive Fee supporting data.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated April 12, 2023. |
| 47 | 8 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester. Redaction of this document would have been overburdensome.<br><br>This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE personnel re: 2021 Project Manager Incentive Fee supporting data.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated April 12, 2023. |
| 48 | 8 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE personnel re: 2021 Project Manager Incentive Fee supporting data.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated April 12, 2023. |
| 49 | 8 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC |

14

| | | | |
|---|---|---|---|
| | | | SE and CNIC's personnel re: 2021 Project Manager Incentive Fee- discretionary criteria.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated April 12, 2023. |
| 50 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by DASD (H) and NAVFAC SE re: Quarterly MHPI OSD Review- Loan Request from Long Tern Reserves.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated June 12, 2023. |
| 51 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE re: Project Recapitalization Funds (PRF) Loan request consent.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 52 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE and CNIC's personnel re: Project Recapitalization Funds (PRF) Loan request consent.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 53 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE personnel re: Project Recapitalization Funds (PRF) Loan request.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 54 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE and CNIC's personnel re: Project Recapitalization Funds (PRF) Loan request Hurricane Ida. |

15

| | | | |
|---|---|---|---|
| | | | DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 55 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel re: MORA Loan Request.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 56 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE's personnel and DON's consultant re: MORA Loan and long-term impact to sustainment of Project.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 57 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE's personnel re: PRF Loan request.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 58 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE and CNIC's personnel re: PRF Loan request- Hurricane IDA.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 59 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE's personnel re: Loan to Project in the amount of $2.2 M /Hurricanes IDA and Zeta. |

16

| | | | |
|---|---|---|---|
| | | | DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 60 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel re: Loan request 2021.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 61 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel re: Loan request 2021.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 62 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE, and DON's consultant re: Loan request 2021.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 63 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE's personnel re: Loan request 2021.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 64 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE, and DON's consultant re: Loan request 2021. |

| | | | |
|---|---|---|---|
| | | | DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 65 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE, and DON's consultant re: 2021 Loan agreements execution. DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan and in letter date October 27, 2023. |
| 66 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE, and DON's consultant re: Loan request 2021. DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 67 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT, NAVFAC SE, and DON's consultant re: Loan request 2021. DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 68 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel re: NONH Cashflow for 2020. DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 69 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel re: NONH 2021 Budget. |

18

| | | | |
|---|---|---|---|
| | | | DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 70 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel re: NONH 606 Reimbursements/2021 Loan Request.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 71 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel re: 2021 Loan Request.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 72 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by CNIC and NAVFAC SE's personnel re: 2021 Loan Request.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 73 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel re: 2021 Loan Request and long-term impacts to Project.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
| 74 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC LANT and NAVFAC SE's personnel re: LNFH refusal to execute loan agreements.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |

19

| 75 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE and CNIC's personnel re: Evaluation of PRF Loan.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a separate document providing consent to PRF Loan. |
|---|---|---|---|
| 76 | 1, 6, 9 | 5 | This document includes attorney-client communication between NAVFAC LANT and SE Legal Counsel. |
| 77 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE's personnel re: Loan Agreement Dispute.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 78 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE's personnel re: Loan Agreement Dispute<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 79 | 1, 6 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester.<br><br>This document includes the opinions and comments made during the deliberative process conducted by DON's consultant re: evaluation of long-term impacts to accounts considering MORA Loan request to cover insurance premium. The comments and opinion of DON's consultant helped the DON in reaching a decision which was disclosed to LNFH.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |

| 80 | 9 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE's personnel re: Loan Agreement Dispute.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 81 | 1, 2, 6 | 5 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC SE, NAVFAC LANT, DON's Consultant, and NAVFAC HQ's personnel re: MORA Loan Agreement and Letter of Dissatisfaction.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 82 | 1 | 5 | Although portions of this document may have been released to the Requester in another document (email chain), the IDA decided to fully withhold this document since the Requester already has the un- release portion of this document because it was either generated or received by the Requester or its attorney.<br><br>Discussion between HQ, Consultant and SE of what will be DON's position to LNFH's request of a loan and replenishment of accounts of the Project.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |
| 83 | 1 | 5 | Discussion between HQ, Consultant and SE of what will be DON's position to LNFH's request of a loan and replenishment of accounts of the Project.<br><br>DON's final decision and rationale was subsequently disclosed to LNFH in a letter dated October 27, 2023. |

IV.   **Documents withheld under Exemption 5- Consultant Corollary**

The nature of the documents over which the DON has invoked the deliberative process privilege (Exemption 5)-consultant corollary were email communications between the DON's personnel and the DON's Consultant- the Concourse Group[4]- which included recommendations,

---

[4] The Concourse Group had no direct or personal interest in the Project nor in the MHPI initiative.

21

draft documents, proposals, and suggestions in matters related to decisions that had to be made in relation to the Project.

The Concourse Group is a private entity that provided consultative services to the DON[5] in matters related to the Project's fiscal health and sustainability, among others. In the context of Exemption 5, the United States Supreme Court's decision in Department of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1 (2001) as well as other United States Court of Appeals, have acknowledged and recognized that disinterested outside consultants deliberative process, which was pre-decisional in nature and part of the inter-agency or intra-agency record, may be deemed intra-agency memorandum for purposes of determining the applicability of Exemption 5, under the consultant corollary. Typically, this exemption extends to communications between the government agencies and outside consultants hired by them. In such cases, the records submitted by outside consultants played essentially the same part in agency's process of deliberation as documents prepared by agency personnel might have done. See Nat'l Inst. of Military Justice v. United States DOD, 512 F. 3d 677 (2008).

An evaluation of the documents withheld will show that the Concourse Group assisted the DON in reaching a decision in relation to: (1) DON's concern with the short and long-term sustainment and recapitalization of the Project; (2) LNFH's refusal to replenish the Project's Recapitalization Fund ("PRF") in the amount of $3,253,243.00 after disbursements were made in 2021;(3) LNFH's request for a MORA[6] disbursement in the amount of $4M to cover the total sum owed by LNFH for the Project's 2023 insurance premiums[7]; (4) LNFH's request to prioritize the distribution of the Property Manager Incentive Fee and the Asset Manager Fee to the replenishment of the Project's accounts; and in (5) DON's determination to take precautionary measures in its oversight role and a conservative approach to preserve PRF and MORA funds for future Project needs. The documents created by the Concourse Group were in aid of the agency's deliberative process. Accordingly, the opinions, memoranda draft responses, and financial analysis prepared by the Concourse Group did not provide DON's final decision. The grounds for DON's final decision with respect to each of these issues was stated in a letter dated October 27, 2023, and/or in other written communications that were delivered to LNFH.

There is no public interest nor benefit in the disclosure of these documents which do not provide the DON's final decision or the rationale and reasoning behind it. Examination of the parts of a decision will not give an accurate picture of the decision. Therefore, these communications should be withheld from release.

The advisory participation of the Concourse Group in DON's deliberative process withstands the test set in Department of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1 (2001). When providing advice to the DON, the Concourse Group was not seeking a government benefit, at the expense of LNFH or NONH.

---

[5] The Concourse Group service contract included a non-disclosure agreement with the government. The Concourse Group would mark their work product as Business Confidential or would alert the government's officers that the information was not to be shared or released. The documents that were withheld under Exemption 4 had an implied expectation of being confidential and not subject to release by both The Concourse Group and the government.

[6] "MORA" stands for Member Operating Account. This account is controlled solely by the DON.

[7] Payment of Insurance premiums are the sole responsibility of the Managing Member as per the OA.

## V.    DON's foreseeable harm reasoning

**Request 1**-The documents withheld regarding Request 1 were email communications that contain discussion, opinions and deliberation amongst the DON's employees and its Consultant (Concourse Group) in relation to LNFH's request for $4M loan out of the MORA account to cover the 2023 insurance premiums of the Project. This loan was requested because of insufficient funds in the Project's Tax and Insurance Escrow Fund, which is controlled, exclusively, by LNFH as Managing Member.

The MORA account is a Project account that holds, among other things, the DON's revenues as Member of the LLC. The DON has discretion on how the MORA account is used and has taken the position that the MORA account will be used for the purpose of sustainment and recapitalization of the Project. LNFH requested a disbursement in the amount of $4M from the MORA account to pay an operational cost in detriment of the Project's financial health.

