**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

NEW ORLEANS NAVY              *           CIVIL ACTION
HOUSING, LLC, et al

                               *           NO.  25-0363

VERSUS

                               *           SECTION: "I" (2)

UNITED STATES DEPARTMENT
OF NAVY                             *

*    *    *    *    *    *    *    *    *

## LR 56.1 STATEMENT OF UNCONTESTED MATERIAL FACTS

1. On September 7, 2023, Defendant's Naval Facilities Engineering Systems Command (NAVFAC or Agency) received a FOIA request from Plaintiff via FOIAOnline, Defendant's online FOIA management system. *See* Exhibit A, Declaration of Atina Hall, FOIA Coordinator for Naval Facilities Engineering Systems Command Southeast.

2. Plaintiffs' request sought the following records:

   1. All documents generated since February 1, 2023 between or among Navy personnel and the Concourse Group that relate to discussions or negotiations between and among NONH, LNFH, Patrician and the Navy with respect to the cost of or funding for insurance premiums for the Project.

   2. All documents generated since February 1, 2023 that discuss the development of the Navy letter dated May 30, 2023 and the transmission of that letter to LNFH dated May 30, 2023 which the Navy labelled as a "Letter of Dissatisfaction".

   3. All documents generated since February 1, 2023 that discuss the reasons for Navy's decision to travel to Louisiana to review books and records of NONH in July and August 2023.

   4. All documents generated since February 1, 2023 to or from Concourse Group that discuss or relate to the Navy's review of books and records of NONH in July and August 2023.

   5. All documents that discuss or relate to the results or findings of the Navy review books and records of NONH in in July and August 2023.

1

6. All documents generated by the Concourse Group since February 1, 2023 that suggest, recommend, reference in any manner or comment on whether or not or under what terms to release funds from the Project Member Operating Reserve Account ("MORA") to cover insurance premium costs.

7. All documents that discuss the subsidy implemented through the National Defense Authorization Act ("NDAA") for 2018, pursuant to which the Navy provided certain funds to purportedly counteract the reductions to the Basic Allowance for Housing that were implemented through the NDAA for 2015, and specifically, all documents that discuss and determine that the subsidy, in whole or part, shall be deposited into the Project's MORA.

8. All documents that discuss the 2021 Property Management Incentive Fee request submitted by NONH on or about February 10, 2023, including but not limited to documents used by the Navy in the evaluation of that request and documents between the Concourse Group and the Navy that refer to or relate in any way to that request or the evaluation of that request.

9. All documents that discuss or refer to the release in 2021 of approximately $3,253,243 of funds from the Project Recapitalization Fund ("PRF") to NONH, including but not limited to any documents that relate or refer to any written terms that govern how those disbursements were to be handled or any future replenishment or repayment of any portion or all of those disbursements, which the Navy has claimed were "loans" and required a "loan repayment agreement" "within 90 days".

*See* Ex. A-1.

3. Upon evaluation of the FOIA request, it was determined that the Public Private Ventures (PPV) Department within the Agency – the department responsible for maintaining records related to the privatized housing project known as New Orleans Navy Housing, L.L.C. – would be the custodian of records responsive to the subject FOIA request. Ex. A.

4. The requested records generally consist of materials prepared by or provided to NAVFAC Southeast PPV department in connection to the privatized military housing Project's financial and legal documents; oversight and monitoring; construction, maintenance and repair; residents interaction and satisfaction; oversight and compliance; and the

Department of Defense's PPV Program management guidelines, policies, and governance. *Id.*

5. As such, these documents are not accessible to the public. *Id.*

6. Accordingly, the PPV department was provided with a copy of the subject request on November 20, 2023, and was directed to conduct a search of all locations reasonably likely to contain responsive records. *Id.*

7. Consequently, a search was conducted of electronic files, shared network folders, individual workstations and relevant Outlook email accounts (including inbox, sent, archived and deleted folders) of personnel reasonably expected to have responsive information. *Id.*; *see also* Exhibit B, Declaration of Tom McKelvey, Supervisory PPV Business Agreement Manager for the Southeast NAVFAC, Asset Management, Public-Private Venture Division.

8. On February 15, 2024, McKelvey provided 188 documents (a total of 948 pages) responsive to Plaintiffs' FOIA request to the Agency's FOIA office. *Id.*

9. On April 10, 2024, after the FOIA division conducted a review of the responsive records for required withholdings under the FOIA exemptions, 93 records (355 pages) were released to the requestor in full and 12 records (103 pages) were released in part. Ex. A-2.

