**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **NEW ORLEANS NAVY** | * | **CIVIL ACTION** |
| **HOUSING, LLC, et al** | | |
| | * | **NO.  25-0363** |
| **VERSUS** | | |
| | * | **SECTION: "I" (2)** |
| **UNITED STATES DEPARTMENT** | | |
| **OF NAVY** | * | |

*    *    *    *    *    *    *    *    *

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Defendant, the United States Department of Navy (Navy), submits this memorandum in reply to Plaintiffs' opposition, R. Doc. 21, to Defendant's motion for summary judgment, R. Doc. 20. Plaintiff's opposition fails in numerous respects. First, in an effort to convince the Court Defendant has not met a "foreseeable harm" standard, Plaintiffs selectively direct the Court to only portions of Defendant's supporting documentation - ignoring entirely exhibits attached to Defendant's submitted declarations. Indeed, "foreseeable harm" was discussed ad nauseam during the administrative appeals and the same was provided to the Court in Defendant's motion. Secondly, Plaintiffs' reliance on contract dispute cases and the Contracts Dispute Act to illustrate the subject deliberative process material should be released is misplaced. The cases cited by Plaintiffs *acknowledge* deliberative process material can be properly withheld; however, the cited cases allowed for release of the same by evaluating the requestor's need for the material (inappropriate in FOIA analysis), provided under a protective order, or provided some other equitable resolution.

1

**A.      The Navy has satisfied FOIA's Foreseeable Harm Standard**

Although Plaintiffs are correct that the Navy must satisfy a foreseeable harm standard, it is beyond the pale to suggest that the Navy has not made a meaningful attempt to make this showing. Plaintiffs' tactic is simple - to pick and choose parts of the administrative record to convince the Court the Navy did not evaluate its withholdings under the foreseeable harm standard. A mere look at the administrative record highlights the Navy's lengthy explanation of the foreseeable harm in withholding the subject material. Specifically, at R. Doc. 20-2, pp. 127-129, the Navy provides an extensive explanation of "**DON's foreseeable harm reasoning.**" (emphasis in original). The Navy describes in unique detail the "foreseeable harm" in releasing particular material responsive to specific requests. *Id.*

It is understood, as with the application of FOIA exemptions, an agency bears the evidentiary burden of establishing that disclosure of exempt information would result in reasonably foreseeable harm. *See Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 362 (D.C. Cir. 2021). The Court of Appeals for the District of Columbia Circuit has explained that in order to meet this burden, agencies must "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Id.* at 369. An agency's burden to show foreseeable harm cannot be met with "generalized assertions," (*see Machado Amadis v. US Dept. of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)) although agency declarations may use a categorical approach to identify harm (*see Reps. Comm.,* 3 F.4th at 369 (explaining that agencies may satisfy foreseeable harm requirement "on a category-by-category basis rather than a document-by-document basis" but "the basis and likelihood of that harm must be independently demonstrated for each category")) as long as they do not rely on "nearly identical boilerplate statements" when doing so (*Ctr. for*

*Investigative Reporting v. US Customs and Border Protection*, 436 F. Supp. 3d 90, 106 (D.D.C. Dec. 31, 2019)). The District Court for the District of Columbia has found, however, that "the mere recitation of similar reasoning in showing harm does not by itself render that reasoning 'boilerplate.'" *Leopold v. DOJ*, 2021 WL 3128866, at \*4 (D.D.C. July 23, 2021).

The Navy's description of foreseeable harm is anything but boilerplate. R. Doc. 20-2, pp. 127-129. Plaintiffs, however, are solely looking at language in the index, R. Doc. 20-2, pp. 138-170, or limited language in the declarations. Rather, to avoid "boilerplate" language the Navy submitted the entire administrative record, which, as a whole, is the Navy's *Vaughn* index. The precise form of the agency's submission—whether it be an index, declaration, affidavit, narrative, or combination—is immaterial, so long as the nature of the withheld information is adequately attested to by the agency. *See Hornbeck v. U.S. Coast Guard*, No. 04-1724, 2006 WL 696053, at \*6 (D.D.C. Mar. 20, 2006); *Judicial Watch, Inc. v. Food & Drug, Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) (stating that an agency may "submit other measures in combination with or in lieu of the index itself," such as supporting affidavits, or seek in camera review of the documents); *Wishart v. Comm'r,* No. 98-17248, 1999 WL 985142, at \*1 (9th Cir. Oct. 27, 1999). The agency is entitled to summary judgment in a FOIA case if the agency's affidavits "describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption" and the agency's affidavits "are not controverted by either contrary evidence in the record or bad faith." *Manna*, 51 F.3d at 1163-64, *quoting Am. Friends Serv. Comm. v. Dep't of Defense*, 831 F.2d 441, 444 (3d Cir. 1987).