Revealing the DON's and its Consultant's internal deliberation process for evaluating this MORA loan request (discretionary decision) will disrupt the decision-making process and cause a chilling effect on open and candid discussion among DON's personnel, its consultants, and attorneys, especially when litigation is forthcoming.

The opinions of each of DON's employees, consultant and attorneys should not be made public. Specially, when the final decision was fully explained to LNFH on a letter dated October 27, 2023. (Attached).

The DON stresses that the communications withheld were not and may not be considered as relating to contract administration decisions. As explained above, the business relationship that exists between the DON and LNFH is not tantamount to the relationship that exist between a construction contractor and the government. As such, the communications withheld cannot be considered opinions relating to decisions about contract changes and modifications or requests for equitable adjustments as the Requester implies in its appeal.

LNFH requested the DON to disburse millions of dollars to pay for an operating cost overrun from an account that is destined for the sustainment and recapitalization of the Project. This request had to be evaluated by the DON as Member of NONH and may not be compared to a modification of a contract or a request for equitable adjustment in the context of a government contract. Thus, all communications between the DON's personnel, its consultant, and attorneys should fall under predecisional and deliberative process.

**Request 2**- This request pertains a *"Letter of Dissatisfaction"* sent to LNFH on May 30, 2023. (Attached) DON expressed in this letter that LNFH was breaching its contractual and fiduciary duties as Managing Member of NONH since it failed to provide an Annual Budget estimating realistic projections or revenues and all operating expenses (specifically, insurance premiums) and had failed to ensure that operating costs that exceeded those set forth in the Annual Budget be paid from revenues and to [make] recommended appropriate adjustments to the

23

following years Annual Budget. It further expressed that the Managing Member had not provided all books and records of all accounts to include full access to all General Ledgers accounts. The basis of DON's *Letter of Dissatisfaction* and its rationale were fully disclosed in the letter.

It must be noted, that LNFH had already been apprised of DON's concerns via a letter dated June 12, 2023. (Attached) In this letter DON, as Member of NONH, advised that it had an oversight responsibility which included receiving financial information necessary for complete understanding of the Project's financial situation and the need to understand why the accounts were underfunded and insufficient to cover the Project's operational costs. Accordingly, there is no compelling public interest nor benefit in the disclosure of preliminary conversations between the DON and its Consultants when the rationale for the decision was disclosed in a final decision letter.

If disclosure is required this will cause a foreseeable harm to the agency and will disrupt the decision-making process and cause a chilling effect on open and candid discussion among the DON employees, its consultants, and attorneys. The opinions of each of DON employee, its Consultant and attorneys should not be made public.

Request 3- The documents withheld were the same ones as in Request 2.

Request 4- No documents were withheld in response to this Request.

Request 5- No documents were withheld in response to this Request. The "results or findings of the review of the Project's books and records" were discussed in person with the representatives of LNFH while on site and were later shared in a conference call with LNFH's representatives and employees.

Request 6- The documents withheld were the same as to Request 1.

Request 7- No documents were withheld in response to this Request.

Request 8- DON produced all documents that provide factual matters relevant to the validation and endorsement of the 2021 Property Management Incentive Fee ("PMI Fee"). Full or partial redactions were made to responsive documents under Exemption 5 and 6 since they included Personally Identifying information of the DON's personnel (names, ranks, official titles, duty addresses of military) as well as the deliberative process connected to the DON Member consent to the PMI Fee provided on April 12, 2023, through a letter executed by NAVFAC LANT's Commander.

The April 12th, 2023, letter constituted DON's final decision on the 2021 PMI Fee and provided the rationale used to reach such decision. There is no public interest nor benefit in knowing what DON personnel participates in the approval hierarchy of PMI Fees.

If disclosure of this deliberative process is required, this will cause a foreseeable harm to the agency and will disrupt the decision-making process.

24

Request 9- - DON produced all documents that provide factual matters relevant to the "release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH". DON made partial redactions of email communications that include the opinion of DON's employees and its consultant (Concourse Group) regarding the sufficiency of the supporting documents provided by LNFH in connection to its request. The opinion of DON's employees is protected since these led to the decision of disbursing the money conditioned to the replenishment of the PRF account (loan). The evaluation conducted by DON's employees of LNFH request cannot be compared to a modification of a contract or a request for equitable adjustment; these communications were not a routine collection of data and analysis but rather the evaluation of a request for a loan from a Project account. As part of the evaluation of this loan request the DON determined that a new agreement had to be executed by the parties and/or the amendment of existing business agreements.

Disclosure of the documents withheld will foreseeably harm the decision-making process of DON's employees, consultants, and attorneys to address the appropriateness of the management of NONH, a military housing project. Should these opinions and discussions be disclosed it would chill future internal discussions essential for assessing the sustainment, recapitalization, and financial condition of the Project. Specially, when the Requester is threatening litigation.

DON provided all the information contained in the protected documents that could be separated.

## VI.    Exemption 4- Commercial and Proprietary Information

As explained above, the documents withheld under this exemption contained financial and commercial information from another business entity (Hunt Military Communities) that owns and operates another privatized military housing project. Disclosure of such business and financial information that has no relation with the Requester is exempt from disclosure under Exemption 4.

Other information that was withheld under this exemption was the work product and deliverables of The Concourse Group as consultant of the DON as Member of an LLC. More specifically, the analysis performed on the Project's financial accounts and its recapitalization and sustainment problems. The analysis performed by the Concourse Group to aid the DON in its decision-making process as Member of NONH contains the commercial and financial criteria that DON evaluates to determine the Project's health and sustainment projections. This commercial analysis is exempt from disclosure. Furthermore, the Concourse Group had an expectation of non-disclosure when it provided the information to the DON since it required to be only exchanged with DON personnel for preparation and discussion purposes.

Disclosure of this incomplete information may be misleading and most likely be misinterpreted by the Requester since it contains ideas and opinions that were not made part of DON's final decision.

25

**VII.    Requester has not met its burden of proof.**

Contrary to what the Requester argues in its appeal, the documents withheld provide DON's predecisional and deliberative process on matters that pertain a private entity and not a government program. A well understanding of the document's function is crucial. Merely stating that the information being sought is of factual matters presented to a contracting official and/or providing the interpretation of an already existing contract (which they were not) is not enough to defeat the proper invocation of the privilege. The Requester must make a showing of necessity sufficient to outweigh the adverse effects the production would engender. See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 328-29 (D.D.C. 1966), aff'd, 384 F.2d 979 (D.C. Cir. 1967). The Requester did not meet this burden.

Thus, further, "[t]o test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." Coastal States Gas Corporation v. Department of Energy, 617 F.2d 854,866 (D.C. Cir. 1980). In this case, they are. They express the opinions of DON's employees, consultants and attorneys in a full and frank exchange of information.

The Supreme Court decision in United States Fish & Wildlife Service v. Sierra Club, Inc., 141 S. Ct. 777 (2021) held that the deliberative process privilege protects from disclosure under FOIA in-house draft opinions that are both predecisional and deliberative, even if the drafts reflect the agencies' last views about a proposal." Id. at 782.

**VIII.    Conclusion**

DON adequately withheld 83 documents and redacted portions of 12. Although the DON mentions the possible applicability of Exemption 7 in its response to the Requester, said exemption was not used in its evaluation of the responsive documents.

26



**DEPARTMENT OF THE NAVY**
OFFICE OF THE GENERAL COUNSEL
1000 NAVY PENTAGON
WASHINGTON DC 20350-1000

11 July 2024

Via email to rjohnson@velaw.com

David R. Johnson
Vinson & Elkins LLP
2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037-1701

SUBJECT:  YOUR FREEDOM OF INFORMATION ACT APPEAL

Dear Mr. Johnson:

   This letter responds to your Freedom of Information Act (FOIA) appeal dated June 21, 2024, received in this office on the same date, which you filed on behalf of your clients, New Orleans Navy Housing, LLC (NONH) and Louisana Navy Family Housing, LLC (LNFH).  You appeal on multiple bases, asserting error by Naval Facilities Engineering Systems Command Southeast (the Initial Denial Authority (IDA)), with respect to the IDA's actions on your request of September 7, 2023, in which you set forth nine separate requests (paraphrased here):

- Request 1 seeks documents that relate to negotiations concerning the cost or funding for insurance premiumfor the Project;

- Request 2 seeks documents that discuss the development of a letter that the Navy sent to LNFH;

- Request 3 seeks documents that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023;

- Request 4 seeks documents between the Navy and its consultant, Concourse Group, that relate to the Navy's review of the Project's books and records from that trip;

- Request 5 seeks documents that relate to the results or findings of the review of the Project's books and records from that trip;

- Request 6 seeks documents generated by the Concourse Group that relate to whether or not to release funds from the Project's Member Operating Reserve Account ("MORA") to cover insurance premium costs;

- Request 7 seeks documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, including documents that discuss that the subsidy, in whole or part, shall be deposited into the Project's MORA;

**Exhibit A-9**

- Request 8 seeks documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023; and

- Request 9 seeks documents that refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH.