10. The remaining 83 responsive records (490 pages) were fully withheld under FOIA Exemptions 4, 5, and 6. Ex. A-10.

11. On April 18, 2024, Plaintiffs appealed the response to the Office of the General Counsel of the Department of the Navy (OGC). Ex. A-3.

12. On April 30, 2024, the Agency submitted a response to the Deputy General Counsel of the Department of the Navy (DGC) explaining the Agency's rationale for the specific withholdings. Ex. A-4.

13. On May 13, 2024, DGC remanded the request back to the Agency for reconsideration despite finding no error and directed the Agency to issue a final action. Ex. A-5.

14. Thereafter, on June 12, 2024, the Agency issued a revised Resolution Notice, which explained the withholdings in more detail and provided an index of withheld documents, although no additional documents were released to the Requester. Ex. A-6.

15. On June 21, 2024, Plaintiffs submitted another appeal of the Agency's revised Resolution Notice to the Office of the General Counsel of the Department of the Navy challenging the response. Ex. A-7.

16. On July 8, 2024, NAVFAC SE once again submitted a response to the DGC supporting the withholdings. Ex. A-8.

17. Finally, on July 11, 2024, the Deputy General Counsel of the Department of the Navy issued a final denial decision of Plaintiffs' second appeal. Ex. A-9.

18. Still not satisfied with the results, Plaintiffs filed the instant lawsuit. R. Doc. 1.

19. By way of background, in 1996 Congress enacted the Military Housing Privatization Initiative (MHPI or the Privatization Initiative) in Section 2871 of the National Defense Authorization Act (NDAA). P.L. 104-106, 110 Stat. 186. 10 U.S.C. § 2871-2885 *et seq*.

20. The Privatization Initiative provided "alternative authorizations" to attract private sector financing, expertise, and innovation to revitalize military family housing on an accelerated basis as compared to the legacy budgetary processes. S. Rep. No. 104-112, §§ 2811 pp. 329 (1995).

21. Under the Privatization Initiative, the private commercial entity developer "own[s], operate[s] and maintain[s] the houses, and lease[s] the underlying land from the agency for a term of fifty years." Stacie A. Remy Vest, *Military Housing Privatization Initiative: A Guidance Document for Wading Through the Legal Morass*, 53 A.F. L. Rev. 1, 24 (2002).

22. This initiative allowed the Navy and the other military branches to remove themselves from the distractions of day-to-day housing decisions and management and focus on their core mission of defending the United States. Ex. B.

23. The MHPI model explicitly preserves the federal government's sovereign immunity and privileges and allows the services to retain oversight of the privatized Project to ensure that private partners meet housing standards. *Id.*

24. The MHPI operates across all military branches and at numerous installations nationwide, including Army, Navy, Air Force, and Marine Corps bases. MHPI was originally centralized within the DoD under the Office of the Secretary of Defense (OSD). *Id.*

25. In 1998, OSD transferred operational responsibility for MHPI to the individual military branches, with oversight and final approval authority vested in the OSD Directorate of Housing and Competitive Sourcing. *Id.*

26. The Deputy Assistant Secretary of Navy Installations and Facilities (DASN I&F) delegated Navy and Marine Corps PPV acquisition authority to NAVFAC. *Id.*

27. NAVFAC is responsible for the execution and oversight of the housing partnerships (LLCs), ensuring that private partners meet performance standards. *Id.*

28. NAVFAC reports to DoD who must regularly report to Congress on the implementation of reforms, any project performance failures and the steps taken to ensure Project's accountability and tenant safety. *Id.*

29. Pursuant to the Privatization Initiative, in 2001, LNFH and the Navy entered into an *Operating Agreement* creating a Limited Liability Company where LNFH *exclusively* holds all rights and powers of management with full authority to take all actions necessary as the managing member, and the Navy is designated as the non-managing member. *See* Ex. B.

30. The *Real Estate Ground/Facilities Lease* dated October 1, 2001, by and between the Navy and LNFH, as amended (Ground Lease) and the *Operating Agreement* memorialized the respective roles and provide technical requirements for privatizing the housing and leasing the land where the Project stands. *Id.*

31. Article IV of the *Operating Agreement* entitled "Management of the Company" outlines the commitment, rights, and responsibilities of Plaintiff, LNFH, as "Managing Member." *Id.*

32. LNFH was to "develop, construct, maintain, operate and manage the Project to a high level of skill and care" for the duration of the agreement. *Id.* Section 4.02(b) of the *Operating Agreement* requires that LNFH "have exclusive management and control. . . [including] all the rights and powers of a manager.... [to do] all things which are necessary, proper or desirable to carry out . . . [the] duties and responsibilities . . ." *Id.*