In its submission, the Navy discusses the nature of the parties' business relationship, how this relationship shapes the nature of the contested material, how the contested material is not

simply "contract administration" material and provides context as to nature of the material subject to the FOIA request. *See generally* R. Docs. 20-2 and 20-3. Moreover, on the surface of Plaintiffs' FOIA request it seeks pre-decisional and deliberative communications that preceded the Navy's final decision - all communications that led to the Letter of Dissatisfaction, for example. *Id.* Accordingly, the Navy withheld documents that contain analysis, evaluations, opinions, and recommendations. *Id.* The documents were part of an intra-agency evaluation process, used to determine whether or not the agency should take some administrative action. *Id.*

Most importantly, the Navy does not stop with a baseless allegation that release of the subject material will cause a "chilling effect," but specifically describes how and why a "chilling effect" would occur for the specific material requested. R. Doc. 20-2, pp. 127-129. Therefore, the Navy has met FOIA's Foreseeable Harm Standard.

**B.   Plaintiffs' reliance on discovery in contract dispute cases is misplaced.**

Plaintiffs approach in evaluating FOIA Exemption 5 - directing the Court to specific civil cases, rather than FOIA cases, where purported deliberative process material was ordered to be produced – misses the mark. Although Exemption 5 does incorporate all civil discovery privileges, Plaintiffs fail to acknowledge there is a critical distinction between the application of those privileges in civil discovery as compared to in the FOIA context. While in civil discovery, qualified privileges may be overcome by a showing of relevance or need by an opposing party, in the FOIA context, courts do not take into account a party's need for the documents in ruling on a privilege's applicability. *See FTC v. Grolier*, 462 U.S. 19, 27-28 (1983); *MacLean v. DOD*, No. 04-CV-2425, slip op. at 8-9 (S.D. Cal. June 6, 2005) ("[S]ince there is no 'need' determination under FOIA, there is no room for this Court to balance the public's interest in disclosure against defendants'

interest in protecting the deliberative process."), *aff'd on other grounds*, 240 F. App'x 751, 754 (9th Cir. 2007).

Plaintiffs' logic suggests that whenever deliberative process material would be discoverable in any particular litigation against the government, they must be disclosed to anyone under FOIA. The Supreme Court has directly rejected this argument:

> Respondent urges that the meaning of the statutory language is "plain" and that, at least in this case, the requested documents must be disclosed because the same documents were ordered disclosed during discovery in previous litigation. It does not follow, however, from an ordered disclosure based on a showing of need that such documents are routinely available to litigants. The logical result of respondent's position is that whenever work-product documents would be discoverable in any particular litigation, they must be disclosed to anyone under the FOIA. We have previously rejected that line of analysis. In *NLRB v. Sears, Roebuck & Co.*, *supra*, we construed Exemption 5 to "exempt those documents, and only those documents, *normally* privileged in the civil discovery context." 421 U.S., at 149, 95 S.Ct., at 1515. (Emphasis added) It is not difficult to imagine litigation in which one party's need for otherwise privileged documents would be sufficient to override the privilege but that does not remove the documents from the category of the normally privileged. *See id*., at 149, n. 16, 95 S.Ct., at 1516, n. 16.

*FTC v. Grolier*, 462 U.S. at 27-28. The cases upon which Plaintiffs rely, highlight the *qualified* nature of the privilege in the context of government contract matters.

Plaintiffs rely on *Brero Constr., Inc.*, LBCA No. 1997-BCA-0004, 1999 WL 624138 (June 18, 1999), for example, which offers no analytical value. In *Brero Constr.,* the Board of Contract Appeals stressed the unique nature of why certain material is discoverable in a government contract matter - "the Board is troubled by a refusal to disclose relevant information which suggests a search for tactical advantage in a sporting contest rather than a search for the truth, especially because the CO is obligated to assemble an Appeal File containing the documents relevant to a full presentation and soundly based decision regarding numerous contested diverse and complex factual claims." *Id.* This highlights the importance of a requestor's interest in the records in contract dispute cases, which is completely inappropriate in a FOIA matter. Rather, the Supreme Court has noted that the

FOIA is fundamentally designed to inform the public about agency action and not to benefit private litigants and a litigant's "rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in the (documents sought) greater than that shared by the average member of the public." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n. 10 (1975).

Rather than following the Supreme Court's principles in *Sears, Roebuck*, in *Brero Constr.* the Board relies on the concepts described in *Freeman v. Seligson*, 405 F.2d 1326, 1348 (D.C. Cir. 1968), which favors the principle of "full access by the courts and litigants to relevant information, in the absence of strong competing considerations, is an important foundation for the achievement of justice by the courts in individual lawsuits." Similarly in *Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317, 320 (1990), relied on by Plaintiffs, the court noted the "privilege is not absolute, but qualified" and "[e]ven though the Government properly asserts the privilege, plaintiff nevertheless may discover the material at issue by showing a compelling need."

*Unisys Corp. v. Dep't of Commerce*, GSBCA No. 12823-COM, 95-2 BCA ¶ 27,903, again relied upon by Plaintiffs, is the best example as to why routine contract dispute cases are completely inapplicable to a FOIA matter. In *Unisys Corp.*, the court held that,

> We are not insensitive, however, to respondent's concern that revelation of sources to the **general public might have a chilling effect on the ability of the IG to have candid communications with individuals when conducting future inspections of this type**. Consequently, these documents will be produced under the protective order and will be revealed only to those persons cleared under the terms of the protective order."