In the June 12, 2024 action on your request (upon remand of the matter following your appeal of the original action), the IDA granted your request in part and denied it in part, as follows: (1) granted your request without redaction with respect to some 93 records; (2) granted your request with redactions made under FOIA Exemptions 5 and 6 with respect to 12 records; and, (3) denied your request, in its entirety, with respect to some 83 records under FOIA Exemptions 4 and 5. The IDA also set forth a thorough explanation of the action and provided two lists of documents clarifying more precisely what had been withheld or redacted.

In your appeal, you argue, in some detail, that the application of Exemption 5 here is "insupportable" and that Exemption 4 is "inapplicable" here. You also object to the IDA's application of Exemption 6 to redact the names of third parties contained in the records. Additionally, you assert that the IDA erred in mentioning that FOIA Exemption 7A might be applicable. You provide an analysis, cite authorities for your positions, and pray:

> . . . that the Navy sustain this Appeal, rule that the Naval Facilities Command Southeast's invocation of FOIA Exemptions 5 and 4 in the context of this FOI request are incorrect as a matter of fact and law, and require that a complete collection of all responsive documents be released promptly without redactions to NONH and LNFH.

For the reasons set forth below, I deny your appeal.

Exemption 7A.

Coordination with the FOIA office of the IDA clarified the "application" of FOIA Exemption 7A to withhold or redact records responsive to the request. While the IDA noted that Exemption 7A could have been applied to the records, it was not. The language used in the IDA final action may have been imprecise and confusing, but the fact is that FOIA Exemption 7A was *not* applied here in any way.

Exemption 4.

With respect to your assignment of error concerning Exemption 4, please know that records may be withheld under FOIA Exemption 4 if determined to be confidential commercial information. In order to find that information contained in responsive records is confidential commercial information, the agency need determine only that the information is commercial or financial in nature, submitted by a person, is customarily and actually kept confidential, or at least closely held, and, that the Government has provided some assurance of confidentiality. See *Food Mktg Inst. v. Argus Leader Media*, 588 U.S. ___, 139 S. Ct. 2356 (2019).

2

Note that, under Exemption 4, information is commercial or financial in nature if the submitter has any commercial interest in it. Here, the information under review clearly meets this standard, as the records reflect information produced by the submitter to the agency pursuant to a business transaction. Note, too, that under Exemption 4, the term "obtained from a person" includes information obtained from an individual, partnership, corporation, association, or other public or private organization. Again, the submitter clearly meets this definition.

With respect to the first prong of the confidentiality test of *Argus Leader*, here the submitter of certain commercial records has represented that it customarily and actually keeps the withheld records confidential, or at the very least, keeps them closely held. And as for the second prong of the confidentiality test, it may be satisfied in one of two ways – either by a finding of an express or implied assurance of confidentiality provided by the Government, or, at the time of the submission of the information, no indication by the Government that it would release the information to the public (which, by itself, constitutes an implied assurance). Here, the IDA represents that there was an implied agency, or even mutual assurance of confidentiality, but even if not, consistent with *Argus Leader*, there certainly appears to have been no indication, at the time the information was submitted, that it would be made public. Under either test, the second prong of *Argus Leader* is met and, as the first prong of the test is also met, the information is considered confidential commercial information subject to withholding under FOIA Exemption 4.

I note that the IDA considered segregability, but, given the concerns of confidentiality and the fact that any information that may be segregable would be, in essence, nonsensical without accurate context, the IDA determined that no information could be released. I, too, have considered segregability and find that it is not applicable in this instance. The IDA did not err in applying Exemption 4, nor did it err in assessing the matter of segregability in the application of Exemption 4 to the withheld records. I also note that a finding of confidentiality in the commercial or financial information makes the case for foreseeable harm. In short, the release of this sort of commercial or financial information, deemed by submitters and the government to be confidential in nature, would be inherently harmful to agency processes in the business arena, as submitters will become reluctant to do business with the agency if they believe the agency may release confidential commercial information.

Additionally, your appeal letter makes clear that you interpret the business agreements that exist between the parties as FAR-regulated and thus, include Part 42 FAR contract administration/management responsibilities. However, that is not the case here. The rights, responsibilities, and duties of each member of the LLC is controlled by the Operating Agreement of the LLC which is governed by the Louisianna LLC Act. The Navy's actions relating to NONH are as a Member of the LLC and not as a government contract administrator or as a government regulator. Therefore, the FAR-based analysis you find in the caselaw used in the appeal to support the argument that contract administration communications must be disclosed is irrelevant and inapplicable. The FOIA controls here, and the IDA applied Exemption 4 consistent with the FOIA.

The IDA did not err in the application of FOIA Exemption 4.

3

Exemption 5.

I also find that the IDA properly withheld the requested records under FOIA Exemption 5. Under the deliberative process privilege of Exemption 5, information contained in intra- and inter-agency memoranda may be withheld when release could reasonably be expected to cause harm to agency processes. Documents reflecting advisory opinions, recommendations, and deliberations that are part of a government decision-making process are covered by Exemption 5. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). The deliberative process privilege seeks to ensure that personnel within an agency feel free to provide advice to the agency decision maker. The release of this type of information would jeopardize a governmental interest in fostering the free flow of advisory opinions within the Department of the Navy. Further, if the opinions, recommendations, and evaluations in a document are inextricably intertwined with the factual material, there may be no reasonably segregable material to be released.

In this case, the responsive records are subject to three privileges protected under Exemption 5: (1) attorney-client privilege; (2) attorney work-product privilege; and, (3) the deliberative process privilege. The records here were withheld in their entirety under Exemption 5 in order to preserve one or more of these privileges. These records concern agency decision making that was both deliberative and predecisional in nature They include both direct attorney-client privileged information and attorney work-product information, as well as deliberative information. Release of this sort of information would have a direct, clear, negative impact on the free, candid, and on agency decision making processes. After all, which agency employees will provide frank, candid views and opinions on essential government decision making matters if those views will be subject to ridicule and attack from outside the agency? Clearly, release of this sort of deliberative information would not foster the free flow of information, and the foreseeable harm in any such release would be substantial. Moreover, given the fact that the records here are entirely, or nearly entirely, exempt from release under Exemption 5, there is no reasonably segregable information to be released.

I note here that the IDA applied the "consultant corollary" under Exemption 5 to subject records. The consultant corollary allows the treatment of records generated by certain agency consultants, as if those consultants were the agency itself. To apply the consultant corollary, the agency must establish that:

a. The individual identified as a consultant was solicited to aid in the Government's decision-making process (i.e., the letter or email or other communication which solicited the individual's participation),

b. The individual identified as a consultant was hired or solicited by the agency to provide neutral advice that did not represent an interest of its own or the interest of any other client upon providing the requested advice,

c. The communications are otherwise covered by the deliberative process privilege (e.g., the communications with the consultant were *pre*-deliberative).

4

Here, the agency's application of the consultant corollary is consistent with these requirements, and there is no evidence to suggest that this is not an accurate assessment of the consultants utilized by the government in this matter. The IDA's application of the corollary was, therefore, correct.

The IDA did not err in the application of FOIA Exemption 5.

Exemption 6.