33. The *Operating Agreement* also requires LNFH to carry insurance and indemnify and/or hold Navy harmless for any claims arising out of Navy's participation as a non-managing member, Section 4.02(b)(v). *Id.*

34. Pursuant to the *Operating Agreement*, the Navy, as non-managing member of NONH, has the right to provide oversight on recapitalization plans, financial operations, and Project performance. *Id.*

35. The Navy's oversight responsibilities are carried out by NAVFAC's Business Agreement Manager (BAM) and his staff of project managers, and financial analysts responsible for reviewing major account expenditures, annual budgets, fee proposals and monitoring the performance and fiscal health of the Project LLC. *Id.*

36. During the time relevant to this litigation, Tom McKelvey was the BAM providing oversight to the NONH Project. *Id.*

37. Additionally, Congress mandated enhanced oversight of privatized military housing projects as a response to widespread reports of poor living conditions and inadequate management, affecting service members and their families living in privatized base housing. *Id.*

38. These reforms were passed largely as amendments to the MHPI act between 2019 and 2023 an aim to strengthen accountability, transparency, and tenant protections across the DoD MHPI housing, prompting reforms to increase tenant protection and accountability. *See* FY2020, 2021 and 2023 NDAA, 10 U.S.C. §§2871-2885, Senate and House Armed Services Committee directives; *see also* Ex. B.

39. Relevant to this case, Congress mandated enhanced oversight: (1) to address the future sustainment, recapitalization and financial condition of MHPI housing; (2) greater visibility into the financial statement of MHPI companies; (3) revised incentive fee structures so MHPI Projects only pay Property Managers if they meet housing condition and service standards; and (3) standardized resident satisfaction survey framework. Ex. B.

40. Further, Congress required the Secretary of each military department to issue guidance on MHPI housing, define risk tolerance regarding the future sustainability of MHPI housing

projects, and assess the significance of specific risks. *See*, Section 606(c) (3) of the NDAA FY 2019.

41. Therefore, to execute Congress's mandate for enhanced oversight of privatized military housing, the DoD and the individual military branches have established and implemented a comprehensive set of formal policies, directives and administrative frameworks. Ex. B.

42. These policies operationalize the reforms required by the FY2020-FY2023 NDAA's and Congressional oversight. *Id.*

43. NAVFAC has also issued additional oversight policies and guidance, all of which have been distributed to the private partners, including LNFH. *Id.*

44. Not surprisingly, due to the financial and budget complexity of the Navy's Public Private Venture Program, consultants are hired to provide subject matter expertise, input and recommendations for the strategic direction of functions within the Navy's Public Private Venture Program. *Id.*

45. Consultants are required to help align PPV Program initiatives to strategic plan, data and process management. *Id.*

46. For each project, they participate in the following: (1) assist in project development and financial proposal analysis; (2) budget and audit reviews; (3) reviews of project cash flow distribution, financial and bank statements; (3) data analysis; (4) streamlining and reporting; (4) communication support with private partners; (5) help develop standardized housing business processes; (6) provide support with data system and calibration; and (7) in drafting white papers/studies needed pursuant to the needs of each project. *Id.*

47. Additionally, consultants are required to develop, establish, and define guidance and standard processes to implement the provisions established in MHPI statute and in the NDAA. *Id.*

48. The Navy's consultants on MHPI act in a capacity functionally equivalent to that of an agency employee, with no independent interest in the outcome of the deliberation and the consultant's role is solely advisory. *Id.*

49. The Navy's consultants on MHPI operate under the direction and control of agency staff and are integrated into the deliberative workflow. *Id.*

50. Most importantly, the Navy retains full discretion over whether and how to use the consultant's input. *Id.*

51. At all the times relevant to events subject to this Complaint, The Concourse Group (TCG) was the Navy's consultant on MHPI matters. Ex. B.

52. Matt Brookman was the TCG's consultant assisting McKelvey on issues related to the NONH LLC Project. *Id.*

53. TCG provided consultative services to the Navy from 2015 through October 2023. *Id.*

54. As a condition precedent to working on MHPI matters, each member of the TCG Team was required to execute a Non-disclosure Agreement. *Id.*

55. Certain material responsive to Plaintiffs' FOIA request are communications, analysis, recommendations, opinions, and drafts prepared by TCG within its role as the Navy's consultant.

56. This material falls within the consultant corollary of FOIA Exemption 5 and was properly withheld by the Navy. *Id.*

Respectfully submitted,

MICHAEL M. SIMPSON
ACTING UNITED STATES ATTORNEY

_s/ Brock D. Dupre_
**BROCK D. DUPRE (#28563)**
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3005
Facsimile: (504) 680-3184
Brock.Dupre@usdoj.gov