*Id.* (Emphasis added). Such a result is completely inapposite to the Supreme Court reasoning that FOIA is fundamentally designed to inform the public about agency action and not to benefit private litigants. *See Sears, Roebuck & Co., supra.*

In the instant case, Plaintiffs appear to lose sight that the requested material, once released, is deemed releasable to the entire public, not just Plaintiffs. FOIA demands the same outcome if

6

the instant plaintiffs were tenants of the Project seeking the deliberative process material when conducting its oversight, if plaintiffs were a non-profit advocacy group seeking information on government contracts, if plaintiffs were a third-party company seeking competitive advantage, or a random blogger seeking to post the obtained material on the internet. In other words, the FOIA demands the Court be blind of the requestor.

Therefore, rather than following contract dispute case law, when evaluating Exemption 5 in the context of "factual information" or "technical data," it is paramount to rely on prior FOIA cases. *See e.g., Dudman Commc'ns Corp. v. Dept. of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987). Factual information should be examined "in light of the policies and goals that underlie" the privilege and in "the context in which the materials are used." *Wolfe v. HHS*, 839 F.2d 768, 774 (D.C. Cir. 1988); *accord Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980) (Factual segments are protected from disclosure as not being purely factual if the manner of selecting or presenting those facts would reveal the deliberate process, or if the facts are inextricably intertwined with the policy-making process. The Supreme Court has substantially endorsed this standard.) (internal citations omitted). Further, Exemption 5 protects as deliberative material the following, among other, records: (1) reports that constitute the interpretation of technical data, *Parke, Davis & Co. v. Califano*, 623 F.2d 1 (6th Cir. 1980); *Reliant Energy Power Generation, Inc. v. F.E.R.C.*, 520 F. Supp 2d 194, 205 (D.D.C. 2007); and (2) the selection of facts out of a larger group. *Montrose Chem. Corp. v. Train*, 491 F.2d 63 (D.C. Cir. 1974).

Most insightful, the Fifth Circuit provided a perfect guide for the instant case in *Jobe v. National Transportation Safety Board*, 1 F.4th 396 (5th Cir. 2021). *Jobe* and the instant case involve a very similar legal dispute and fact pattern – the use of technical experts to assist agency decisionmakers fulfill their mandate. In *Jobe*, the Fifth Circuit found that, "this case […] involves

7

technical personnel who participated in an agency fact-finding investigation—a process that was designed solely to issue safety recommendations, that does not adjudicate liability, and that was controlled by the agency itself." *Id.* at 407. More importantly, the Fifth Circuit held, "the non-agency participants here are the kind of experts typically accorded consultant status under Exemption 5: outside consultants positioned by their technical knowledge to inform an agency's deliberative process." *Id.* (internal citations omitted).

Here, the Navy has submitted declarations echoing the same - due to the financial and budget complexity of the Navy's Public Private Venture Program, consultants are hired to provide subject matter expertise, input, and recommendations for the strategic direction of functions within the Navy's Public Private Venture Program. R. Doc. 20-3, pp. 5-6. Consultants are required to help align PPV Program initiatives to strategic plan, data, and process management. *Id.* For each project, they participate in the following: (1) assist in project development and financial proposal analysis; (2) budget and audit reviews; (3) reviews of project cash flow distribution, financial and bank statements; (3) data analysis; (4) streamlining and reporting; (4) communication support with private partners; (5) help develop standardized housing business processes; (6) provide support with data system and calibration; and (7) in drafting white papers/studies needed pursuant to the needs of each project. *Id.* Additionally, consultants are required to develop, establish, and define guidance and standard processes to implement the provisions established in MHPI statute and in the NDAA. *Id.* As in *Jobe, t*he Navy's consultants on MHPI act in a capacity functionally equivalent to that of an agency employee, with no independent interest in the outcome of the deliberation and the consultant's role is solely advisory. *Id.* The Navy's consultants on MHPI operate under the direction and control of agency staff and are integrated into the deliberative workflow. Most importantly, the Navy retains full discretion over whether and how to use the

8

consultant's input. *Id.* The Navy's description of the consultation and subject material here are the

"the kind of experts typically accorded consultant status under Exemption 5: outside consultants

positioned by their technical knowledge to inform an agency's deliberative process." *Jobe* at 407.

Therefore, for all the reasons set forth above, as well as the reasons set forth in Defendant's

motion for summary judgment, R. Doc. 20, Defendant respectfully requests that the Court grant

its motion for summary judgment and enter judgment in its favor

Respectfully submitted,

MICHAEL M. SIMPSON
ACTING UNITED STATES ATTORNEY

   *s/ Brock D. Dupre*
**BROCK D. DUPRE (#28563)**
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3005
Facsimile: (504) 680-3184
Brock.Dupre@usdoj.gov

9