FOIA exemption (b)(6) protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). When determining whether exemption (b)(6) protects a record, or information within a record, from disclosure, the agency must first determine if there is a privacy interest in the information or record requested. "Privacy" encompasses an individual's control of information concerning his or her person, including the "prosaic" (e.g., place of birth and date of marriage) as well as the intimate and potentially embarrassing. *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989). All information that "applies to a particular individual" meets the exemption (b)(6) threshold for protection. *U.S. Dep't of State v. Wash Post Co*, 456 U.S. 595 (1982). This requires a balancing of personal privacy interests against the public interest served by disclosure—whether the release of the information will shed light on the agency's performance of its statutory duties. An unwarranted invasion of personal privacy is one where disclosure would compromise a substantial privacy interest. *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). A substantial privacy interest is anything more than a *de minimis* one. *Multi AG Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1229–30 (D.C. Cir. 2008). Courts have held that substantial privacy interests cognizable under the FOIA are generally found to exist in such personally identifying information as a person's name, address, email address, image, computer user ID, job title, phone number, date of birth, criminal history, medical history, and social security number. *See Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982); *see also Performance Coal Co. v. U.S. Dep't of Labor*, No. 10-1698, 2012 WL 746411, at *8 (D.D.C. Mar. 7, 2012). Specifically, courts have held "signatures, personal phone numbers, personal email addresses, and government email addresses were properly redacted" under FOIA exemption (b)(6) for military members due to heightened privacy interests. *Wilson v. United States Air Force*, No. 08-324, 2009 WL 4782120, at *4 (E.D. Ky. Dec. 9, 2009). If the agency finds a substantial privacy interest exists, it then analyzes the public interest in that record's release. *Multi AG Media LLC*, 515 F.3d at 1229.

Where an agency finds that a legitimate privacy interest exists, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quotations omitted). The Supreme Court has held that disclosure must "contribute significantly to public understanding of the operations or activities of the government." *Reporters Comm. for Freedom of Press v. DOJ*, 489 U.S. 749, 775 (1989). The public interest must also further the

5

"core purpose" for which Congress enacted the FOIA: to shed light on an agency's performance of an agency's statutory duties. *Id.*

While the disclosure of names can constitute an unwarranted invasion of personal privacy for certain personnel, other personnel names can be released due to the nature of their positions and duties. *See Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 523 (S.D.N.Y. 2010). For the Department of Defense (DoD), in the interest of open government, the grades of all personnel and the names of office-director-level DoD employees or those in the grade of colonel or Navy captain (O-6) and above who hold command, are a division director, or otherwise play a significant policy role, are generally not exempted under FOIA exemption (b)(6). In contrast, the names of O-6 officers and civilian equivalents who serve as staff advisors/action officers are generally exempt. *Id.* Likewise, the identity and personal information of military and civilian personnel who are lower-level or junior employees, who do not hold positions of authority, and who do not work in public relations positions, are generally withheld. Here, this balancing tests falls in favor of the IDA's withholding the personal information. There is little, if any, public interest in the withheld personal information contained in the records, yet there is great privacy interest. Therefore, the balancing test permits withholding.

The IDA did not err in the application of FOIA Exemption 6.

I note for the record that I have confirmed with the IDA that the foreseeable harm standard was, in fact, applied when considering the application of the exemptions here. I, too, have considered foreseeable harm independently, and have taken this action in accordance with the foreseeable harm standard. I also considered segregability and discretionary release, and found neither is appropriate here.

Finally, in your appeal you object to what you deem an inadequate documents lists. The IDA is not obligated, short of litigation, to create and provide a *Vaughn* Index or other list of records under review. Insofar as the IDA provided you with a documents lists, that was a voluntary act on his part made in an attempt to assist you. The lists provided are legally unobjectionable, as they are in no way required.

Accordingly, I hereby deny your appeal

This is the final agency action on this matter. This action concludes agency action on the requests and appeal(s) you have presented on this subject, and no further action will be taken by the agency on these matters absent a court order.

As the Department of the Navy's designated adjudication official for this FOIA appeal, I am responsible for this decision. This decision is the final agency decision for the Department of the Navy and the Department of Defense. You may seek judicial review of this decision by filing a complaint in an appropriate U.S. District Court. My office represents the U.S. government and is therefore unable to assist you in this process.

6

If you would like to seek dispute resolution services, you have the right to contact the Department of the Navy's FOIA Public Liaison, Mr. Christopher Julka, at (703) 697-0031 or christopher.a.julka@navy.mil.

Sincerely,

M. K. DeMane
Deputy General Counsel

Copy to:
IDA

7

| CUI Id. No. Document Withheld | Bate Stamp # | FOIA Related Request | FOIA Exemptions Raised | Description of Document |
|---|---|---|---|---|
| 1 | 1-5 | 1 | 4,5 & 6 | Email from The Concourse Group ("TCG") consultant to Tom McKelvey (NAVFAC SE, Business Agreements Manager) providing an attachment with a summary of the open and active issues between the DON ("Member") and LNFH ("Managing Member") of the Project and potential DON responses to LNFH.<br><br>**Attachment-** TCG's consultant work product analyzing the open and active issues between the LNFH (Managing Member) and the DON (Non-Managing Member) in connection to the privatized housing Project. This document was marked as "Business Confidential". There was an express understanding between the DON and TCG that the document would be used exclusively by DON personnel. No release under FOIA was expected.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 2 | 6-8 | 1 | 5 & 6 | Deliberative process discussions between NAVFAC SE, NAVFAC LANT PPV employees and TCG regarding possible scenarios under which a loan from Member controlled Accounts could be granted to the Managing Member to cover the cost of insurance premiums.<br><br>Although Exemption 4, 5 and 6 were raised by the IDA in its amended response, the document should be withheld under Exemptions 5 & 6. The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6.<br><br>**Attachment-** TCG's draft of a proposed answer to be evaluated by NAVFAC PPV personnel. The final language and official DON response was delivered to LNFH.<br><br>**DON's final decision was delivered to LNFH in writing** |

**Exhibit A-10**

| 3 | 9-15 | 1 | 4,5 & 6 | Email from TCG to Tom McKelvey providing proprietary information of another PPV Project (Kingsville II) and another Managing Member (Hunt Military Communities) to use as an example to reach a solution to the issues raised by LNFH. The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. **DON's final decision was delivered to LNFH in writing.** |
|---|---|---|---|---|
| 4 | 16-19 | 1 | 5 & 6 | Deliberative process: notes and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward. The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. **DON's final decision was delivered to LNFH in writing** |
| 5 | 20-22 | 1 | 5 & 6 | Deliberative process: notes and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. Provides DON's steps moving forward. Additionally, includes comments and opinion of TCG regarding LNFH's proposal to repay the loan requested to pay for insurance premium. The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. **DON's final decision was delivered to LNFH in writing** |

| | | | | |
|---|---|---|---|---|
| 6 | 23-24 | 1 | 5 & 6 | Deliberative Process: notes and opinion of NAVFAC SE and NAVFAC PPV LANTs personnel regarding LNFH's proposed insurance policy coverage.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 7 | 25-29 | 1 | 5 & 6 | Deliberative Process: notes and the opinion ofprivilege Tom McKelvey, Agency Counsel and TCG of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>Attorney Work Product privilege is applicable to this document.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 8 | 30-33 | 1 | 5 & 6 | Deliberative process: proposed commercial analysis of NAVFAC SE PPV in relation to the 2021 Property Management Incentive Fee. **The final analysis was delivered to the Managing Member, LNFH.**<br><br>Although Exemptions 4, 5 and 6 were raised to withhold release, this document should have been withheld under Exemptions 5 & 6. The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 9 | 34-35 | 1 | 5 & 6 | Deliberative process: notes, input, and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward.<br><br>The content of this email communication and attachment |

| | | | | |
|---|---|---|---|---|
| | | | | are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. |
| 10 | 36-38 | 1 | 5 & 6 | Deliberative process: discussion between NAVFAC SE PPV employees re: undetermined and potential future insurance proceeds that LNFH estimates the Project will receive from a pending bad faith and breach of contract insurance lawsuit against the Project's insurance company; provides NAVFAC SE personnel internal evaluation of the Project's accounts.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 11 | 39-40 | 1 | 5 & 6 | Deliberative process: communications between NAVFAC SE PPV personnel and supporting commands in connection to LNFH's request for a PRF loan.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |

| 12 | 41-76 | 1 | 5 & 6 | Deliberative Process: Communications between NAVFAC SE PPV personnel and TCG discussing terms and conditions of a proposed Addendum to NONH Operating Agreement in consideration for loan approval. The record included multiple email attachments.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing** |
|---|---|---|---|---|
| 13 | 77-82 | 1 | 5 & 6 | Deliberative Process: notes, input and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>This document is also protected under Attorney-Client Privilege since Agency Counsel was requested to provide an assessment of potential risks due to potential lawsuit against the DON as Member of NONH LLC. |
| 14 | 83-86 | 1 | 5 & 6 | Deliberative Process: notes, input and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |

5

| 15 | 87-88 | 1, 2 | 5 & 6 | Deliberative Process: notes, input and the opinion of a NAVFAC LANT PPV employee and a TCG consultant of what documents/information must the Managing Member provide to the DON to fulfill its obligations under the OA with regards to the Project's insurance coverage. <br><br> The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. <br><br> **DON's final decision on the subject was delivered in writing to LNFH.** |
|----|-------|------|-------|---|
| 16 | 89-91 | 1, 2 | 5 & 6 | Deliberative process of NAVFAC LANT, NAVFAC SE and TCG consultants regarding LNFH's loan request. <br><br> Although Exemptions 4, 5 & 6 were raised by the IDA to withhold release of this document, the exemptions that apply are Exemptions 5 & 6. The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. <br><br> **DON's final decision was delivered to LNFH in writing.** |
| 17 | 92-95 | 1, 2, 3, 9 | 5 & 6 | Deliberative Process: Communications between NAVFAC SE and NAVFAC LANT personnel and TCG consultant discussing the terms and conditions of a proposed Addendum to NONH Operating Agreement in consideration for loan approval. These emails had email attachments that were withheld as well. <br><br> The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. <br><br> The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome. <br><br> **DON's final decision was delivered to LNFH in writing.** |

| 18 | 96-101 | 1, 2, 3 | 4, 5 & 6 | Deliberative Process: Communications between NAVFAC SE, NAVFAC LANT and TCG consultant discussing the LNFH's position to withhold the Project's financial information from the DON. It also reflects the DON's employees' opinions and input essential to the Agency's decision-making process. NAVFAC HQ discussed the need to engage Agency's counsel.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| --- | --- | --- | --- | --- |
| 19 | 103-153 | 1, 2, 3 | 5 & 6 | Deliberative Process: opinions of NAVFAC SE and NAVFAC LANT personnel regarding the financial sustainability of the Project and how it will be affected by future project costs, discusses recommended next steps. Attachment has the work product of TCG and NAVFAC SE regarding the Project's financial sustainability.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 20 | 154-161 | 1, 2, 3 | 5 & 6 | Deliberative Process: pre-decisional and deliberative opinions of NAVFAC SE, NAVFAC HQ and NAVFAC LANT's personnel as well as TCG consultant. It also includes the request made to Agency's counsel to provide input on LNFH's submitted addendum to the business agreements. Additionally, this document includes a proposed language to be included in the 2023 Dissatisfaction Letter to be sent to the Managing Member which was commented and revised by NAVFAC SE, NAVFAC LANT PPV personnel, TCG, and Agency's counsel.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names |

| | | | | |
|---|---|---|---|---|
| | | | | and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**The final "Dissatisfaction Letter" was sent to the Managing Member providing DON 's decision and rationale.** |
| 21 | 162-177 | 1, 2, 6 | 5 & 6 | Deliberative Process: it reflects pre-decisional and deliberative opinions of NAVFAC SE, NAVFAC LANT, NAVFAC HQ PPV's personnel and TCG with respect to potential insurance proceeds to be received by the Project.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 22 | 178-182 | 1, 3, 9 | 5 & 6 | Deliberative Process: notes, input and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. Includes DON's steps moving forward. Attachments were also withheld as they contain the proposed revisions to the Operating Agreement for discussion and internal deliberations.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 23 | 183-193 | 1, 3, 9 | 5 & 6 | Deliberative Process: pre-decisional and deliberative opinions of NAVFAC SE and NAVFAC LANT PPV personnel. This document includes notes, input and the opinion of Tom McKelvey of what transpired during a meeting with LNFH officers and their attorney. It also provides DON's steps moving forward. Additionally, the document includes internal deliberation on litigation risk.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. |

8

| | | | | |
|---|---|---|---|---|
| | | | | The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 24 | 194-197 | 1 | 5 & 6 | Deliberative Process: includes the input and opinion of T. McKelvey and TCG consultant regarding the proposed insurance policy coverage by LNFH and what DON's position should be. Includes internal deliberation of open and active litigation filed by LNFH and the likelihood of prevailing in each one of them.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 25 | 198-230 | 1, 6 | 4, 5 & 6 | Deliberative Process: TCG's consultant opinion regarding the financial sustainability of the Project and how it will be affected by future project costs; recommended next steps. It also has an attachment with TCG's work product: Project's cashflow analysis and projections. TCG's work product should be exempt from release under Ex. 4.<br><br>The content of these email communications and attachments are also protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 26 | 231-232 | 1, 6 | 5 & 6 | Deliberative Process: communication between TCG and NAVFAC SE PPV personnel which include input and deliberative opinions of LNFH's proposed loan repayment scenarios.<br><br>The content of this email communication and any attachment are |

9

| | | | | |
|---|---|---|---|---|
| | | | | protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. This communication was pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 27 | 233-235 | 1, 6, 9 | 4, 5 & 6 | Deliberative Process: communication between TCG and NAVFAC SE PPV personnel which includes their input and deliberative opinions of LNFH's proposed loan repayment scenarios. Additionally, it includes a 2023 Insurance Premium Funding Action Plan which was not intended to be released to LNFH. This document should be exempt from Release.<br><br>The content of this email communication and its attachment are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. This communication was pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 28 | 236-246 | 1, 6, 9 | 5 & 6 | Deliberative Process: communication between TCG and NAVFAC SE PPV personnel which includes the opinion of TCG regarding the proposed amendments to the NONH Operating Agreement and the Indenture. Communications between DON personnel and TCG. Attachment includes TCG's proposed amendments to be considered by the DON before sending to LNFH.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 29 | 247-249 | 1,6,9 | 5 & 6 | Deliberative Process: communication between TCG and NAVFAC SE PPV personnel which includes TCG's opinion on insurance proceeds distribution in the Project's accounts. Recommends topics to be discussed with Agency's counsel. The content of tese email communications and attachments are |

10

| | | | | |
|---|---|---|---|---|
| | | | | protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was discussed orally and delivered in writing to LNFH.** |
| 30 | 250-254 | 2 | 5 & 6 | Deliberative process conducted by NAVFAC SE, NAVFAC LANT and NAVFAC HQ's personnel in connection to the proposed language to be included in "Letter of Dissatisfaction" to be sent to LNFH.<br><br>The contents of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**The final Letter of Dissatisfaction was delivered to LNFH providing the DON's basis and rationale.** |
| 31 | 255-263 | 2, 3, 9 | 5 & 6 | Deliberative Process: opinions and comments made during the deliberative process conducted by NAVFAC SE's personnel and TCG in connection to the PRF Loan Repayment Agreement.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH and in writing.** |
| 32 | 264-265 | 2, 3, 9 | 5 & 6 | Deliberative Process: opinions, input and comments made during the deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel in connection to the PRF Loan Repayment Agreement. |

| | | | | |
|---|---|---|---|---|
| | | | | The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH and in writing.** |
| 33 | 266-267 | 3 | 5 & 6 | Deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel regarding Project's financials review. The Project's financials and ledgers were subsequently evaluated, in person, at the Project's offices. DON's personnel met with LNFH personnel and discussed findings.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH and in writing.** |
| 34 | 269-271 | 3 | 5 & 6 | Deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel regarding Project's financials review. The Project's financials were subsequently evaluated, in person, at the Project's offices. DON's personnel met with LNFH personnel.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 35 | 272-273 | 3 | 5 & 6 | Deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel regarding Project's financials review. The Project's financials were subsequently evaluated, in person, at the Project's offices. DON's personnel met with LNFH and NONH personnel.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |

| | | | | |
|---|---|---|---|---|
| 36 | 274-277 | 5 | 5 & 6 | Deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel regarding Project's financials review. The Project's financials were evaluated, in person, at the Project's offices. DON's personnel met with LNFH personnel.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH and in writing.** |
| 37 | 278-280 | 6 | 5 & 6 | Deliberative Process: communication between TCG's consultant and NAVFAC SE PPV personnel deliberative opinion and pre-decisional input regarding current and open issues and the possibility of the Project receiving excess insurance proceeds. TCG's consultant opinions and deliberative process was shared with Agency's counsel for awareness.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 38 | 281-284 | 7 | 5 & 6 | Deliberative Process: opinions and comments made during the deliberative process conducted by NAVFAC SE and NAVFAC LANT's personnel in connection to 606 reimbursements.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 39 | 285-291 | 9 | 5 & 6 | Deliberative Process: communication exchange between NAVFAC LANT and NAVFAC SE's personnel regarding Managing Member's PRF Loan request.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. |

13

| | | | | DON's final decision was delivered to LNFH in writing. |
|---|---|---|---|---|
| 40 | 292-295 | 8 | 5 & 6 | This document contains attorney-client privilege communication discussing force majeure events criteria in the incentive fee deliberation. The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. **DON's final decision was delivered to LNFH in writing.** |
| 41 | 296-301 | 8 | 5 & 6 | This document contains attorney-client privilege communication discussing force majeure events criteria in the Agency's incentive fee deliberation. The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. **DON's final decision was delivered to LNFH in writing.** |
| 42 | 302 | 8 | 5 & 6 | Deliberative process conducted by NAVFAC SE's personnel re: proposed 2021 Project Manager Incentive Fee Executive Summary. Includes NAVFAC's internal processes and opinions. The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. **DON's final decision was delivered to LNFH in writing.** |
| 43 | 303-307 | 8 | 5 & 6 | Deliberative process conducted by NAVFAC SE, NAVFAC LANT, NAVFAC HQ and CNIC's personnel re:2021 Project Manager Incentive Fee. Includes NAVFAC's internal processes and opinions. The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. **DON's final decision was delivered to LNFH in writing.** |

| 44 | 308-311 | 8 | 5 & 6 | Deliberative process conducted by NAVFAC SE, NAVFAC LANT, NAVFAC HQ and CNIC's personnel re:2021 Project Manager Incentive Fee. Includes NAVFAC's internal processes and opinions.<br><br>The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 45 | 312 | 8 | 5 & 6 | Deliberative Process: opinion and comments of NAVFAC SE personnel re: LNFH's request to contact Agency's counsel.<br><br>The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 46 | 313-314 | 8 | 5 & 6 | Deliberative Process: opinions and comments of NAVFAC SE's personnel re: 2021 Project Manager Incentive Fee supporting data.<br><br>The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 47 | 315-316 | 8 | 5 & 6 | Deliberative Process: opinions and comments of NAVFAC SE's personnel re: 2021 Project Manager Incentive Fee supporting data.<br>The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency |

15

| | | | | |
|---|---|---|---|---|
| | | | | decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 48 | 317-319 | 8 | 5 & 6 | Deliberative Process: opinions and comments of NAVFAC SE's personnel re: 2021 Project Manager Incentive Fee supporting data.<br><br>The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 49 | 320-322 | 8 | 5 & 6 | Deliberative Process: opinions and comments of NAVFAC SE and CNIC's personnel re: 2021 Project Manager Incentive Fee-discretionary criteria.<br><br>The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 50 | 323-326 | 9 | 5 & 6 | Deliberative Process: opinions and comments made during the deliberative process conducted by the Deputy Assistant Secretary of Defense (Housing) and NAVFAC SE re: Quarterly MHPI OSD Review- Loan Request from Long Tern Reserves.<br><br>The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 51 | 327-334 | 9 | 5 & 6 | Deliberative process: communication between NAVFAC HQ, NAVFAC LANT, NAVFAC PPV SE's civilian and active-duty chain of command on: Managing Member's loan request against the Project Recapitalization Funds (PRF) to replenish the Project's operating account versus the Navy's proposal to treat it as a loan to preserve a balance for the sustainment of the Project. Discussed loan terms and repayment.<br><br>The content of this email communications is protected under |

16

| | | | | |
|---|---|---|---|---|
| | | | | Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 52 | 335-338 | 9 | 5 & 6 | Deliberative process: communications between CNIC HQ and NAVFAC PPV SE's civilian and active-duty chain of command on re: Managing Member's loan request against the Project Recapitalization Funds (PRF) to replenish the Project's operating account.<br><br>The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 53 | 339-344 | 9 | 5 & 6 | Deliberative process: opinions and comments of NAVFAC SE personnel re: proposed language to amend the Trust Indenture Supplement if a PRA loan is granted and analysis of the need to create an additional reserve account for hurricane expenses.<br><br>The content of this email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision on the request of a PRA Loan was delivered to LNFH in writing.** |
| 54 | 345-372 | 9 | 5 & 6 | Deliberative process: communications between NAVFAC HQ, NAVFAC LANT, NAVFAC PPV SE's civilian and active-duty personnel on: Managing Member's refusal to reach an agreement to repay the $1M PRA loan that was granted; Navy's evaluation on the need to execute a Trust Indenture Supplement with the Managing Member and the Bondholder representative to allow for repayment of future loans against reserve account (ORA/PRA).<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester |

17

| | | | | |
|---|---|---|---|---|
| | | | | already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 55 | 373-379 | 9 | 5 & 6 | Deliberative process: communication between NAVFAC LANT and NAVFAC SE's civilian and active-duty chain of command on re: Managing Member's loan request against the Project Recapitalization Funds (PRF) to replenish the Project's operating account and challenges faced with administrative decisions made by the Managing Member to overspend annual CRR and operating funds for capital repairs without Navy approval and then seek PRA reimbursement from Navy accounts.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 56 | 380-382 | 9 | 5 & 6 | Deliberative process: communications between NAVFAC LANT, NAVFAC SE's civilian and active-duty personnel as well as TCG re: loan request and long-term impact to Project's sustainment accounts.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 57 | 383-384 | 9 | 5 & 6 | Deliberative process: communications between NAVFAC LANT, NAVFAC SE, CNIC HQ and CNIC Region personnel re: concurrences needed from the supporting command (CNIC) to prepare package for the PRF Loan request. Delegation of authorities, internal processes, and requirements were discussed in these communications.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |

| | | | | |
|---|---|---|---|---|
| 58 | 385-392 | 9 | 5 & 6 | Deliberative process: communications between NAVFAC LANT, NAVFAC SE, CNIC HQ and CNIC Region personnel re: concurrences needed from the supporting command (CNIC) to prepare package for the PRF Loan request. Delegation of authorities, internal processes, deliberations and requirements were discussed in these communications.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision regarding the loan request was delivered to LNFH in writing.** |
| 59 | 393-399 | 9 | 5 & 6 | Deliberative process: communications between NAVFAC LANT, NAVFAC SE's civilian and active-duty personnel re: loan request and long-term impact to Project's sustainment accounts and the information requested to LNFH to process the loan request.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 60 | 400-405 | 9 | 5 & 6 | Deliberative process: communications exchanged between NAVFAC HQ, NAVFAC LANT and NAVFAC SE's personnel reflecting their input and opinion on the risks involved in granting LNFH its loan request and how it would affect the Project's reserve accounts and sustainment.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 61 | 406-410 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC HQ, NAVFAC LANT, and NAVFAC SE' PPV personnel and TCG reflecting their input and opinion on the Managing Member's changed position regarding a loan from the sustainment reserve account. Pre-decisional and deliberative opinions on options available without affecting the Project's sustainment were exchanged in these communications. |

19

| | | | | |
|---|---|---|---|---|
| | | | | The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 62 | 411-412 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC LANT, NAVFAC SE, and TCG reflecting their input and opinion on LNFH's different loan repayment scenarios.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 63 | 413 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC SE's personnel reflecting their input and opinion on the Managing Member's representations and their negativity in in providing the paperwork requested by the DON to process the loan request.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 64 | 414-418 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC LANT, NAVFAC SE, and TCG reflecting their input and opinion on the sustainment reserve accounts to be used to support LNFH's loan request, documents required to process the loan request and internal approval process required to process the loan.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 65 | 419 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC SE's personnel and TCG reflecting their input and opinion of the Managing Member's refusal to execute loan repayment agreements and provide a plan repay the PRF Loan that was granted by the Navy; discussed internal processes. |

20

| | | | | |
|---|---|---|---|---|
| | | | | The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 66 | 420-423 | 9 | 5 & 6 | This document includes the opinions and comments made during the deliberative process conducted by NAVFAC HQ, NAVFAC LANT, and NAVFAC SE's civilian and uniformed chain of command re: Managing Member's change of position (distribution of reserve account v. loan); Navy internal processes and concurrences required to grant this request; discussion on Project sustainment.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 67 | 424-425 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC LANT, NAVFAC SE's civilian and uniformed chain of command reflecting their input and opinion on the sustainment reserve accounts to be used to support LNFH's loan request, documents required to process the loan request and internal approval process required to process the loan.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 68 | 426-432 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC HQ, NAVFAC LANT, NAVFAC SE's personnel and TCG reflecting their input and opinion regarding the Project's cashflow for 2020.<br><br>The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |

21

| 69 | 433-439 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC HQ, NAVFAC LANT, NAVFAC SE's personnel and TCG reflecting their input and opinion on the problems with Managing Member's budget submissions 2020/2021; wrong calculations submitted by the Managing Member. |
|----|---------|---|-------|----|
| | | | | The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. |
| | | | | **DON's final decision was delivered to LNFH in writing** |
| 70 | 440-445 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC HQ, NAVFAC LANT, NAVFAC SE's personnel and TCG reflecting their input and opinion on the duplicate payment of 606 funds incorrectly received by LNFH due to a WAWF/DFAS processing issue; LNFH's wrong distribution of funds through the Project's waterfall; and discusses the Agency's internal requests and processes. |
| | | | | The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. |
| | | | | The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome. |
| | | | | **DON's final decision was delivered to LNFH in writing.** |
| 71 | 446-449 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC LANT chain of command and NAVFAC SE's personnel reflecting their input and opinion on the Managing Member's loan request process; the required documents to process the loan request and the Project's sustainment plan. |
| | | | | The content of these email communications are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. |
| | | | | **DON's final decision was delivered to LNFH in writing** |

22

| 72 | 450-452 | 9 | 5 & 6 | Deliberative process: communication exchanged between CNIC and NAVFAC SE chain of command reflecting their input and opinion on the Agency's internal processes and requirements to grant a PRA loan to the Managing Member; discusses the Managing Member's lack of documentation to support the loan request.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 73 | 453-456 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFA HQ, NAVFAC LANT, NAVFAC SE and TCG reflecting their input and opinion on the different scenarios under which the NAVY could consider to a grant a PRA loan to the Managing Member; recommendations on proposed repayment structures; and long-term impacts to sustainment reserve accounts.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing.** |
| 74 | 457 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC LANT and NAVFAC SE personnel reflecting their input and opinion on the Managing Member's refusal to execute PRA Loan repayment agreements for the loan/disbursement made by the DON in 2021.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. |

23

| | | | | DON's final decision was delivered to LNFH in writing. |
|---|---|---|---|---|
| 75 | 458-459 | 9 | 5 & 6 | Deliberative process: communication exchanged between CNIC, and NAVFAC SE reflecting their input and opinion on the Managing Member's refusal to provide the Agency with required documents to support its PRA Loan request.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 76 | 460-463 | 1, 6, 9 | 5 & 6 | This document includes attorney-client communication between NAVFAC LANT, NAVFAC SE Legal Counsel and TCG.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>DON's final decision on the subject matter was provided in writing. |
| 77 | 464 | 9 | 5 & 6 | Deliberative Process: Communications between by NAVFAC SE's personnel chain of command reflecting their input and opinion on the Managing Member's refusal to execute Loan repayment agreements for the loan granted by the DON in 2021.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |

24

| 78 | 465 | 9 | 5 & 6 | Deliberative Process: Communications between by NAVFAC SE's personnel chain of command reflecting their input and opinion on the Managing Member's refusal to execute Loan repayment agreements for the loan granted by the DON in 2021.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 79 | 466-469 | 1, 6 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC SE and TCG reflecting their input and opinion on the Managing Member's proposal to get a promissory note from the DON to pay the asset and incentive fees; long-term impacts to the Project's accounts considering LNFH's MORA Loan request to cover the Project's insurance premiums; Project's cashflow analysis prepared by TCG and suggested questions to be asked to the Managing Member.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 80 | 470 | 9 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC SE civilian and uniformed chain of command reflecting their input and opinion on LNFH's change of position with regards to how to obtain the money to pay for insurance premiums and their objection to repay any of the loans requested to the DON to date.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. |

| | | | | |
|---|---|---|---|---|
| | | | | The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final Letter of Dissatisfaction was delivered to LNFH in writing** |
| 81 | 471-480 | 1, 2, 6 | 5 & 6 | Deliberative process: communication exchanged between NAVFAC HQ, NAVFAC LANT, CNIC, NAVFAC SE's civilian and uniformed chain of command and TGC reflecting their input and opinion on proposed language for "Letter of Dissatisfaction due to Insurance deficiency", Managing Member's MORA Loan request and proposed addendum to the Operating Agreement.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>The Agency notes that these documents have releasable portions which were released to the Requester separately. The Agency decided to fully withhold this document since the Requester already has the portions that are releasable. Redaction of these communications would have been overburdensome.<br><br>**DON's final Letter of Dissatisfaction was delivered to LNFH. A separate communication was sent to LNFH providing Navy's final decision on MORA Loan request and Addendum to Operating Agreement.** |
| 82 | 481-488 | 1 | 5 & 6 | Deliberative Process: Discussion between Agency's counsel and TCG reflecting their input and opinion on LNFH's MORA Loan request and repayment schedule and unanswered request for production of documents.<br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional.<br><br>**DON's final decision was delivered to LNFH in writing** |
| 83 | 489-490 | 1 | 5 & 6 | Deliberative Process: communications between NAVFAC HQ, NAVFAC SE's civilian and uniformed chain of command and TGC reflecting their input and opinion on DON's position to |

| | | | | LNFH's request of a loan and their stance on the replenishment of the Project's accounts. |
| | | | | The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. These communications were pre-decisional. |
| | | | | **DON's final decision was delivered to LNFH in writing** |

### INDEX OF THE IDA'S 12 PARTIAL RELEASES

| Id. No. Document Withheld | Bate Stamp # | FOIA Related Request | FOIA Exemptions Raised | Description of portion of document redacted |
|---|---|---|---|---|
| 1P | 491-511 | 1 | Ex.5 & 6 | Agency redacted email communication dated June 16, 2023, from TCG consultant to NAVFAC SE, NAVFAC LANT employees and Agency Counsel. The redacted email communication included 2 attachments. The content of the email communication and its attachments are protected under Exemption 5 (deliberative process and attorney-client privilege communication) while names and email addresses of the recipients of that email are protected under Exemption 6. Rationale: The email and its 2 attachments include TCG's (DON consultant) recommendations of necessary revisions to the Project's OA and Indenture considering the loan repayment plan scenarios proposed by the Managing Member. These pre-decisional recommendations were sent to the Agency's Counsel and DON employees to help ascertain the financial effect of a loan repayment plan to the current business structure. **DON's final revisions to the OA and the Indenture were delivered to LNFH in writing.** |
| 2P | 512-520 | 1,2 & 3 | Ex.5 & 6 | Agency redacted an email communication dated May 17th, 2023, from Tom McKelvey to NAVFAC SE, Commanding Officer. The redacted email communication included 1 attachment. The content of the email communication and its |

27

| | | | | |
|---|---|---|---|---|
| | | | | attachment are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of that email are protected under Exemption 6.<br><br>Rationale: The email communication between Tom McKelvey and NAVFAC SE Commanding Officer is protected under the deliberative process privilege since it provides Tom McKelvy's report, input and opinion on the issues raised by LNFH to the Commanding Officer of NAVFAC SE. This communication is pre-decisional.<br><br>The IDA decided to fully withhold the attachment of this email since the portions of the attachment that were releasable were either sent or received by the Requester on May 2, 2023, and May 5, 2023. Redaction of this document would have been overburdensome.<br><br>DON's final decision on the issues raised by LNFH were provided in writing on October 27, 2023. |
| 3P | 521-531 | 1, 2, 4 & 6 | Ex.5 & 6 | Agency redacted various email communications:<br><br>(a) email dated March 30, 2023, from TCG's consultant to NAVFAC SE employees. The redacted email communication included 1 attachment.<br><br>Rationale: The email and its attachment include TCG's (DON consultant) short-term and long-term financial analysis of the 3 loan repayment scenarios proposed by the Managing Member. This pre-decisional analysis was sent to DON employees to help ascertain the Project's cash flow under each repayment scenario.<br><br>(b) email dated March 28, 2023, from Tom McKelvey to NAVFAC SE and NAVFAC LANT employees providing opinions and internal evaluation of the 3 loan repayment options proposed by LNFH. This communication is pre-decisional.<br>(c) email dated March 28, 2023, from NAVFAC SE employee to other NAVFAC SE employees and TCG's consultant, providing a summary of the evaluation and analysis made by NAVFAC LANT of the 3 loan repayment options proposed by LNFH. This communication is pre-decisional and part of the Agency's deliberative process. The content of these |

28

| | | | | |
|---|---|---|---|---|
| | | | | email communications and attachment are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of these emails are protected under Exemption 6.<br><br>DON's preferred repayment plan option was disclosed to LNFH and its attorney orally and in writing. |
| 4P | 532-559 | 7 & 9 | Ex.5 & 6 | Agency redacted 2 email communications and 4 attachments. The first email communication dated September 8, 2021, from Tom McKelvey to NAVFAC SE, NAVFAC LANT and NAVFAC HQ employees and the second email communication dated September 9, 2021, from Tom McKelvey to NAVFAC SE, NAVFAC LANT and NAVFAC HQ employees.<br><br>The content of these email communications and attachments are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6.<br><br>Rationale: The email communications between Tom McKelvey and NAVFAC SE, NAVFAC LANT and NAVFAC HQ employees are protected under the deliberative process privilege since it reflects the Agency's internal thought process and proposed courses of action. These communications were pre-decisional.<br><br>These communications were the agency's deliberation on LNFH's request for a $2.2M loan for hurricane Ida expenses and loan repayment agreement terms and conditions for hurricane Zeta's PRA loan.<br><br>DON's final decision on the $2.2M MORA loan and repayment agreement for PRA loan were provided to LNFH in writing. |
| 5P | 560-565 | 7 & 9 | Ex.5 & 6 | Agency redacted an email communication dated September 8, 2021, from Tom McKelvey to NAVFAC SE, NAVFAC HQ and NAVFAC LANT employees.<br><br>The content of the email communication is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of that email are protected under Exemption 6.<br><br>Rationale: The email communication between Tom |

29

| | | | | McKelvey and NAVFAC SE, NAVFAC LANT and NAVFAC HQ employees is protected under the deliberative process privilege since it reflects the Agency's internal thought process, including subjective opinions and proposed courses of action. This communication is pre-decisional.<br><br>DON provided the final decision on the subject matter to LNFH in writing. |
|---|---|---|---|---|
| 6P | 566-567 | 8 | Ex.5 & 6 | Agency redacted 2 email communications. The first one dated September 14, 2022, from Tom McKelvey to a NAVFAC SE employee and the other one dated September 15, 2022, from the NAVFAC SE employee to Tom McKelvey.<br><br>The content of these email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6.<br><br>Rationale: The email communications between Tom McKelvey and NAVFAC PPV employee are protected under the deliberative process privilege since it reflects the Agency's internal thought process, including subjective opinions and proposed courses of action. These communications were pre-decisional.<br><br>These communications were the agency's deliberation on Patrician Management LLC officer's request for the Agency's Counsel contact information. |
| 7P | 568-569 | 8 | Ex.5 & 6 | Agency redacted 2 email communications dated September 1, 2023. The first one between NAVFAC SE employees and the other one from Tom McKelvey to NAVFAC SE employees.<br><br>The content of these email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6.<br><br>Rationale: The email communications between Tom McKelvey, NAVFAC SE employees are protected under the deliberative process privilege since it reflects the Agency's internal thought process, including subjective opinions and proposed courses of action. These communications were pre-decisional. |

| | | | | |
|---|---|---|---|---|
| | | | | These communications were the agency's deliberation on Patrician Management LLC officer's request to obtain supporting data on how the Satisfacts Surveys are used to calculate Property Manager Incentive Fee.<br><br>DON's final decision on the Performance Incentive Management Fee was provided in writing. |
| 8P | 570-575 | 8 | Ex.5 & 6 | Agency redacted 3 email communications. The first one dated September 26, 2022, from NAVFAC SE employee to other NAVFAC SE employees; the second one dated September 27, 2022, from Tom McKelvey to other NAVFAC SE employees, and the third one dated September 27, 2022, from a NAVFAC SE employee to Tom McKelvey. The email communication dated September 27, 2022, included 1 attachment.<br><br>The content of the email communications and the attachment are protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of the emails are protected under Exemption 6.<br><br>Rationale: The email communications between Tom McKelvey and other NAVFAC SE employees are protected under the deliberative process privilege since it provides Tom McKelvy's and NAVFAC SE employees input and opinion on LNFH's request of LHS Carve Out Category. This communication is pre-decisional.<br><br>The IDA decided to fully withhold the attachment of this email since<br><br>DON's final decision on the issues raised by LNFH were provided in writing. |
| 9P | 576-580 | 8 | Ex.5 & 6 | Agency redacted 2 email communications dated April 17, 2023. The first one from Tom McKelvey to NAVFAC SE, Executive Officer and the other one from NAVFAC SE, Executive Officer to Tom McKelvey.<br><br>The content of these email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6.<br><br>Rationale: The email communications between Tom McKelvey and NAVFAC SE, Executive Officer are |

31

| | | | | |
|---|---|---|---|---|
| | | | | protected under the deliberative process privilege since it reflects the Agency's internal thought process, including chain of command and proposed courses of action. These communications were pre-decisional.<br><br>These communications were the agency's deliberation on LNFH's request for reconsideration of DON's discretionary scoring with regards to the Performance Incentive Management Fee.<br><br>DON's final decision on the Property Manager Incentive Fee was provided in writing. |
| 10P | 581-588 | 9 | Ex.5 & 6 | Agency redacted 3 email communications: (a) email communication dated July 29, 2022, from Tom McKelvey to NAVFAC SE employees and TCG consultant; (b) email communication dated August 2, 2022, from TCG consultant to NAVFAC SE employees; and (c) email communication dated August 3, 2022, from Tom McKelvey to NAVFAC SE employees and TCG consultant.<br><br>The content of these email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6.<br><br>Rationale: The email communications between Tom McKelvey, NAVFAC SE employees and TCG consultant are protected under the deliberative process privilege since it reflects the Agency's internal thought process and proposed courses of action. These communications were pre-decisional.<br><br>These communications reflect the agency's deliberation on LNFH's request of information on OA and Indenture revisions.<br><br>DON's final decision was communicated to LNFH in writing. |
| 11P | 589-590 | 9 | Ex.5 & 6 | Agency redacted 2 email communications. The first one dated May 21, 2021, between NAVFAC SE employees and the second one dated May 22, 2021, between NAVFAC SE Employees.<br><br>The content of these email communications is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6. |

| | | | | |
|---|---|---|---|---|
| | | | | Rationale: The email communications between Tom McKelvey and NAVFAC SE employees are protected under the deliberative process privilege since it reflects the Agency's internal thought process and proposed courses of action. These communications were pre-decisional.<br><br>These communications were the agency's deliberation on LNFH and Bondholders representative request for a meeting to discuss revisions to the Project's Indenture Agreement.<br><br>DON's final decision on the revisions to the Indenture Agreement was provided to LNFH in writing. |
| 12P | 591-593 | 9 | Ex.5 & 6 | Agency redacted 1 email communication dated February 4, 2021, between a NAVFAC SE employee and Tom McKelvey.<br><br>The content of this email communication is protected under Exemption 5 (deliberative process) while names and email addresses of the recipients of those emails are protected under Exemption 6.<br><br>Rationale: The email communications between Tom McKelvey and the NAVFAC SE employee are protected under the deliberative process privilege since it reflects the Agency's internal thought process and proposed courses of action. These communications were pre-decisional.<br><br>These communications were the agency's deliberation on the hurricane invoices submitted by LNFH to the DON regarding repairs done in the Project after the hurricane.<br><br>DON's final decision on the revision of hurricane repair invoices was provided to LNFH in writing. |

33